JEFFREY H. WOOD
Acting Assistant Attorney General
TRAVIS ANNATOYN
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-5243
Email: Travis.Annatoyn@usdoj.gov

Attorneys for Federal Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| UNITED COOK INLET DRIFT ASSOCIATION, AND COOK INLET FISHERMEN'S FUND, <br><br> Plaintiffs, <br><br> vs. <br><br> NATIONAL MARINE FISHERIES SERVICE ET AL., <br><br> Defendants. | Case. No. 3:13-cv-00104-TMB <br><br><br> **FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS** |

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

   I.   Statutory Background ............................................................................................ 2

   II.   Procedural Background ......................................................................................... 3

STANDARD OF REVIEW ................................................................................................ 7

ARGUMENT ..................................................................................................................... 8

   I.   Plaintiffs Are Not Entitled to Fees and Costs Under EAJA. ............................... 8

      A.   Plaintiffs have not shown that they are eligible for fees under EAJA. ........................... 8

      B.   Plaintiffs are not entitled to EAJA fees because the government's position
          was substantially justified. ......................................................................... 10

   II.   Plaintiffs' Requested Fee Award is Grossly Excessive. ................................... 15

      A.   Plaintiffs have not shown that their requested rates are reasonable or necessary,
          and are entitled to no more than $125 per hour. ........................................... 15

      B.   Plaintiffs have unreasonably billed the United States for thousands of hours
          of fees. ................................................................................................... 19

      C.   Plaintiffs' requested costs are not compensable. ........................................ 23

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**CASES**                                                                                                  **PAGE**

Alliance for the Wild Rockies v. Krueger,
  2014 WL 46498 (D. Mont. 2014) ................................................................. 22, 23

Al-Harbi v. Immigration & Naturalization Serv.,
  284 F.3d 1080 (9th Cir. 2002) ............................................................... 10, 13

Am. Pac. Concrete Pipe Co. v. NLRB,
  788 F.2d 586 (9th Cir. 1986) ..................................................................... 8, 9

Andrew v. Bowen,
  837 F.2d 875 (9th Cir. 1988) ........................................................................ 10

Astrue v. Ratliff,
  560 U.S. 586 (2010) ...................................................................................... 8

Atlantic Fish Spotters Ass'n v. Daley,
  205 F.3d 488 (1st Cir. 2000) ......................................................................... 16

Blum v. Stenson,
  465 U.S. 886 (1984) ............................................................................... 15, 16

Cabrales v. Cty. of Los Angeles,
  935 F.2d 1050 (9th Cir. 1991) ...................................................................... 20

Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
  467 U.S. 837 (1984) .............................................................................. 5, 6, 17

Comm'r, Immigration & Naturalization Serv. v. Jean,
  496 U.S. 154 (1990) ...................................................................................... 22

Comty. Heating & Plumbing Co. v. Garrett,
  2 F.3d 1143 (1993) ......................................................................................... 9

Democratic Party of Wash. State v. Reed,
  388 F.3d 1281 (9th Cir. 2004) ...................................................................... 23

Fields v. United States,
  29 Fed. Cl. 376 (1993) .................................................................................... 9

Foley v. U.S. Dep't of Interior,
  2009 WL 275648 (D. Alaska Feb. 5, 2009) ............................................... 16

Forest Conservation Council v. Devlin,
    994 F.2d 709 (9th Cir. 1993) ........................................................................ 7

Forestkeeper v. U.S. Forest Serv.,
    2011 WL 2946176 (E.D. Cal. July 21, 2011) ......................................... 23

Gonzales v. Free Speech Coal.,
    408 F.3d 613 (9th Cir. 2005) ....................................................................... 10

Gutierrez v. Barnhart,
    274 F.3d 1255 (9th Cir. 2001) ............................................................... 10, 11

Hamby v. Walker,
    2015 WL 1712634 (D. Alaska Apr. 15, 2015) ........................................ 18

Hamby v. Walker,
    2015 WL 12516788 (D. Alaska Sept. 2, 2015) .................................... 9, 18

Heating & Plumbing Co. v. Garrett,
    2 F.3d 1143 (1993) ......................................................................................... 9

Hensley v. Eckerhart,
    461 U.S. 424 (1983) ............................................................................. passim

IDS Prop. & Cas. Ins. Co. v. Fellows,
    2017 WL 4122565 (W.D. Wash. Sept. 15, 2017) ................................... 18

Info. Scis. Corp. v. United States,
    86 Fed. Cl. 269 (2009) ............................................................................. 8, 9

Key Tronic Corp. v. United States,
    511 U.S. 809 (1994) ....................................................................................... 7

Love v. Reilly,
    924 F.2d 1492 (9th Cir. 1991) ................................................. 8, 16, 18, 19

Mason v. Fed. Express Corp.,
    2016 WL 4098727 (D. Alaska July 28, 2016) ........................................ 18

Nadarajah v. Holder,
    569 F.3d 906 (9th Cir. 2009) ...................................................................... 21

Nat'l Wildlife Fed'n v. FERC,
    870 F.2d 542 (9th Cir. 1989) ...................................................................... 22

NRDC v. Winter,
  543 F.3d 1152  (9th Cir. 2008) ................................................................. 17

Oregon Nat. Res. Council Fund v. Goodman,
  2008 WL 4000442 (D. Or. Aug. 25, 2008) ............................................... 23

Oregon Natural Resources Council v. Madigan,
  980 F.2d 1330 (9th Cir. 1992) ................................................................. 14

Pierce v. Underwood,
  487 U.S. 552 (1988) ................................................................... 7, 10, 14

Pollinator Stewardship Council v. U.S. EPA,
  2017 WL 3096105 (9th Cir. June 27, 2017) ............................... 18, 19, 21

Ramon-Sepulveda v. Immigration & Naturalization Serv.,
  863 F.2d 1458 (9th Cir. 1988) ................................................................. 17

Renee v. Duncan,
  686 F.3d 1002 (9th Cir. 2012) ......................................................... 11, 14

Ruckelshaus v. Sierra Club,
  463 U.S. 680 (1983) ................................................................................... 7

Saysana v. Gillen,
  614 F.3d 1 (1st Cir. 2010) ....................................................................... 12

Schwarz v. Sec'y of Health & Human Servs.,
  73 F.3d 895 (9th Cir. 1995) ..................................................................... 22

Shooting Star Ranch, LLC v. United States,
  230 F.3d 1176 (10th Cir. 2000) ................................................................. 9

Sierra Club v. EPA,
  339 F. App'x 678 (9th Cir. 2009) ............................................................ 15

Sierra Club v. EPA,
  769 F.2d 796 (D.C. Cir. 1985) ................................................................. 22

Soda Mountain Wilderness Council v. Bureau of Land Mgmt.,
  2016 WL 355478 (D. Or. Jan. 28, 2016) ................................................. 14

Sorenson v. Mink,
  239 F.3d 1140 (9th Cir. 2001) ................................................................. 17

Sullivan v. Hudson,
  490 U.S. 877 (1989) ................................................................................... 7

Thangaraja v. Gonzales,
    428 F.3d 870 (9th Cir. 2005) ........................................................... 10, 11

Thomas v. Peterson,
    841 F.2d 332 (9th Cir. 1988) ............................................................... 8

Timms v. United States,
    742 F.2d 489 (9th Cir. 1984) ........................................................... 11, 12

Truckers United for Safety v. Mead,
    329 F.3d 891 (D.C. Cir. 2003) ............................................................ 16

United Cook Inlet Drift Ass'n, Inc. v. Locke,
    09-cv-241-TMB, (2009) (D. Alaska) ................................................... 20

United Cook Inlet Drift Ass'n v. NMFS,
    1:13-cv-00082-RBW, May 10, 2013 (D.D.C. 2013) .............................. 20

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Servs.,
    2014 WL 10988279 (D. Alaska Sept. 5, 2014) ....................................... 1

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Servs.,
    837 F.3d 1055 (9th Cir. 2016) .......................................................... 6, 13

United Cook Inlet Drift Ass'n, Inc. v. Wolf,
    09-cv-43-RRB, (2009) (D. Alaska) ..................................................... 20

United States v. One 1984 Ford Van, bearing VIN No. 1FBHS3110EHB470717,
    873 F.2d 1281 (9th Cir. 1989) ............................................................ 15

United States v. Rubin,
    97 F.3d 373 (9th Cir. 1996) ............................................................... 13

## STATUTES

16 U.S.C. § 1801 .................................................................................. 2
16 U.S.C. § 1801(a)(2) .......................................................................... 2
16 U.S.C. § 1801(b)(1) .......................................................................... 2
16 U.S.C. §§ 1802(11) ........................................................................... 2
16 U.S.C. § 1811(a) ............................................................................... 2
16 U.S.C. § 1852(a) ............................................................................... 2
16 U.S.C. § 1852(h)(1) ........................................................................ 2, 5
16 U.S.C. § 1856(a)(1) ........................................................................... 2
16 U.S.C. §1856(a)(3)(A) ...................................................................... 13

16 U.S.C. §1856(a)(3)(A)(i) ......................................................................... 5
16 U.S.C. §1856(a)(3)(B) ........................................................................... 13
16 U.S.C. §1856(a)(3)(C) ........................................................................... 13
16 U.S.C. § 5001 .................................................................................... 4, 12
16 U.S.C. §§ 5001-5012 ........................................................................ 4, 12
16 U.S.C. § 5002(6) ..................................................................................... 4
28 U.S.C. § 2412 .......................................................................................... 8
28 U.S.C. § 2412(d) .................................................................................. 1, 7
28 U.S.C. § 2412(d)(1)(A) .............................................................. 1, 7, 8, 10
28 U.S.C. § 2412(d)(2)(A) ......................................................................... 24
28 U.S.C. § 2412(d)(2)(A)(ii) ............................................................... 16, 18
28 U.S.C §§ 2412(d)(1)(B) ........................................................................ 1, 9
28 U.S.C. § 2412(d)(2)(B) ........................................................................ 1, 8
Pub. L. No. 579, 68 Stat. 698 .................................................................... 12

## FEDERAL REGULATIONS

35 Fed. Reg. 7,070 (May 5, 1970) ................................................................ 3
44 Fed. Reg. 33,250-33,251 (June 8, 1979) ............................................. 3, 12
50 C.F.R. § 679.2 ......................................................................................... 4
60 Fed. Reg. 39,272 (Aug. 2, 1995) .............................................................. 4
77 Fed. Reg. 21,717 (April 11, 2012) ........................................................... 3
77 Fed. Reg. 19,605 (April 1, 2012) ........................................................... 11
77 Fed. Reg. 21,716 (April 11, 2012) ......................................................... 11
77 Fed. Reg. 75,570 (Dec. 21, 2012) ............................................... 4, 5, 11, 12

# INTRODUCTION

Plaintiffs United Cook Inlet Drift Association ("UCIDA") and Cook Inlet Fishermen's Fund ("CIFF") seek an award of $501,676.09 in attorneys' fees and costs under the Equal Access to Justice Act ("EAJA" or "Act"), 28 U.S.C. § 2412(d).  ECF No. 106 at 1, 3.  The requested award is grossly excessive considering the limited relief Plaintiffs actually achieved in this case this Court's prior ruling in favor of Federal Defendants.  For the reasons discussed below, the Court should deny the application outright or, at the very least, substantially reduce any award.

To begin, Plaintiffs are not eligible for any ward under EAJA.  Plaintiffs have not carried their burden of showing that they meet the net worth requirements of EAJA, and therefore are not eligible for an award of fees under the Act.  28 U.S.C §§ 2412(d)(1)(B), 2412 (d)(2)(B).  Additionally, Plaintiffs are not entitled to fees under EAJA because the government's position in this case was "substantially justified."  28 U.S.C. § 2412(d)(1)(A).  Federal Defendants were tasked with interpreting an ambiguous statute and, lacking any judicial precedent as guidance, undertook a rulemaking process that was eminently reasonable given the history of fishery management in Alaska and the underlying dictates of the Magnuson-Stevens Fishery Conservation and Management Act ("MSA") and National Environmental Policy Act ("NEPA").  Indeed, this process is nearly *per se* reasonable – and therefore substantially justified – in light of this Court's initial decision in favor of Federal Defendants.  See United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Servs., No. 3:13-cv-00104, 2014 WL 10988279, at *1 (D. Alaska Sept. 5, 2014), rev'd, 837 F.3d 1055 (9th Cir. 2016); ECF No. 64.

Alternatively, any award to Plaintiffs must be reduced to reflect appropriate hourly rates and to exclude hours that are not reasonably billed to the federal taxpayers.  On this score, Plaintiffs have not provided any evidence demonstrating that they are entitled to a rate above

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.                                                                    1
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 8 of 32

EAJA's statutory cap. Additionally, Plaintiffs have billed Federal Defendants for thousands of hours not compensable under EAJA, and likewise seek non-compensable or excessive costs. Taking these considerations into account, and assuming that Plaintiffs have demonstrated that they are entitled to fees and costs under EAJA, which they have not, Plaintiffs are only entitled to, at most, $51,545 in fees and $3,423.49 in costs.

## BACKGROUND

### I.      Statutory Background

In 1976, Congress enacted the MSA, Pub. L. No. 94-265, 90 Stat. 331 (1976), 16 U.S.C. § 1801, to "conserve and manage the fishery resources found off the coasts of the United States." 16 U.S.C. § 1801(b)(1). The Act responded to concerns that certain stocks of fish had declined because of increased fishing pressure, inadequate conservation efforts, and habitat loss. 16 U.S.C. § 1801(a)(2). To combat that depletion of resources, Congress established federal management authority over all fishery resources within an "exclusive economic zone." 16 U.S.C. § 1811(a). Relevant to this case, the exclusive economic zone extends from 3 to 200 nautical miles from the coast of the State of Alaska. Id. The State of Alaska has retained authority over the first three nautical miles from its coast. 16 U.S.C. §§ 1802(11), 1856(a)(1).

The Magnuson-Stevens Act also created eight regional Fishery Management Councils to advise the Secretary of Commerce on fishery management. 16 U.S.C. § 1852(a). Among other duties, each Council "shall" prepare and submit a fishery management plan ("FMP"), or necessary amendments to such plan, "for each fishery under its authority that requires conservation and management." 16 U.S.C. § 1852(h)(1).

## II. Procedural Background

Since achieving statehood in 1959, the State of Alaska has managed commercial salmon fishing in state and adjacent federal waters in Cook Inlet, a body of water near Anchorage. That arrangement dates back to the since-repealed North Pacific Fisheries Act of 1954. Pub. L. No. 579, 68 Stat. 698 (1954). The North Pacific Fisheries Act enforced a 1952 International Convention for the High Seas Fisheries, which had prohibited commercial salmon fishing more than three miles from the Alaskan coast, with the exception of Cook Inlet, Prince William Sound, and the Alaska Peninsula. See 44 Fed. Reg. 33,250-33,251 (June 8, 1979). Regulations implementing the North Pacific Fisheries Act provided that salmon fishing in those three areas should conform to state regulations. See 35 Fed. Reg. 7,070 (May 5, 1970).

Shortly after enactment of the MSA, the newly established North Pacific Fishery Management Council ("Council") developed, and the National Marine Fisheries ("NMFS") approved, an FMP for salmon fisheries in federal waters off the coast of Alaska (Salmon FMP). See 44 Fed. Reg. at 33,250. The Salmon FMP divided federal waters off the coast of Alaska into East and West Areas; Cook Inlet fell into the West Area. Id. Consistent with the North Pacific Fisheries Act, the Salmon FMP prohibited commercial fishing in the West Area, with the exception of the "existing small-scale net fisheries" in Cook Inlet and the two other historic net-fishing areas. 44 Fed. Reg. at 33,251. Although those fisheries "technically" extended into federal waters, they were "conducted and managed by the State of Alaska as inside fisheries." Id. at 33,267; see also 77 Fed. Reg. 21,717 (Apr. 11, 2012).

In 1992, Congress repealed the North Pacific Fisheries Act and enacted the North Pacific Anadromous Stocks Act in its place. Pub. L. No. 102-567, 106 Stat. 4309; Pub. L.

No. 102-587, 106 Stat. 5098 (codified at 16 U.S.C. §§ 5001-5012). The North Pacific Anadromous Stocks Act was designed to implement a new international Convention for the Conservation of Anadromous Stocks in the North Pacific Ocean. 16 U.S.C. § 5001. Unlike the 1952 Convention, this new Convention addressed only those waters beyond the 200-mile limit of the exclusive economic zone. 16 U.S.C. § 5002(6). Fishing within the exclusive economic zone was thus no longer limited by treaty. As a result, NMFS repealed the regulations implementing the North Pacific Fisheries Act because they no longer had a statutory basis. See 60 Fed. Reg. 39,272 (Aug. 2, 1995). At the time, NMFS did not revise the Salmon FMP to reflect that change. The State thus continued to manage salmon fisheries in both state and federal waters within the three historic net-fishing areas, including Cook Inlet. See 77 Fed. Reg. 75,570 (Dec. 21, 2012).

Then, in 2010, the Council undertook a comprehensive review of the Salmon FMP. Its review addressed various legal developments, including new requirements for FMPs that had been added in the most recent reauthorization of the MSA. Pub. L. No. 109-479 at § 104, 120 Stat. 3575 (2007). See 77 Fed. Reg. at 75,583. After extensive study and several opportunities for public input, the Council voted unanimously to adopt Amendment 12 to the Salmon FMP and to submit it to NMFS for approval. Id. at 75,570.

In relevant part, Amendment 12 redefines the West Area off the Alaskan coast to exclude "the three small pockets of Federal waters," including the federal waters in Cook Inlet, that have been exclusively managed by the State for over five decades. 77 Fed. Reg. at 75,570, 75,587; 50 C.F.R. § 679.2. Excluding the federal waters in Cook Inlet from the Salmon FMP had the effect of maintaining the State's management of salmon stocks in the area. 77 Fed. Reg. at 75,572, 75,583. That is because, with no FMP in place, the State of

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.                                    4
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 11 of 32

Alaska had the authority under the MSA to regulate Alaskan-registered fishing vessels in federal waters.  See 16 U.S.C. § 1856(a)(3)(A)(i).  The Salmon FMP continued to apply to the vast majority of the exclusive economic zone, and it prohibited commercial fishing in the redefined West Area.  77 Fed. Reg. at 75,570, 75,583.  NMFS performed its own review, approved Amendment 12, and published a final rule to implement it.  77 Fed. Reg. at 75,570.

Two associations of commercial salmon fishermen and seafood processors operating in Cook Inlet filed this suit to challenge Amendment 12.  ECF No. 1.  They alleged that the Amendment violated the MSA because Section 1852(h)(1) requires a council to prepare an FMP "for each fishery under its authority that requires conservation and management."  16 U.S.C. § 1852(h)(1); ECF No. 30 at 33.  Because Cook Inlet is subject to state management, Plaintiffs argued, NMFS was required to approve an FMP that covers the federal waters within the area.  ECF No. 30 at 33-34.  Plaintiffs also alleged that Federal Defendants violated NEPA by failing to 1) take a hard look at the 2012 fishery management disaster, 2) take a hard look at the impacts of unregulated fishing in the Cook Inlet, and 3) consider a reasonable range of alternatives in its Environmental Assessment ("EA").  ECF No. 30 at 47-54.  The State of Alaska joined the suit as an intervenor-defendant.  ECF Nos. 12, 27.

On cross-motions for summary judgment, this Court upheld Amendment 12 and entered judgment in favor of NMFS and Alaska.  ECF Nos. 64, 65.  The Court concluded that the statute was ambiguous as to whether a Council must prepare (and NMFS approve) an FMP for a fishery that does not require federal conservation and management under an FMP.  ECF No. 64 at 23.  Because NMFS's interpretation of the statute was reasonable, the court afforded it deference under step two of <u>Chevron, U.S.A., Inc. v. Natural Resources</u>

<u>United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.</u>                    5
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 12 of 32

Defense Council, Inc., 467 U.S. 837, 842 (1984).  ECF No. 64 at 23-31.  The Court likewise

dismissed Plaintiffs' NEPA claims, finding in favor of Federal Defendants.  ECF No. 64 at

35-41.

The court of appeals reversed.  United Cook Inlet Drift Ass'n v. Nat'l Marine

Fisheries Servs., 837 F.3d 1055 (9th Cir. 2016).  It held that Section 1852(h)(1) of the MSA

requires FMPs to cover all fisheries in federal waters that need any "conservation and

management" by any entity.  Id. at 1065.  The Ninth Circuit determined that it does not

matter whether federal management *under an FMP* is necessary; a Council need only

determine that some management of a fishery is necessary.  Id.  Here, the court believed,

that analysis was straightforward: "the government concedes that the Cook Inlet fishery

requires conservation and management."  Id. at 1061.

The court thus rejected NMFS's interpretation of the Act at the first step of Chevron

and did not assess whether NMFS's interpretation was permissible under the second step or

whether NMFS had complied with NEPA.[1]  Id. at 1063.  It reversed and remanded for

further proceedings and this Court entered judgment in Plaintiffs' favor.  Id. at 1065; ECF

No. 102.  Importantly, the Court did not vacate Amendment 12, but instead remanded the

decision to NMFS.  ECF No. 102 at 1.  Additionally, Plaintiffs filed a joint proposed order

with Federal Defendants agreeing that Amendment 12 should not be vacated and should

remain in place.  ECF No. 101.  Thus, Amendment 12 remains in place today, as if this

lawsuit never transpired.

---

[1] The Ninth Circuit did not reach the merits of Plaintiffs' NEPA argument.  United Cook Inlet
Drift Ass'n, 837 F.3d at 1065 n.4.

Plaintiffs subsequently filed an application for an award of attorneys' fees and costs under EAJA, seeking $488,783 in attorney and professional fees and $12,893.09 in costs, for a total of $501,676.09.  ECF No. 106 at 3.

## STANDARD OF REVIEW

Under the American rule governing attorneys' fees, courts follow "a general practice of not awarding fees to a prevailing party absent explicit statutory authority."  Key Tronic Corp. v. United States, 511 U.S. 809, 819 (1994) (citation omitted).  EAJA, 28 U.S.C. § 2412(d), is a "limited exception" to that rule, see Forest Conservation Council v. Devlin, 994 F.2d 709, 712-13 (9th Cir. 1993) (citing Pierce v. Underwood, 487 U.S. 552, 575 (1988)), and provides that

> a court shall award to a prevailing party . . . fees and other
> expenses, in addition to any costs . . . incurred by that party in any
> civil action . . . including proceedings for judicial review of agency
> action . . . unless the court finds that the position of the United
> States was substantially justified or that special circumstances
> make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  As with any waiver of sovereign immunity, EAJA must be strictly construed in the government's favor.  See Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1983).

A fee applicant must make several showings to receive an award under EAJA.  The applicant must be a "prevailing party" and meet eligibility requirements, the government's legal position must not have been "substantially justified," and there must be a complete absence of "special circumstances" that would make an award unjust.  See, e.g., Sullivan v. Hudson, 490 U.S. 877, 883 (1989).  Even after satisfying these criteria, the party seeking fees must demonstrate that its request is reasonable.  Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.                    7
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 14 of 32

## ARGUMENT

### I.    Plaintiffs Are Not Entitled to Fees and Costs Under EAJA.

#### A.    Plaintiffs have not shown that they are eligible for fees under EAJA.

"The party seeking fees has the burden of establishing its eligibility." Love v. Reilly, 924 F.2d 1492, 1494 (9th Cir. 1991) (citing Thomas v. Peterson, 841 F.2d 332, 337 (9th Cir. 1988)). Under EAJA, a plaintiff organization[2] must show that it is "eligible to receive an award," 28 U.S.C. § 2412 (d)(1)(B), by demonstrating that, at the time the action was filed, its net worth did not exceed seven million dollars and it did not have more than five hundred employees.  28 U.S.C. § 2412(d)(2)(B); see also Info. Scis. Corp. v. United States, 86 Fed. Cl. 269, 280 (2009) ("The plaintiff bears the burden of establishing that it meets the net worth requirements imposed by the EAJA.").

Plaintiffs have not met their burden of establishing that they meet the net worth requirements imposed by EAJA.  The only documentation that Plaintiffs set forth as evidence of their eligibility in this context are two conclusory declarations by Erick Huesbsch, the vice president of UCIDA, and David Martin, the treasurer of CIFF.  ECF Nos. 108, 109.  These declarations merely allege that the net worth of each company "did not exceed $7,000,000" and that each "did not have more than 500 employees at the time this civil action was filed."  ECF No. 108 at 1-2; ECF No. 109 at 1-2.  Without other documentation to support these self-serving assertions, Plaintiffs have failed to satisfy the eligibility requirements of EAJA.[3]  Am. Pac.

---

[2] Specifically, 28 U.S.C. § 2412(d)(2)(B) provides that "any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization" must have a net worth that did not exceed seven million dollars at the time the action was filed in order to be eligible for EAJA fees.

[3] Plaintiffs' application for fees and costs falls short of other EAJA requirements as well.  For instance, under EAJA, fees are paid directly to the prevailing party, not the attorney.  28 U.S.C. §§ 2412(d)(1)(A), 2412(d)(2)(B); see also Astrue v. Ratliff, 560 U.S. 586 (2010) (holding that

Concrete Pipe Co. v. NLRB, 788 F.2d 586, 591 (9th Cir. 1986) (noting that plaintiff qualified for EAJA on the basis of net worth because it submitted a financial statement, "prepared in accordance with generally accepted accounting principles," showing a net worth less than the EAJA ceiling); Info Scis. Corp., 86 Fed. Cl. at 280 ("Self-serving affidavits and unaudited balances, alone, are not considered sufficient to establish a plaintiff's net worth."); Shooting Star Ranch, LLC v. United States, 230 F.3d 1176, 1178 (10th Cir. 2000) (concluding that, in the EAJA context, "the party seeking such an award must do more than make a bare assertion that it meets the statutory criteria"); Fields v. United States, 29 Fed. Cl. 376, 382 (1993) ("A conclusory affidavit without supporting evidence is inadequate to establish such 'party' status. Thus, a petitioner requesting fees under the EAJA *must* present sufficient evidence so that his or her net worth may be ascertained and verified by the court.").

Plaintiffs have not shown that they are eligible for fees under EAJA and may not provide the missing evidence in reply. See Hamby v. Walker, No. 3:14-cv-00089-TMB, 2015 WL 12516788, at *2 (D. Alaska Sept. 2, 2015). As such, Plaintiffs' fee application should be denied.

---

an award of attorneys' fees under EAJA was payable to claimant as opposed to her attorney). Accordingly, a Plaintiff must show that the fees requested were actually billed to them by their attorney. Relatedly, Plaintiffs must submit an "itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B); see also L.R. 54.3(a)(3). To satisfy these requirements, an attorney must submit "contemporaneous records of exact time spent on the case, by whom, their status and usual billing rates, as well as a breakdown of expenses . . . ." Comty. Heating & Plumbing Co. v. Garrett, 2 F.3d 1143, 1146 (1993). Plaintiffs here have failed to meet these requirements, conceding that the itemization of fees incurred on this case "is not a copy of the invoices provided to Plaintiffs by Stoel Rives." ECF No. 107 at 7.

**B. Plaintiffs are not entitled to EAJA fees because the government's position was substantially justified.**

Even if Plaintiffs had met their burden of establishing eligibility under EAJA, Plaintiffs should not recover any fees in this case because the government's position was substantially justified.[4]  Under EAJA, a party cannot recover fees if "the court finds that the position of the United States was substantially justified . . . ."  28 U.S.C. § 2412(d)(1)(A).  "A substantially justified position must have a reasonable basis both in law and fact."  Gutierrez v. Barnhart, 274 F.3d 1255, 1258 (9th Cir. 2001) (citation omitted).  See also Gonzales v. Free Speech Coal., 408 F.3d 613, 618 (9th Cir. 2005) ("Put another way, substantially justified means there is a dispute over which reasonable minds could differ.") (citation omitted).  This test requires a single inquiry into the governments' *overall* conduct during litigation (*i.e.*, not a claim-by-claim inquiry), Al-Harbi v. Immigration & Naturalization Serv., 284 F.3d 1080, 1085-86 (9th Cir. 2002), and encompasses the administrative activity underlying plaintiff's lawsuit.  Thangaraja v. Gonzales, 428 F.3d 870, 874 (9th Cir. 2005).  The inquiry is also distinct from the court's merits determination, and so the Federal Defendants' loss on appeal does not guarantee a plaintiff's eligibility for fees: "[i]n considering substantial justification under EAJA, . . . it is not enough to repeat the analysis of the merits decision, and add adjectives."  Gonzales, 408 F.3d at 620.  In particular, an agency's "arbitrary and capricious conduct is not *per se* unreasonable."  Andrew v. Bowen, 837 F.2d 875, 878 (9th Cir. 1988).

Here Federal Defendants' position was "justified to a degree that could satisfy a reasonable person," Pierce v. Underwood, 487 U.S. 552, 565 (1988), for a number of reasons.  First, the record demonstrates that the government's *overall* conduct, including the underlying

---

[4]   For purposes of this motion, Federal Defendants do not contest Plaintiffs' status as a prevailing party for purposes of an award under EAJA.

action of NMFS in promulgating Amendment 12, was reasonable.  Thangaraja, 428 F.3d at 874;

see also Gutierrez, 274 F.3d at 1259 (determining that the district court erred in not addressing

the reasonableness of the agency's underlying conduct and, instead, basing a denial of fees on

the government's litigation position).  For example, during the preparation of Amendment 12,

the Council considered revisions of the FMP at five separate meetings that occurred over a year.

77 Fed. Reg. 19,605, 19,606 (Apr. 2, 2012).  At each of these meetings, the Council took public

testimony and considered written and oral public comments.  Id.  The Council also conducted a

special open workshop for stakeholders, which was attended by members of the public, Council

members and staff, and State and Federal agency staff.  Id.  After the Council voted unanimously

to recommend Amendment 12 to the FMP, 77 Fed. Reg. at 75,570, NMFS began its own

thorough evaluation, which included a comment period on the proposed rule, 77 Fed. Reg.

21,716 (April 11, 2012), and the preparation of an EA pursuant to NEPA, which was circulated

for public comment.  RULEFMP 0662-930.   The Council and NMFS's actions in promulgating

Amendment 12 underscores the care and thoroughness with which they involved various

stakeholders and sought public input.

Second, Federal Defendants' litigation position had a reasonable basis in law and fact.

Gutierrez, 274 F.3d at 1258.   Renee v. Duncan, 686 F.3d 1002 (9th Cir. 2012), is instructive.  In

that case, the Ninth Circuit concluded that plaintiffs – a group of California public school

students and parents who challenged the Department of Education's interpretation of "highly

qualified teachers" – were not entitled to fees under EAJA despite succeeding on the merits.  The

Ninth Circuit first noted that the government was tasked with interpreting an ambiguous term

and that, in so doing, the government "advanced a 'novel but credible extension or interpretation

of the law.'"  Id. (quoting Timms v. United States, 742 F.2d 489, 492 (9th Cir. 1984)).  Second,

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.                                             11
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 18 of 32

the Ninth Circuit noted that the government had to make a decision without guidance from any federal court on the issue. Id. Finally, the Ninth Circuit noted that the district court had found in the government's favor, and that this disagreement between federal judges was a sign that the government's position, although ultimately incorrect, did not lack a reasonable basis in law and fact. Id.

So too here. NMFS's decision regarding Amendment 12 ultimately hinged on an interpretation of an ambiguous statute lacking any preexisting judicial precedent to guide the agency's decision. See Saysana v. Gillen, 614 F.3d 1, 6 (1st Cir. 2010) ("Where . . . a case presents a novel issue and one on which there is little precedent, courts have found that an award of EAJA fees is not warranted."). To account for this lack of guidance, NMFS looked to the historical management of the fishery, which spanned over fifty years and was never meaningfully challenged by Plaintiffs. Since its statehood in 1959, Alaska managed the commercial salmon fishing in Cook Inlet, see Pub. L. No. 579, 68 Stat. 698, and the North Pacific Fisheries Act of 1954 provided that salmon fishing in the Cook Inlet should conform to Alaska regulations. Id. After the enactment of the MSA in the 1970s, the North Pacific Fishery Management Council developed the salmon FMP, which explicitly allowed for fisheries within the Cook Inlet to be managed by Alaska as "inside fisheries." See 44 Fed. Reg. at 33,250. Finally, in 1992, when Congress enacted the North Pacific Anadromous Stocks Act, the salmon FMP was not revised and Alaska continued to manage salmon fisheries within the Cook Inlet. 16 U.S.C. §§ 5001-5012. Thus, NMFS's enactment of Amendment 12, which excluded the Cook Inlet from the salmon FMP, effectively maintained Alaska's management of the salmon stocks in the area. 77 Fed. Reg. at 75,572, 75,583. Given this history, NMFS reasonably interpreted the MSA as aligning with the practical considerations attendant to maintenance of

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.                    12
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 19 of 32

this unique fishery, an approach that had been accepted for decades and was never previously challenged.

In addition to relying on the historical management of the Cook Inlet to guide its interpretation, Federal Defendants reasonably sought guidance from three other provisions of the MSA, which allowed States to regulate fishing in federal waters: 1) 16 U.S.C. §1856(a)(3)(A), which provides that a State may regulate state-registered vessels operating in federal waters if "there is no fishery management plan or other applicable Federal fishing regulations for the fishery in which the vessel is operating," and if the state regulation is consistent with federal law; 2) 16 U.S.C. §1856(a)(3)(B), which provides that an FMP may formally delegate management of a fishery, and of all fishing vessels operating within it, to a State; and 3) 16 U.S.C. §1856(a)(3)(C), which provides that the State of Alaska may regulate all fishing vessels operating in a fishery for which there was no FMP in place on August 1, 1996, if the Secretary finds that the State has a legitimate interest in conserving and managing that fishery. Federal Defendants' reliance on these provisions to interpret an ambiguous statute reflects a reasonable approach to agency rulemaking.

Consistent with this understanding, Federal Defendants' interpretation was initially upheld by this Court. While the Ninth Circuit ultimately reversed that decision,[5] the government's position was substantially justified because a reasonable person could and did

---

[5] Significantly, the Ninth Circuit did not reach Plaintiffs' NEPA or remaining MSA claims, all of which this Court had decided in favor of Federal Defendants. United Cook Inlet Drift Ass'n, 837 F.3d at 1065 n.4. As Plaintiffs achieved no success on these claims – and because these claims implicated the reasonable rulemaking process outlined above – the claims only confirm that Federal Defendants' position was substantially justified. Al-Harbi, 284 F.3d at 1084-85 ("[W]hen we decide whether the government's litigation position is substantially justified, 'the EAJA . . . favors treating a case as an inclusive whole, rather than as atomized line items.'" (quoting United States v. Rubin, 97 F.3d 373, 75 (9th Cir. 1996))).

think it correct.  Pierce, 487 U.S. at 556 n.2; Renee, 686 F.3d at 1017 ("Given the substantial disagreement among federal judges on the Secretary's contentions, Appellants face the daunting task of arguing that the Secretary's position lacked a reasonable basis in law and fact."); Soda Mountain Wilderness Council v. Bureau of Land Mgmt., No. 1:12-cv-00434-CL, 2016 WL 355478, at *2 (D. Or. Jan. 28, 2016) ("Here, I accept the Ninth Circuit's prior adverse decision as correct. . . . [b]ut . . . the government's position was nonetheless substantially justified because reasonable minds could differ on this close issue.").  Plaintiffs, in effect, have argued that this Court's thoughtful and considered opinion is plainly unreasonable and that no other court could have arrived at the same conclusion.   Federal Defendants do not agree, nor should this Court. The government's position, while incorrect according to this particular panel, was nonetheless reasonable.  Given these considerations and Ninth Circuit precedent on this issue, the government's position was "justified to a degree that could satisfy a reasonable person."  Pierce, 487 U.S. at 565.

Plaintiffs' arguments to the contrary are meritless.  For instance, in Oregon Natural Resources Council v. Madigan, 980 F.2d 1330 (9th Cir. 1992), the Ninth Circuit concluded that the government was liable for attorneys' fees under EAJA because the government's arguments to the contrary merely rehashed their merits briefing and failed to offer relevant legal or factual considerations supporting the reasonableness of its position.  Here, by way of contrast, Federal Defendants have argued not that their position during rulemaking and litigation was *correct* – a position obviously incompatible with the Ninth Circuit's decision – but that the position was *reasonable* as the product of a careful, good faith process drawing upon decades of past practice and fraught with some measure of uncertainty given the total absence of preexisting judicial guidance.

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.                    14
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 21 of 32

Likewise, in <u>United States v. One 1984 Ford Van, bearing VIN No.</u>

<u>1FBHS3110EHB470717</u>, 873 F.2d 1281 (9th Cir. 1989), the Ninth Circuit concluded that the

government was liable for attorneys' fees under EAJA because the merits case was

indistinguishable from a previous Ninth Circuit decision and the government thus had no

reasonable basis in the law or the facts for taking a stance that was contrary to the earlier

decision.  Here, however, Federal Defendants did not have the benefit of an identical Ninth

Circuit case to derive guidance before forming a legal position.  To the contrary, Federal

Defendants here developed their position during rulemaking and litigation in the absence of

controlling case law, and relied instead on historical and practical considerations in interpreting

an ambiguous law.  Viewed in its totality, the evidence demonstrates that Federal Defendants'

position was substantially justified.

II.     **Plaintiffs' Requested Fee Award is Grossly Excessive.**

    A.  **Plaintiffs have not shown that their requested rates are reasonable or necessary,
and are entitled to no more than $125 per hour.**

Even if the Court finds that Plaintiffs are eligible for and entitled to fees and costs in this

matter, they are nonetheless not entitled to receive roughly half a million dollars as compensation

for an uncomplicated matter of administrative law resolved through two rounds of dispositive

briefing and that ultimately left the the agency's decision inntact.   EAJA permits awards of

reasonable attorneys' fees according to a "lodestar" calculation, or a *reasonable* number of hours

multiplied by a *reasonable* billing rate.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983).  For

purposes of the lodestar calculation, a reasonable hourly rate is the prevailing market rate in the

relevant legal community,  <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984), in this case, Anchorage,

Alaska.  <u>Sierra Club v. EPA</u>, 339 F. App'x 678, 679 (9th Cir. 2009) (quotation omitted).  The

rate should represent what a lawyer of comparable skill, experience, and reputation could

<u>United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.</u>                                                    15
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 22 of 32

command in the same community for comparably complex litigation. Blum, 465 U.S. at 895. But whatever the local market rates, a district court considering a request for fees under EAJA may not award rates in excess of $125 per hour "unless [it] determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii).

Plaintiffs have sought rates over EAJA's statutory cap, citing a limited availability of qualified attorneys. To justify such rates, they must demonstrate 1) that counsels' professed specialization in a particular field of law reflects some distinctive knowledge or specialized skill generally unavailable in the profession at large; 2) that such specialization was "needful for the litigation in question;" and 3) that such specialization could only be obtained at market rates in excess of $125 per hour. Love, 924 F.2d at 1496 (citation omitted). Plaintiffs have made none of these showings.

Plaintiffs contend that their counsel possesses distinctive knowledge or skill on the mistaken assumption that this case implicated "environmental law." ECF No. 106 at 6 (citing Love, 924 F.2d at 1496). But unlike Love and the other cases cited by Plaintiffs – each of which implicated fact-sensitive technical or scientific questions – this case required nothing beyond basic knowledge of statutory interpretation and administrative law, and "knowledge of administrative law, even in a particular area of the law such an environmental or fisheries law, is not a specialized skill." Foley v. U.S. Dep't of Interior, No. 1:07-CV-00016JWS, 2009 WL 275648, at *4 (D. Alaska Feb. 5, 2009). "[N]othing in EAJA or its legislative history indicates that the Congress intended to entitle all lawyers practicing administrative law in technical fields to a fee enhancement." Truckers United for Safety v. Mead, 329 F.3d 891, 895 (D.C. Cir. 2003) (citation omitted). See also Atlantic Fish Spotters Ass'n v. Daley, 205 F.3d 488, 492 (1st Cir.

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.                    16
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 23 of 32

2000) ("in most cases an otherwise competent lawyer can – albeit at the cost of some extra time – learn enough about the particular controversy to litigate in the area [of administrative law] adequately").  Plaintiffs' counsel's expertise in environmental law is therefore irrelevant to the instant motion.

But even if certain practices of fisheries law or administrative law could be said to require distinctive expertise, that expertise would have been unnecessary to resolve Plaintiffs' Complaint.  At bottom, each of Plaintiffs' MSA claims merely considered whether Congress has allowed states to manage certain fisheries in need of conservation, an uncomplicated question of statutory interpretation and application of Chevron USA, Inc. v. Natural Res. Def. Council, Inc, 467 U.S. 837 (1984), "the most cited case in modern public law."  Thomas J. Miles & Cass R. Sunstein, Do Judges Make Regulatory Policy? An Empirical Investigation of Chevron, 73 U. Chi. L. Rev. 823 (2006).  Likewise, Plaintiffs' NEPA claims posed relatively straightforward questions as to whether NMFS addressed particular issues in its environmental analysis.  In these circumstances – where a cases hinges on "established . . . principles with which the majority of attorneys are, or should be, familiar" – the Ninth Circuit has flatly refused to award enhanced fees.  Ramon-Sepulveda v. Immigration & Naturalization Serv., 863 F.2d 1458, 1463 (9th Cir. 1988) (abrogated on other grounds by Sorenson v. Mink, 239 F.3d 1140, 1149 (9th Cir. 2001)).  See also NRDC v. Winter, 543 F.3d 1152 n.2 (9th Cir. 2008).

In any event, Plaintiffs have not demonstrated that any needful expertise required above-market rates, offering only boilerplate conclusions and self-serving testimony to that effect.  See ECF No. 106 at 8; ECF No. 107 "Morgan Decl.") ¶6.  Indeed, Plaintiffs have not even provided precise, year-by-year hourly rates for each of their attorneys, Morgan Decl. ¶7, and have neglected to clearly demarcate any rates whatsoever in their billing records.  ECF No. 107-1.

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.                                                                17
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 24 of 32

Instead, Plaintiffs have proffered vague ranges of possible rates that are "variable and subject to change," Morgan Decl. ¶7. Nor is there any evidence (such as declarations of third-party attorneys with knowledge of local rates) that these "variable" rates are reasonable for Anchorage practitioners or for necessary practitioners outside of Anchorage.[6] By failing to supply this indispensable evidence in their motion, Plaintiffs have waived any claim to their requested rates and may not supply the missing evidence in reply. See Hamby v. Walker, No. 3:14-CV-00089-TMB, 2015 WL 1712634, at *4 (D. Alaska Apr. 15, 2015); Hamby v. Walker, No. 3:14-CV-00089-TMB, 2015 WL 12516788, at *1 (D. Alaska Sept. 2, 2015). Accordingly, Plaintiffs are entitled to no more than the statutorily-capped rate of $125/hour.[7] Cf. Pollinator Stewardship Council v. U.S. EPA, No. 13-72346, 2017 WL 3096105, at *6 (9th Cir. June 27, 2017) (awarding enhanced rates where petitioners supplied third-party declarations and case law in support).

---

[6] In any event, Plaintiffs' requested rates are excessive for the Anchorage area. Compare Mason v. Fed. Express Corp., No. 3:14-CV-0107-JWS, 2016 WL 4098727, at *3 (D. Alaska July 28, 2016) (awarding $300/hour for lawyers with 26 and 36 years of experience) and Hamby v. Walker, No. 3:14-CV-00089-TMB, 2015 WL 1712634, at *9 (D. Alaska Apr. 15, 2015) (awarding $375/hour for 35 years of experience) with Morgan Decl. ¶7 (seeking $320/hour for three years of experience). And while Plaintiffs have not explained or demonstrated why non-local rates are justified under Love, 924 F.2d at 1496, their requested rates are excessive even for the Seattle community in which Plaintiffs' counsel practices. Compare IDS Prop. & Cas. Ins. Co. v. Fellows, No. C15-2031 TSZ, 2017 WL 4122565, at *3 (W.D. Wash. Sept. 15, 2017) (collecting cases awarding between $350/hour and $425/hour for lead counsel) and Morgan Decl. ¶7 (seeking up to $595/hour).

[7] Plaintiffs have not requested that EAJA's $125/hour cap be adjusted to account for increased cost of living, 28 U.S.C. § 2412(d)(2)(A)(ii), and therefore have waived any argument or request for such rates. Had Plaintiffs not waived this request, they would be entitled to no more than the Ninth Circuit's prescribed maximum EAJA rates, calculated by the year in which compensable work was performed. See https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (last visited Feb. 5, 2018).

In sum, Plaintiffs cannot have it both ways. If this was truly a simple case where the statute was unambiguous (which it was not), then Plaintiffs needed no specialized expertise to bring their challenge to Amendment 12, and their rates should reflect the EAJA cap of $125 per hour. If, on the other hand, this was a complicated case requiring specialized expertise, the agency's position was more than reasonable and therefore "substantially justified." Even then, however, Plaintiffs have failed to substantiate their request for enhanced rates for the reasons set forth above.

### B. Plaintiffs have unreasonably billed the United States for thousands of hours of fees.

When submitting a lodestar calculation, Plaintiffs must exercise billing judgment and submit a number of hours that is reasonable for services rendered: "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." Hensley, 461 U.S. at 434 (citation omitted). Thus, "excessive, redundant, or otherwise unnecessary hours" are not compensable. Id. Plaintiffs, however, have unreasonably billed the United States Treasury for hundreds of hours of such work.

At the onset, Plaintiffs may not recover fees from the United States for work attributable solely to litigation decisions made by Intervenor the State of Alaska. Under EAJA, a plaintiff may only bill the United States for work "opposing [federal] government resistance." Pollinator Stewardship Council, 2017 WL 3096105, at *9. Thus, "where plaintiffs are litigating an issue and are opposed only by private defendants, a fee award against the government would be manifestly unfair and contrary to historic fee-shifting principles." See also Love, 924 F.2d at 1496 (citation omitted). In this case, however, Plaintiffs seek compensation for 67.4 hours responding to the Intervenor's request for a rehearing *en banc* and a writ of certiorari, which

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.                    19
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 26 of 32

Federal Defendants in no way joined or supported.  See Att. A ("Annatoyn Decl.") ¶5.  These hours are not compensable.

Second, Plaintiffs are not entitled to compensation for work on their unsuccessful opposition to Federal Defendants' motion to transfer this action from Washington, D.C., to Alaska.  In the Ninth Circuit, "plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit."  Cabrales v. Cty. of Los Angeles, 935 F.2d 1050, 1052 (9th Cir. 1991).  As an initial matter, filing this case in the District of Columbia was ill-advised.  These Plaintiffs had filed previous cases in the District of Alaska, and should not have tried another forum that had, at best, a tangential connection to the actual merits.[8]  Moreover, Plaintiffs' opposition to Federal Defendants' motion was plainly unnecessary to the ultimate victory in this case, since Plaintiffs received a partially-favorable opinion from the Ninth Circuit after losing the motion.  Nor is this work compensable on the theory that Plaintiffs' opposition implicated "reasonably disputed issues" as a losing "skirmish[] on the way to winning the war."  Id. at 1053.  Instead, the reviewing court found that not a single public or private factor weighed against Federal Defendants' proposed transfer, and noted that this "case has no connection to the District of Columbia other than naming government officials with little involvement in the decisions at issue."  United Cook Inlet Drift Ass'n v. NMFS, 1:13-cv-00082-RBW, at *10, May 3, 2013 (D.D.C. 2013).  Plaintiffs are thus not entitled to the 49.3 hours they expended opposing the transfer motion.  See Annatoyn Decl. ¶4.

---

[8] See United Cook Inlet Drift Ass'n, Inc. v. Wolf, 09-cv-43-RRB (2009) (D. Alaska) (involving plaintiff's emergency petition for rulemaking to allow for a larger allocation of commercial salmon harvest in Cook Inlet); United Cook Inlet Drift Ass'n, Inc. v. Locke, 09-cv-241-TMB (2009) (D. Alaska) (requesting NMFS "to undertake appropriate review of those State salmon regulations affecting the Upper Cook Inlet EEZ for consistency with Magnuson-Stevens and other applicable law").

Third, Plaintiffs may not recover fees for retaining counsel in an effort to influence the formation of Amendment 12 long before the onset of litigation. Plaintiffs may only recover fees for such work when it is "contemporaneous with and related to success in the litigation," and not for "pre-litigation representation of their clients in administrative proceedings before the agency." <u>Pollinator Stewardship Council</u>, 2017 WL 3096105, at *11. <u>See also</u> <u>Nadarajah v. Holder</u>, 569 F.3d 906, 920 (9th Cir. 2009) (denying EAJA fees for "pre-litigation administrative proceedings" lacking "the requisite degree of *direct interaction* between a federal court and an administrative agency to justify an award of fees") (emphasis added) (citation omitted). Plaintiffs are thus ineligible for fees incurred before January, 2013, when Plaintiffs began preparing the Complaint in this matter, and the Court should decline to award any compensation for the 357.6 hours of work Plaintiffs' counsel expended on pre-litigation administrative proceedings between 2010 and 2012. These billing entries are untethered to any federal court's review of Amendment 12 and are therefore non-compensable on their face. Indeed, the entries' specifics confirm that Plaintiffs have invoked EAJA to receive a windfall for unreasonable, non-litigation expenses: among Plaintiffs' three years of pre-litigation bills are 50.2 hours spent attending administrative hearings (including travel time to and from Alaska), 79.2 hours evidently expended before Plaintiffs had formerly retained counsel on December 15, 2010, and 51.6 hours evaluating and meeting experts who were unnecessary to Plaintiffs' claims under <u>Chevron</u> and hornbook-NEPA clams. <u>See</u> Annatoyn Decl. ¶¶ 6-7. Such extensive and costly efforts to advance commercial interests through agency rulemaking – more akin to lobbying than to litigation – may not be laid at the feet of the United States taxpayer.[9]

---

[9] In the event that Plaintiffs' pre-litigation hours are compensable, the Court should reduce those hours to account for the substantial duplication of effort researching the MSA during both NMFS's administrative process and summary judgment briefing, *i.e.*, 39.7 hours. <u>See</u> Annatoyn

<u>United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.</u>   21
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 28 of 32

Fourth, Plaintiffs may not recover fees for their NEPA claims, which the Ninth Circuit did not consider and which remain unsuccessful. Hensley, 461 U.S. at 440. Under EAJA, unsuccessful claims are only compensable if they are related, *i.e.*, if they share "a common core of facts or are based on related legal theories." Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 902 (9th Cir. 1995) (citation omitted). As the Ninth Circuit has recognized, however, challenges to a single agency action under various statutes are not necessarily related merely because each claim seeks to vacate that action. Nat'l Wildlife Fed'n v. FERC, 870 F.2d 542, 547 (9th Cir. 1989) (overruled on other grounds by Comm'r, Immigration & Naturalization Serv. v. Jean, 496 U.S. 154, 157 (1990)). See also Sierra Club v. EPA, 769 F.2d 796, 803 (D.C. Cir. 1985). Here, Plaintiffs' successful MSA claims and unsuccessful NEPA claims are unrelated because they proceeded under distinct statutes and wholly distinct legal theories. See supra at 17. Because Plaintiffs' billing records do not reflect any demarcation between work on NEPA and MSA claims, an across-the-board reduction of 15% percent – the approximate fraction of Plaintiffs' briefing on their NEPA claims – is appropriate. Schwarz, 73 F.3d at 906 (upholding across-the-board reductions for "commingled and undifferentiated estimates of time").

Even after the aforementioned reductions, Plaintiffs' requested fees – totaling more than 600 hours – are excessive, particularly given that the Court declined to vacate the agency decision. Courts in the Ninth Circuit have recognized that cases resolved via cross-motions for summary judgment on administrative records should necessitate only a few hundred hours of attorney time. See, e.g., All. for the Wild Rockies v. Krueger, No. CV 12–150–M–DLC, 2014 WL 46498 (D. Mont. 2014) (awarding roughly 256 hours for work on motions seeking

_____

Decl. ¶8. Once more, Plaintiffs cannot have it both ways: if their counsel possess specialized skill, there would be no need for extensive research.

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.                                    22
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 29 of 32

supplementation of the administrative record, a preliminary injunction, and summary judgment, and on a motion to strike); Forestkeeper v. U.S. Forest Serv., No. CV F 09-392 LJO JLT, 2011 WL 2946176, at *8 (E.D. Cal. July 21, 2011) (adjusting compensable hours to 408 for two rounds of substantive briefing); Oregon Nat. Res. Council Fund v. Goodman, No. CIV. 05-3004-PA, 2008 WL 4000442, at *5 (D. Or. Aug. 25, 2008) (roughly 360 hours for trial court and appellate briefing). Consistent with this overbilling, Plaintiffs have not explained why seven attorneys were necessary to successfully litigate this matter. See Democratic Party of Wash. State v. Reed, 388 F.3d 1281, 1286 (9th Cir. 2004) ("courts ought to examine with skepticism claims that several lawyers were needed to perform a task"). A further reduction of 33% – producing a total award of 412.36 hours – is therefore appropriate to account for Plaintiffs' general overstaffing.

As set forth in Exhibit A, and assuming eligibility and entitlement, the aforementioned reductions to Plaintiffs' requested rates and hours produce a total award of $51,545 in attorneys' fees.

### C. Plaintiffs' requested costs are not compensable.

Plaintiffs have also sought costs in the amount of $12,893.09. These costs are not compensable for the simple reason that Plaintiffs' request for fees does not include any records in support. See Hensley, 461 U.S. at 437; Local Rule 54.1(b). Nor could Federal Defendants evaluate Plaintiffs' request even were the Court to construe Plaintiffs' previously-submitted bill of costs as operative vis-à-vis the instant motion (which it should not, given that the earlier document seeks $11,454.52 and Plaintiffs' motion does not explain this discrepancy). See ECF No. 82-1. For example, Plaintiffs' earlier records bill for $3,820.53 in costs accrued well before preparation for Plaintiffs' *litigation* began in 2013, including thousands of unexplained costs

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.                                          23
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 30 of 32

associated with "document reproduction," see supra at 21, and wholly omit the necessary hourly rates for $4,210.50 in administrative work performed on September 16, 2011 and May 20, 2013, and between January 15, 2013 and January 9, 2017. Even assuming Plaintiffs' previously-submitted materials are relevant, therefore, Plaintiffs would be entitled to no more than $3,423.49 in non-expert costs.

The Court should also deny Plaintiffs' request for $4,737.70 in expert witness fees. Expert witness expenses are recoverable under EAJA upon a finding by the Court that the expense was "necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A). Plaintiffs have made no particularized arguments for the necessity of this substantial expense, which was entirely superfluous given the lawsuit's focus on purely legal issues of statutory interpretation and straightforward, largely non-technical review of the administrative record. Even were that not the case, Plaintiffs' request for expert fees should be denied for failure to provide any rationale for the experts' requested rates, indicia of his expertise, or itemized records of his work. Absent such records, Federal Defendants have no means of evaluating whether such work was reasonable and necessary for the "preparation of . . . [Plaintiffs'] case." 28 U.S.C. § 2412(d)(2)(A). Indeed, the limited records Federal Defendants do possess indicate that Plaintiffs' expert billed his time during the wholly non-compensable period during which Plaintiffs sought to shape Amendment 12 through regulatory proceedings rather than during litigation. Compare supra at 21 with ECF No. 82-1 at 12 (billing for expert work entirely before January 31, 2011).

United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.                                    24
3:13-cv-00104-TMB
Case 3:13-cv-00104-TMB   Document 115   Filed 02/05/18   Page 31 of 32

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' request for fees and costs. Should the Court disagree and award fees and costs, it should award not more than $55,968.49.

DATED: February 5, 2018.                    Respectfully Submitted:

                                             JEFFREY H. WOOD
                                             Acting Assistant Attorney General

                                             */s/ Travis J. Annatoyn*
                                             TRAVIS J. ANNATOYN. Trial Attorney
                                             United States Department of Justice
                                             Environment & Natural Resources Division
                                             Wildlife & Marine Resources Section
                                             Ben Franklin Station, P.O. Box 7611
                                             Washington, D.C. 20044-7611
                                             Ph: 202- 514-5243
                                             Fax: 202-305-0275
                                             travis.annatoyn@usdoj.gov

                                             Attorneys for Federal Defendants

                                             OF COUNSEL:
                                             LAUREN SMOKER
                                             NOAA Office of General Counsel
                                             Juneau, Alaska

                                             *Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was today served via the Court's CM/ECF system on all counsel of record.

                                             */s/ Travis Annatoyn*
                                             TRAVIS ANNATOYN