# In the Supreme Court of the United States

STATE OF ALASKA, PETITIONER

*v.*

UNITED COOK INLET DRIFT ASSOCIATION, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE NINTH CIRCUIT*

## BRIEF FOR THE FEDERAL RESPONDENTS IN OPPOSITION

JEFFREY B. WALL
  *Acting Solicitor General*
  *Counsel of Record*
JEFFREY H. WOOD
  *Acting Assistant Attorney*
  *General*
DAVID C. SHILTON
ELLEN J. DURKEE
  *Attorneys*

  *Department of Justice*
  *Washington, D.C. 20530-0001*
  *SupremeCtBriefs@usdoj.gov*
  *(202) 514-2217*

Exhibit B - 1

## QUESTION PRESENTED

Whether the Secretary of Commerce, acting through the National Marine Fisheries Service, permissibly accounted for existing state regulation in determining that a fishery did not "require[] conservation and management" under the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. 1852(h)(1).

(I)

**Exhibit B - 2**

# TABLE OF CONTENTS

Page

Opinions below ................................................................1
Jurisdiction .....................................................................1
Statement........................................................................2
Argument........................................................................11
Conclusion......................................................................19

# TABLE OF AUTHORITIES

Cases:

*Anglers Conservation Network* v. *Pritzker,*
   809 F.3d 664 (D.C. Cir. 2016) ......................15, 16
*Chevron U.S.A Inc.* v. *Natural Res. Def. Council,*
   *Inc.,* 467 U.S. 837 (1984) ..........................9, 11, 15
*Dolan* v. *United States Postal Serv.,*
   546 U.S. 481 (2006) ...............................................13
*NLRB* v. *SW Gen., Inc.,* No. 15-1251 (Mar. 21, 2017) ........15

Treaties, statutes, and regulations:

Convention for the Conservation of Anadromous
   Stocks in the North Pacific Ocean, Feb. 11, 1992,
   T.I.A.S. No. 11,465, S. Treaty Doc. No. 102-30
   (1992) .....................................................................5
International Convention for the High Seas
   Fisheries of the North Pacific Ocean, May 9, 1952,
   4 U.S.T. 380, 205 U.N.T.S. 65................................4
Act of Jan. 12, 1983, Pub. L. No. 97-453, § 5(4),
   96 Stat. 2485 ........................................................13
Administrative Procedure Act, 5 U.S.C. 701 *et seq.* .............3
Fishery Conservation and Management Act of 1976
   (renamed as Magnuson-Stevens Fishery
   Conservation and Management Act),
   Pub. L. No. 94-265, 90 Stat. 331............................2

(III)

Exhibit B - 3

IV

Statutes and regulations—Continued:       Page

Magnuson-Stevens Fishery Conservation and
Management Act, Pub. L. No. 94-265, 90 Stat. 331
(16 U.S.C. 1801 *et seq.*)..............................................2
     § 302, 90 Stat. 350 ....................................................13
     16 U.S.C. 1801(a)(2) ...................................................2
     16 U.S.C. 1801(b)(1)....................................................2
     16 U.S.C. 1801(6)........................................................13
     16 U.S.C. 1802(5)........................................................12
     16 U.S.C. 1802(11) .......................................................2
     16 U.S.C. 1811(a)..........................................................2
     16 U.S.C. 1851(a)..........................................................3
     16 U.S.C. 1852(a)..........................................................2
     16 U.S.C. 1852(b)..........................................................2
     16 U.S.C. 1852(h)........................................................12
     16 U.S.C. 1852(h)(1) .................................2, 7, 9, 10, 12, 15
     16 U.S.C. 1852(h)(6) ...................................................18
     16 U.S.C. 1853(a)(15) ..................................................18
     16 U.S.C. 1854(a)-(b)....................................................3
     16 U.S.C. 1854(a)(1)(A) ...............................................15
     16 U.S.C. 1854(c)(1)......................................................11
     16 U.S.C. 1854(e) ........................................................18
     16 U.S.C. 1855(f) .....................................................3, 15
     16 U.S.C. 1856(a)(1) ......................................................2
     16 U.S.C. 1856(a)(3)(A)...................................3, 10, 14, 15
     16 U.S.C. 1856(a)(3)(A)(i) ..............................................7
     16 U.S.C. 1856(a)(3)(B)...............................................3, 10
     16 U.S.C. 1856(a)(3)(C)...............................................3, 16
Magnuson-Stevens Fishery Conservation and
Management Reauthorization Act of 2006,
Pub. L. No. 109-479, § 104, 120 Stat. 3584 ...........................6

**Exhibit B - 4**

Statutes and regulations—Continued:                Page

North Pacific Anadromous Stocks Act of 1992,
    Pub. L. No. 102-567, Tit. VIII, 106 Stat. 4309 ...................5

North Pacific Anadromous Stocks Convention Act of
    1992, Pub. L. No. 102-587, Tit. VIII, 106 Stat. 5098
    (16 U.S.C. 5001 *et seq.*)......................................................5

North Pacific Fisheries Act of 1954, ch. 669,
    68 Stat. 698 ..........................................................................4

50 C.F.R.:
    Section 210.1 (1971)...........................................................5
    Section 600.340(b)(2)(ii) (2012) .......................................4
    Section 600.340(b)(2)(iii) (2012) ......................................4
    Section 660.408 ...............................................................19
    Section 679.2 ................................................................6, 7

81 Fed. Reg. 71,893 (Oct. 18, 2016):
    (to be codified at 50 C.F.R. 600.305(c)(1))..................4, 18
    (to be codified at 50 C.F.R. 600.305(c)(1)(iii)
        and (x)) ......................................................4, 12

Miscellaneous:

35 Fed. Reg. 7070 (May 5, 1970)..............................................5
44 Fed. Reg. (June 8, 1979):
    p. 33,250 ...............................................................................5
    p. 33,251 ...............................................................................5
    p. 33,255 ...............................................................................4
    p. 33,259 ...............................................................................4
    p. 33,267 ...............................................................................5
60 Fed. Reg. 39,272 (Aug. 2, 1995) .........................................6

**Exhibit B - 5**

Miscellaneous—Continued:                                    Page

  77 Fed. Reg.:

    (Apr. 11, 2012):

      p. 21,717 ..................................................................5

    (Dec. 21, 2012):

      p. 75,570 ..........................................................6, 7, 8

      p. 75,571 ...............................................................18

      p. 75,572 .............................................................6, 8

      pp. 75,572-75,573 ..................................................8

      p. 75,573 ..........................................................15, 17

      p. 75,575 ...............................................................8

      pp. 75,575-75,576 ................................................17

      p. 75,576 ......................................................7, 12, 17

      p. 75,578 .............................................................7, 8

      p. 75,582 ...............................................................8

      p. 75,583 ..........................................................4, 6, 7

      p. 75,587 ...............................................................6

  81 Fed. Reg. (Oct. 18, 2016):

    p. 71,858 ................................................................4

    pp. 71,901-71,902 ................................................18

    p. 71,902 ..............................................................18

  H.R. Conf. Rep. No. 982, 97th Cong., 2d Sess. (1982) ........14

Exhibit B - 6

# In the Supreme Court of the United States

No. 16-1044

STATE OF ALASKA, PETITIONER

*v.*

UNITED COOK INLET DRIFT ASSOCIATION, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

## BRIEF FOR THE FEDERAL RESPONDENTS IN OPPOSITION

### OPINIONS BELOW

The opinion of the court of appeals (Pet. App. 1a-23a) is reported at 837 F.3d 1055. The opinion of the district court (Pet. App. 24a-81a) is not published in the *Federal Supplement* but is available at 2014 WL 10988279.

### JURISDICTION

The judgment of the court of appeals was entered on September 21, 2016. A petition for rehearing filed by the State of Alaska was denied on November 30, 2016 (Pet. App. 82a-83a). The petition for a writ of certiorari was filed on February 27, 2017. The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

(1)

Exhibit B - 7

## STATEMENT

1. Congress enacted the Fishery Conservation and Management Act of 1976, later renamed the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson-Stevens Act or Act), Pub. L. No. 94-265, 90 Stat. 331 (16 U.S.C. 1801 *et seq.*), to "conserve and manage the fishery resources found off the coasts of the United States." 16 U.S.C. 1801(b)(1). The Act responded to concerns that certain stocks of fish had declined because of increased fishing pressure, inadequate conservation efforts, and habitat loss. 16 U.S.C. 1801(a)(2). To combat that depletion of resources, Congress established federal management authority over all fishery resources within an "exclusive economic zone" extending from the seaward boundary of each State—with a few exceptions, 3 miles from a State's coastline—to 200 nautical miles from the coast. 16 U.S.C. 1802(11), 1811(a); Pet. App. 6a. States retained fishery management authority over the first three nautical miles from their coastlines. 16 U.S.C. 1802(11), 1856(a)(1); Pet. App. 6a.

The Magnuson-Stevens Act also created eight Regional Fishery Management Councils (Regional Councils) to advise the Secretary of Commerce on fishery management. 16 U.S.C. 1852(a). Council members include federal and state fishery management officials and other fishery experts nominated by state governors and appointed by the Secretary. 16 U.S.C. 1852(b). Among other duties, each Council "shall" prepare and submit a fishery management plan (FMP), or necessary amendments to such a plan, "for each fishery under its authority that requires conservation and management." 16 U.S.C. 1852(h)(1). An FMP must be consistent with ten national standards for fishery conser-

vation and management. See 16 U.S.C. 1851(a) (listing standards).

An FMP or an amendment to an FMP becomes effective only when the Secretary, after a notice-and-comment period, promulgates final regulations implementing the approved plan. 16 U.S.C. 1854(a)-(b). The Secretary has delegated that responsibility to the National Marine Fisheries Service (NMFS). Regulations promulgated by NMFS are subject to judicial review to the extent authorized by the Administrative Procedure Act, 5 U.S.C. 701 *et seq.* 16 U.S.C. 1855(f).

In certain circumstances, States may also regulate fishing in federal waters—that is, waters within the exclusive economic zone. First, the Magnuson-Stevens Act provides that a State may regulate state-registered vessels operating in federal waters if "there is no fishery management plan or other applicable Federal fishing regulations for the fishery in which the vessel is operating," and if the state regulation is consistent with federal law. 16 U.S.C. 1856(a)(3)(A). Second, an FMP may formally delegate management of a fishery, and of all fishing vessels operating within it, to a State. 16 U.S.C. 1856(a)(3)(B). Third, the State of Alaska may regulate all fishing vessels operating in a fishery for which there was no FMP in place on August 1, 1996, if the Secretary finds that the State has a legitimate interest in conserving and managing that fishery. 16 U.S.C. 1856(a)(3)(C). In the last circumstance, the State's authority terminates upon the adoption of an FMP for the fishery. *Ibid.*

NMFS accounts for the potential state management of fisheries in its guidelines for developing FMPs. The guidelines advise Regional Councils to examine a "non-exhaustive list of factors" when deciding whether

a fishery that is not predominantly in federal waters or is not overfished "require[s] conservation and management." 81 Fed. Reg. 71,893 (Oct. 18, 2016) (to be codified at 50 C.F.R. 600.305(c)(1)). Among those factors are "[w]hether an FMP can improve or maintain the condition of the stock" and "[t]he extent to which the fishery is already adequately managed by states" or other groups "consistent with the requirements of the Magnuson-Stevens Act." *Ibid.* (to be codified at 50 C.F.R. 600.305(c)(1)(iii) and (x)).[1]

2. a. Since achieving statehood in 1959, the State of Alaska has managed commercial salmon fishing in state and adjacent federal waters in Cook Inlet, a body of water near Anchorage. 44 Fed. Reg. 33,259 (June 8, 1979); Pet. App. 5a. That arrangement dates back to the since-repealed North Pacific Fisheries Act of 1954, ch. 669, 68 Stat. 698. The North Pacific Fisheries Act implemented the International Convention for the High Seas Fisheries of the North Pacific Ocean (1952 Convention), May 9, 1952, 4 U.S.T. 380, 205 U.N.T.S. 65, which had prohibited commercial salmon fishing off the coast of Alaska, with the exception of Cook Inlet, Prince William Sound, and the Alaska Peninsula. Pet. App. 5a-6a; see 44 Fed. Reg. at 33,255; 77 Fed. Reg. 75,583 (Dec. 21, 2012). Regulations implementing the North Pacific Fisheries Act provided that salmon fishing in those three areas should con-

---

[1] The cited regulations were released in 2016, while this case was pending, and have yet to be codified. See 81 Fed. Reg. at 71,858. They are, however, materially similar to provisions in NMFS's previous regulations, which implemented the statutory national standards for FMPs. See 50 C.F.R. 600.340(b)(2)(ii) and (iii) (2012) (listing same two factors).

**Exhibit B - 10**

form to state regulations. See 35 Fed. Reg. 7070 (May 5, 1970); see also 50 C.F.R. 210.1 (1971).

Shortly after enactment of the Magnuson-Stevens Act, the newly established North Pacific Fishery Management Council (the Council) developed, and NMFS approved, an FMP for salmon fisheries in federal waters off the coast of Alaska (Salmon FMP). Pet. App. 7a; see 44 Fed. Reg. at 33,250. The Salmon FMP divided federal waters off the coast of Alaska into East and West Areas; Cook Inlet fell into the West Area. Pet. App. 7a. Consistent with the North Pacific Fisheries Act, the Salmon FMP prohibited commercial fishing in the West Area, with the exception of the "existing small-scale net fisheries" in Cook Inlet and the two other historic net-fishing areas. 44 Fed. Reg. at 33,251; see Pet. App. 7a. Although those fisheries "technically" extend into federal waters, they were "conducted and managed by the State of Alaska as inside fisheries." 44 Fed. Reg. at 33,267; see also 77 Fed. Reg. 21,717 (Apr. 11, 2012).

In 1992, Congress repealed the North Pacific Fisheries Act and enacted in its place the North Pacific Anadromous Stocks Act of 1992, Pub. L. No. 102-567, Tit. VIII, 106 Stat. 4309, and the North Pacific Anadromous Stocks Convention Act of 1992, Pub. L. No. 102-587, Tit. VIII, 106 Stat. 5098 (16 U.S.C. 5001 *et seq.*). The twin Acts were designed to implement a new international Convention for the Conservation of Anadromous Stocks in the North Pacific Ocean, Feb. 11, 1992, T.I.A.S. No. 11,465, S. Treaty Doc. No. 102-30 (1992). Pet. App. 9a. Unlike the 1952 Convention, this new Convention addressed only those waters beyond the 200-mile limit of the exclusive economic zone. *Id.* at 6a, 9a. Fishing within the exclusive economic zone was thus

no longer limited by treaty. As a result, NMFS re-
pealed the regulations implementing the North Pacific
Fisheries Act because they no longer had a statutory
basis. *Id.* at 9a; see 60 Fed. Reg. 39,272 (Aug. 2, 1995).
At the time, NMFS did not revise the Salmon FMP to
reflect that change. Pet. App. 9a. The State thus con-
tinued to manage salmon fisheries in both state and
federal waters within the three historic net-fishing
areas, including Cook Inlet. *Ibid.*; see 77 Fed. Reg. at
75,583.

b. In 2010, the Council undertook "a comprehensive
review of the Salmon FMP." Pet. App. 12a. Its review
addressed various legal developments, including new
requirements for FMPs that had been added in the re-
cent Magnuson-Stevens Fishery Conservation and Man-
agement Reauthorization Act of 2006, Pub. L. No. 109-
479, § 104, 120 Stat. 3584. Pet. App. 12a-13a, 31a-32a;
see 77 Fed. Reg. at 75,583. After extensive study and
several opportunities for public input, the Council voted
unanimously to adopt Amendment 12 to the Salmon
FMP and to submit it to NMFS for approval. Pet. App.
13a-14a.

In relevant part, Amendment 12 redefines the West
Area off the Alaskan coast to exclude the "three small
pockets of Federal waters," including the federal wa-
ters in Cook Inlet, that have been exclusively managed
by the State for over five decades. 77 Fed. Reg. at
75,570; see *id.* at 75,587; see also 50 C.F.R. 679.2; Pet.
App. 113a. Excluding the federal waters in Cook Inlet
from the Salmon FMP has the effect of maintaining
the State's management of salmon stocks in the area.
77 Fed. Reg. at 75,572, 75,583. That is because, with
no FMP in place, the State of Alaska has the authority
under the Magnuson-Stevens Act to regulate state-

registered fishing vessels in federal waters. See 16 U.S.C. 1856(a)(3)(A)(i). The Salmon FMP continues to apply to the vast majority of the exclusive economic zone, and it prohibits commercial fishing in the redefined West Area. 77 Fed. Reg. at 75,570, 75,583.

NMFS performed its own review, approved Amendment 12, and published a final rule to implement it. Pet. App. 14a; see 77 Fed. Reg. at 75,570; see also 50 C.F.R. 679.2. In the final rule, NMFS explained that the Magnuson-Stevens Act "provides the Council with broad discretion" to determine "whether a fishery is in need of conservation and management" and "to determine the appropriate management unit" for an FMP. 77 Fed. Reg. at 75,578; see 16 U.S.C. 1852(h)(1). As NMFS noted, the statutory standards "clearly contemplate that the selected management unit may not encompass all Federal waters if complementary management exists for a separate geographic area." 77 Fed. Reg. at 75,578. Therefore, Regional Councils should prepare FMPs only for overfished fisheries and for other fisheries where federal regulation would serve some useful purpose. *Id.* at 75,576. Among the factors relevant to that analysis is the extent to which a fishery is already adequately managed by a State consistent with the policies and standards of the Magnuson-Stevens Act. *Ibid.*

Here, the Council and NMFS's decision to remove the federal portion of Cook Inlet from the Salmon FMP was based on several considerations. Predominant among them were the conclusions that: (1) the State is best suited to manage the salmon fisheries located in Cook Inlet; (2) the State is adequately managing the salmon stocks and salmon fishing in the area and is doing so consistent with the policies of the Magnuson-

Stevens Act; and (3) federal management of the area under an FMP is unnecessary to conserve and manage stocks and fisheries, would serve no useful purpose, and would provide no present or future conservation or management benefits to justify the costs and burdens associated with adding a layer of federal management on top of state management. 77 Fed. Reg. at 75,570, 75,572-75,573, 75,582. Moreover, the combination of Amendment 12's prohibition on commercial salmon fishing in the redefined West Area and its removal of the federal portions of the historic net-fishing areas would allow salmon stocks to be managed as a single unit including both federal and state waters. *Id.* at 75,570, 75,572.

In adopting Amendment 12, the Council and NMFS also considered the unique salmon life cycle and widely accepted salmon management practices. 77 Fed. Reg. at 75,572. Salmon are anadromous fish. They hatch in freshwater, migrate to the ocean for much of their lives, and return to freshwater to spawn. Pet. App. 5a. Salmon fishing is best managed by limiting fishing to waters near the freshwater in which the salmon will spawn. 77 Fed. Reg. at 75,572, 75,578. Authorities can then use management strategies based on escapement goals. Escapement is the estimated number of salmon that will "escape" capture and be free to spawn in a given river, stream, or watershed. *Id.* at 75,582. By setting escapement goals, the State can monitor actual salmon numbers in inland state waters and can "utilize[] in-season management measures, including fishery closures, to ensure that minimum escapement goals are achieved." *Id.* at 75,575; see also *ibid.* ("The biology of salmon is such that escapement is the point in the species['] life history best suited to routine assess-

ment and long-term monitoring and is the metric most commonly used for assessing the status of salmon stocks.").

3. Two associations of commercial salmon fishermen operating in Cook Inlet filed this suit challenging Amendment 12. Pet. App. 13a. They alleged that the Amendment violates the Magnuson-Stevens Act because Section 1852(h)(1) requires a Council to prepare an FMP "for each fishery under its authority that requires conservation and management." 16 U.S.C. 1852(h)(1); see Pet. App. 43a. Because Cook Inlet is subject to state management, plaintiffs argued, NMFS was required to approve an FMP that covers the federal waters within the area. Pet. App. 44a. The State of Alaska joined the suit as an intervenor-defendant. *Id.* at 25a.

On cross-motions for summary judgment, the district court upheld Amendment 12 and entered judgment in favor of NMFS and Alaska. Pet. App. 24a-81a. The court concluded that the statute is ambiguous as to whether a Council must prepare (and NMFS approve) an FMP for a fishery that does not require federal conservation and management under an FMP. *Id.* at 51a, 54a. Because NMFS's interpretation of the statute was reasonable, the court afforded it deference under step two of *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984) (*Chevron*). Pet. App. 39a-42a, 55a-66a.

4. The court of appeals reversed. Pet. App. 1a-23a. It held that Section 1852(h)(1) of the Magnuson-Stevens Act unambiguously requires FMPs to cover all fisheries in federal waters that need any "conservation and management" by any entity. *Id.* at 16a-17a, 23a. In other words, it does not matter whether federal man-

agement under an FMP is necessary; a Council need only determine that some management of a fishery is necessary. *Id.* at 15a-23a. Here, the court believed, that analysis was straightforward: "the government concedes that the Cook Inlet fishery requires conservation and management." *Id.* at 15a.

The court of appeals thus rejected NMFS's interpretation of the Act at the first step of *Chevron*. It stated that accepting NMFS's interpretation that the Council could defer to existing state management would add the word "federal" before the phrase "conservation and management" in Section 1852(h)(1). Pet. App. 16a. And it dismissed two competing textual arguments. The court first examined Section 1856(a)(3)(A), which provides for some state authority in federal waters. That provision, it concluded, cannot "create an exception to the general obligation to issue an FMP when a fishery requires conservation and management." *Id.* at 17a. The court next rejected the argument that NMFS would be forced to issue an FMP for every fishery in federal waters "because all fisheries require some conservation and management." *Id.* at 21a n.3. The court explained that such a result would contradict the statute, which reflects Congress's understanding that not all fisheries require management. *Ibid.*

In the end, the court of appeals determined that "to delegate authority over a federal fishery to a state, NMFS must do so expressly" under Section 1856(a)(3)(B), not under Section 1856(a)(3)(A). Pet. App. 18a. "If NMFS concludes that state regulations embody sound principles of conservation and management and are consistent with federal law, it can incorporate them into the FMP." *Ibid.*

Because it held that the statute is clear, the court of appeals did not assess whether NMFS's interpretation was permissible under the second step of *Chevron*. Pet. App. 23a n.5. It reversed and remanded for further proceedings. *Id.* at 23a.[2]

## ARGUMENT

The court of appeals construed the Magnuson-Stevens Act to require an FMP whenever a fishery in federal waters needs some management, even if no federal intervention is necessary. NMFS agrees with petitioner that the court's decision is erroneous. The decision adopts an unduly restrictive reading of the statutory text, rather than deferring to the agency's permissible interpretation under *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

The court of appeals' decision, however, does not conflict with any decision of this Court or of any other court of appeals. Nor is it of sufficient practical im-

---

[2] On remand, the district court has not yet determined an appropriate remedy. Plaintiffs filed a motion proposing that the court vacate Amendment 12 and order NMFS to direct the Council (a non-party) to issue a new amendment within two years. D. Ct. Doc. 77, at 1-2 (Jan. 15, 2017). NMFS opposed plaintiffs' motion and proposed remand without vacatur, explaining that vacatur of the Amendment would have significant disruptive consequences in areas outside Cook Inlet. Vacatur would also likely require NMFS to close commercial fishing in the Cook Inlet exclusive economic zone because the Salmon FMP contains no measures to manage fishing in the area. Finally, although NMFS intends to work with the Council to develop a new amendment, NMFS has no legal authority to direct the Council to issue a new plan amendment. See D. Ct. Doc. 87, at 10-14 (Jan. 19, 2017). Instead, NMFS "may" prepare its own FMP if the Council fails to act within a reasonable time. 16 U.S.C. 1854(c)(1).

portance to warrant this Court's review. Although the decision erects unnecessary procedural obstacles, it will not preclude the management of Alaska salmon fisheries consistent with the policies and standards of the Magnuson-Stevens Act. Further review is not warranted.

1. The Magnuson-Stevens Act requires that a regional Council prepare and submit an FMP "for each fishery under its authority that requires conservation and management." 16 U.S.C. 1852(h)(1). NMFS has interpreted that statutory mandate to depend upon whether a fishery would benefit from conservation and management under an FMP—an analysis that accounts for, among other factors, existing regulation by States or other entities. 81 Fed. Reg. at 71,893 (to be codified at 50 C.F.R. 600.305(c)(1)(iii) and (x)); see also 77 Fed. Reg. at 75,576. The court of appeals rejected that interpretation, holding that the Act unambiguously demands an FMP for any fishery that requires any management. Pet. App. 15a-23a. As a result, the court determined that the Salmon FMP must cover the federal waters in Cook Inlet, even though the Council and NMFS believe that federal management there would be unproductive. The court's decision is erroneous.

a. The statutory phrase "requires conservation and management" does not sweep as broadly as the court of appeals believed. Although the Magnuson-Stevens Act defines "conservation and management" measures, 16 U.S.C. 1802(5), it does not specify when such measures are "require[d]." NMFS has determined that Section 1852(h)(1) compels federal intervention only when there is a need for conservation and management *under a federal FMP*. That commonsense limitation is implicit in Section 1852(h) itself, which

outlines the Regional Councils' responsibilities for preparing a federal FMP. See *Dolan* v. *United States Postal Serv.*, 546 U.S. 481, 486 (2006) (explaining that "[a] word in a statute may or may not extend to the outer limits of its definitional possibilities," depending in part on "the purpose and context of the statute"). It is also consistent with the overarching mission of the statute: to establish a "national program for the conservation and management of the fishery resources of the United States * * * necessary to prevent overfishing, to rebuild overfished stocks, to insure conservation, to facilitate long-term protection of essential fish habitats, and to realize the full potential of the Nation's fishery resources." 16 U.S.C. 1801(6). If federal management will not serve any of those conservation objectives, a fishery does not "require[] conservation and management" under a federal FMP.

The court of appeals' contrary construction of the statute strips the phrase "requires conservation and management" of significance. After all, most commercial fisheries require some degree of management by someone, whether a State, an industry group, or some other entity. Yet Congress specifically amended the Magnuson-Stevens Act to eliminate such automatic federal control. As initially enacted, the Act stated that each Council must prepare an FMP "with respect to each fishery within its geographical area of authority." § 302, 90 Stat. 350. Congress later amended that language to clarify that a Council need only develop an FMP with respect to each fishery within its geographical area of authority "that requires conservation and management." Act of Jan. 12, 1983, Pub. L. No. 97-453, § 5(4), 96 Stat. 2485. That amendment makes clear that FMPs are necessary only for some subset of

all fisheries. Indeed, the relevant Conference Report explains that the purpose of the amendment was "to clarify that the function of the Councils is not to prepare [an FMP] for each and every fishery within their geographical areas of authority." H.R. Conf. Rep. No. 982, 97th Cong., 2d Sess. 18 (1982).

Faced with that statutory history, the court of appeals offered only a circular response: that the 1983 amendment "indicates Congress understood that some fisheries might not require conservation or management." Pet. App. 21a n.3. That is true, and it is the point. Under NMFS's view, many commercial fisheries do not require conservation and management because they are adequately managed by non-federal entities. The court's view, meanwhile, assumes that some commercial fisheries function without any management from federal, state, or private entities. The court gave no reason to think that assumption is correct.

b. Other portions of the Act further support NMFS's position. In particular, Section 1856(a)(3)(A) expressly contemplates that States may regulate fisheries in federal waters, with no FMP in place. It authorizes a State to regulate state-registered fishing vessels in a fishery "outside the boundaries of the State" for which "there is no fishery management plan." 16 U.S.C. 1856(a)(3)(A). The court of appeals' construction of the Act would severely cabin (if not eliminate) that authority. If a State is regulating in federal waters, then its management likely would trigger the duty to create an FMP. The circumstances described in Section 1856(a)(3)(A)—state management but no FMP—could become a null set.

Again, the court of appeals' response assumed its conclusion. The court reasoned that Section 1856(a)(3)(A)

"does not create an exception to the general obligation to issue an FMP when a fishery requires conservation and management; rather, the provision only restates the longstanding principle that a State can regulate vessels registered under its laws in federal waters absent federal law to the contrary." Pet. App. 17a. NMFS has never argued that Section 1856(a)(3)(A) is an "exception" to Section 1852(h)(1). Instead, the former provision illustrates that Congress did not intend to require an FMP for every portion of federal waters that is subject to some state management; if Congress had done so in Section 1852(h)(1), then Section 1856(a)(3)(A) would be superfluous. NMFS's construction of the statute avoids that superfluity. See *NLRB* v. *SW Gen., Inc.*, No. 15-1251 (Mar. 21, 2017), slip op. 13.

c. At the very least, the Act is ambiguous. Given that ambiguity, NMFS reasonably removed Cook Inlet from the Salmon FMP, after concluding that federal management of that relatively small pocket of federal waters is "not necessary, would serve no useful purpose, and would be costly and burdensome." 77 Fed. Reg. at 75,573. The court of appeals should have deferred to that reasonable construction of the Act. See *Chevron*, 467 U.S. at 844-845.[3]

---

[3] Petitioner also contends (Pet. 33-35) that Section 1852(h)(1) pertains to the functions of Regional Councils, and a court can review only NMFS's final regulations. It is true that only NMFS's regulations are subject to judicial review. See 16 U.S.C. 1855(f). But NMFS can approve a Council-recommended FMP only if it is consistent with the statutory national standards and with "the other provisions of this chapter." 16 U.S.C. 1854(a)(1)(A). NMFS adopted regulations approving Amendment 12, thereby agreeing that the exclusion of Cook Inlet was consistent with the Council's authority under the Act. The D.C. Circuit's decision in *Anglers Conservation Network* v. *Pritzker*, 809 F.3d 664 (2016), is not to

2. For the reasons set forth above, NMFS agrees with petitioner that the court of appeals erred in refusing to defer to NMFS's reasonable interpretation of the statute. Nevertheless, the practical significance of the court of appeals' error does not warrant this Court's review.

a. Petitioner does not contend that there is any division of authority on the question presented. As petitioner observes (Pet. 26), there are other instances in which Regional Councils have deferred to state jurisdiction over fisheries that extend into federal waters. Whether those fisheries were as productive as those off the Pacific coast, see *ibid.*, is beside the point. What matters for purposes of this Court's review is that no conflict of authorities has developed.

In any event, even if this case is "the Court's one chance" to address the question presented, Pet. 26, that possibility does not justify further review. If anything, it underscores that the question presented may not recur with sufficient frequency to warrant this Court's review.[4]

b. The sole basis for invoking this Court's jurisdiction, then, is petitioner's contention that the court of appeals' erroneous decision will have significant practical effects. That prediction is, at the very least,

---

the contrary. See Pet. 35 n.8. That case involved a Council's decision to table a proposed amendment, on which NMFS took no action and had no duty to act. See *Anglers Conservation Network*, 809 F.3d at 669-671.

[4] Petitioner asserts (Pet. 29) that the court of appeals' decision means that the Council will have to prepare FMPs for fisheries that are currently managed by the State of Alaska under Section 1856(a)(3)(C). But this case provided no occasion to consider fisheries to which Section 1856(a)(3)(C) applies, and the court did not address that provision.

premature. The impact of the decision on the discrete section of federal waters at issue may be limited.

Petitioner asserts (Pet. 2, 24-27) that Alaska salmon fisheries are important to the state and national economy and that the decision will harm those important resources. Although NMFS agrees with the first proposition, the record does not show that the court of appeals' decision will harm Alaska salmon stocks or fisheries. The Council and NMFS determined that federal management of fishing in Cook Inlet was unnecessary to conserve and manage salmon fisheries, would provide no present or future benefits that justified the costs, would be duplicative, and would not improve the condition of salmon stocks. See 77 Fed. Reg. at 75,573, 75,575-75,576. NMFS did not, however, determine that federal management under an FMP would *harm* salmon stocks in Cook Inlet. Its conclusion was that federal involvement was unnecessary, not deleterious.

It would be speculative to predict the precise impact of federal management of the Cook Inlet exclusive economic zone under an FMP because no FMP has yet been developed. The record suggests that management under an FMP may not materially affect fishery conditions or allocations. See 77 Fed. Reg. at 75,576 (describing NMFS's determination that "including the Cook Inlet Area in the FMP would not change the economic conditions of these fisheries or change the efficiency of the utilization of salmon resources"); *ibid.* (rejecting the contention "that an FMP could benefit certain salmon fishermen in the Cook Inlet Area relative to other salmon user groups"). Petitioner insinuates (Pet. 6-8, 25) that federal management would be poor. Whatever the shortcomings of federal fishery management in the 1950s, current federal

management practices are more sensitive to the risk of overfishing. See, *e.g.*, 16 U.S.C. 1854(e) (mandating rebuilding measures for overfished fisheries); 81 Fed. Reg. at 71,893 (to be codified at 50 C.F.R. 600.305(c)(1)) (requiring an FMP for any stocks predominantly caught in federal waters that "are overfished or subject to overfishing"); see also 77 Fed. Reg. at 75,571 (barring fishing in federal waters for salmon fully utilized in state-managed fisheries).

Petitioner also contends (Pet. 24-25) that federal management will necessarily harm Alaska salmon stocks by mandating a switch from escapement methods to catch limits. To be sure, the Magnuson-Stevens Act specifies that FMPs should include annual catch limits. See 16 U.S.C. 1852(h)(6), 1853(a)(15). NMFS guidelines, however, recognize that there are circumstances —including stocks with unusual life history characteristics, such as Pacific salmon—where standard approaches to implementing annual catch limits may not be appropriate. See 81 Fed. Reg. at 71,901-71,902. In those circumstances, Regional Councils may propose alternative approaches for satisfying the statutory requirements, which NMFS will review for consistency with the Act. *Id.* at 71,902. It is too early to say whether such alternative approaches might be proposed or adopted.

Finally, NMFS has previously implemented FMPs for salmon in Pacific coastal areas. In the East Area of Alaska, for example, the Salmon FMP utilizes an alternative approach to annual catch limits for commercial fishing and delegates certain escapement-based management functions to the State of Alaska. 77 Fed. Reg. at 75,571. Meanwhile, NMFS has adopted an FMP for salmon fisheries off the coasts of Washing-

ton, Oregon, and California that utilizes more tradi-
tional catch limits. See 50 C.F.R. 660.408. NMFS
believes that federal management in those areas—
unlike in Cook Inlet—serves useful purposes. But those
FMPs nevertheless demonstrate that NMFS is well-
equipped to implement the court of appeals' decision.

## CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

> JEFFREY B. WALL
> *Acting Solicitor General*
> JEFFREY H. WOOD
> *Acting Assistant Attorney
> General*
> DAVID C. SHILTON
> ELLEN J. DURKEE
> *Attorneys*

MAY 2017

**Exhibit B - 25**