No. 16-1044

===============================================================

In The

# Supreme Court of the United States

———————◆———————

STATE OF ALASKA,

*Petitioner,*

v.

UNITED COOK INLET DRIFT ASSOCIATION, ET AL.,

*Respondents.*

———————◆———————

**On Petition For A Writ Of Certiorari
To The United States Court Of Appeals
For The Ninth Circuit**

———————◆———————

**BRIEF FOR RESPONDENTS IN OPPOSITION**

———————◆———————

JASON T. MORGAN*
BETH S. GINSBERG
STOEL RIVES LLP
600 University Street
Suite 3600
Seattle, WA 98101
(206) 624-0900
jason.morgan@stoel.com

June 29, 2017                    *Counsel of Record*

===============================================================

COCKLE LEGAL BRIEFS (800) 225-6964
WWW.COCKLELEGALBRIEFS.COM

**Exhibit C - 1**

## QUESTION PRESENTED

The Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act" or "Act") establishes regional councils charged with managing the nation's fishery resources according to established national standards. The Act charges that "[e]ach Council shall" develop a fishery management plan ("FMP") "for each fishery under its authority that requires conservation and management." 16 U.S.C. § 1852(h)(1). The National Marine Fisheries Service ("NMFS") reviews FMPs and adopts them if compliant with the Act.

Cook Inlet is home to one of the nation's most important salmon fisheries, and the Act places this fishery under the authority of the North Pacific Fishery Management Council ("North Pacific Council"). The defendants below "concede[d] that the Cook Inlet fishery requires conservation and management." Pet. App. 15a. Despite these uncontested facts, and the express mandate of the Act, the North Pacific Council and NMFS abdicated federal responsibility for the fishery to the State of Alaska by removing it from the FMP altogether, allowing the State to manage the fishery outside the requirements of the Act. The question presented – as framed and decided by the court of appeals – (Pet. App. 5a) is:

Whether NMFS can exempt a fishery under its jurisdiction that requires conservation and management from an FMP because the agency is content with State management.

**Exhibit C - 2**

**CORPORATE DISCLOSURE STATEMENT**

Plaintiffs-Appellants below and Respondents here are the United Cook Inlet Drift Association and Cook Inlet Fishermen's Fund.

Respondent United Cook Inlet Drift Association is a corporation representing commercial fishing interests in Cook Inlet, Alaska. No parent corporation or publicly held company has a 10 percent or greater ownership interest in the United Cook Inlet Drift Association.

Respondent Cook Inlet Fishermen's Fund is an association representing commercial fishing interests in Cook Inlet, Alaska. No parent corporation or publicly held company has a 10 percent or greater ownership interest in the Cook Inlet Fishermen's Fund.

**Exhibit C - 3**

# TABLE OF CONTENTS

Page

QUESTION PRESENTED.................................... i

CORPORATE DISCLOSURE STATEMENT ...... ii

TABLE OF AUTHORITIES................................. iv

INTRODUCTION ................................................. 1

OPINIONS BELOW.............................................. 4

JURISDICTION.................................................... 4

STATUTORY PROVISIONS................................ 5

STATEMENT OF THE CASE.............................. 7

    A.   Statutory Framework – The Magnuson-Stevens Act ................................................ 7

    B.   The Cook Inlet Fishery and Amendment 12 ................................................................ 10

REASONS FOR DENYING THE WRIT .............. 13

    A.   The Court of Appeals Correctly Interpreted the Magnuson-Stevens Act ......................... 13

    B.   The Court of Appeals' Decision Does Not Present Any Issues of Significant Practical Importance Warranting Supreme Court Review ........................................................ 17

CONCLUSION...................................................... 26

**Exhibit C - 4**

## TABLE OF AUTHORITIES

Page

CASES

*Alaska v. United States*, 545 U.S. 75 (2005) ..............18

*Bates v. United States*, 522 U.S. 23 (1997) ................14

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)................15

*Sturgeon v. Frost*, 136 S. Ct. 1061 (2016) ..................19

*Trawler Diane Marie, Inc. v. Brown*, 918 F. Supp. 921 (E.D.N.C. 1995).................................10

*United States v. Alaska*, 422 U.S. 184 (1975) .............18

STATUTES

16 U.S.C. §§ 1801-1891d ..........................................7, 8

16 U.S.C. § 1801(a)(1) ............................................8, 13

16 U.S.C. § 1801(a)(3) ................................................13

16 U.S.C. § 1801(a)(6) ..........................................13, 16

16 U.S.C. § 1801(b)(1) ..................................................8

16 U.S.C. § 1802(5).....................................................14

16 U.S.C. § 1811(a)...........................................2, 7, 18

16 U.S.C. § 1851 .........................................................16

16 U.S.C. § 1851(a).......................................................8

16 U.S.C. § 1851(a)(1) ................................................25

16 U.S.C. § 1851(a)(2) ............................................8, 21

16 U.S.C. § 1851(b).......................................................8

16 U.S.C. § 1852(a)(1) ..................................................8

**Exhibit C - 5**

TABLE OF AUTHORITIES – Continued

Page

16 U.S.C. § 1852(a)(1)(G) ...............................................9

16 U.S.C. § 1852(b)(1) .................................................9

16 U.S.C. § 1852(b)(2)(C) .............................................9

16 U.S.C. § 1852(g)(1)(C).............................................25

16 U.S.C. § 1852(h)(1) ...........................................*passim*

16 U.S.C. § 1853(a)(15) ..............................................12

16 U.S.C. § 1853(b)(5) ........................................5, 9, 11

16 U.S.C. § 1856 .....................................................20

16 U.S.C. § 1856(a)(1)(B) ............................................20

16 U.S.C. § 1856(a)(3) ................................................6

16 U.S.C. § 1856(a)(3)(A) .........................................9, 16

16 U.S.C. § 1856(a)(3)(B) .............................................9

16 U.S.C. § 1856(a)(3)(C) .........................................9, 19

28 U.S.C. § 1254 ......................................................5


REGULATIONS

50 C.F.R. § 210.10 ...................................................10

Alaska Admin. Code tit. 5, § 39.222(f) ...............................25


OTHER AUTHORITIES

44 Fed. Reg. 33,250 (June 8, 1979)...............................4, 11, 23

44 Fed. Reg. 33,309 (June 8, 1979)..................................4, 12

77 Fed. Reg. 75,570 (Dec. 21, 2012)....................................21

**Exhibit C - 6**

TABLE OF AUTHORITIES – Continued

Page

Alaska Bid Network, *Celebrating 40 years of the Magnuson-Stevens Fishery Conservation & Management Act* (posted Apr. 26, 2016) ................22

C2 Discussion Paper for Revisions to the Fishery Management Plan for the Salmon Fisheries in the EEZ off Alaska (Mar. 2017) ...............................3

Federal Subsistence Board, Special Action No. 3-KS-01-17 (issued May 3, 2017)...........................24

John H. Clark, et al., *The Commercial Salmon Fishery in Alaska* ...................................................23

News Release, Alaska Regional Office, *NOAA Fisheries approves second round of fisheries disaster relief funds* (Jan. 12, 2015).......................24

Pat Shields & Aaron Dupuis, Alaska Department of Fish and Game, *Upper Cook Inlet Commercial Fisheries Annual Management Report 2016*, Fishery Management Report No. 17-05 (Feb. 2017)........................................................23

Press Release, *Federal Government Declares Fishery Disaster for Low Pink Salmon Harvest in Gulf of Alaska* (Jan. 27, 2017)....................24

Sam Cotton, *For Alaska fisheries, reason to celebrate 40 years of Magnuson-Stevens Act* (updated June 26, 2016)..............................................23

Staff of S. Comm. on Commerce, 94th Cong., *A Legislative History of the Fishery Conservation and Management Act of 1976* (Comm. Print 1976) .............................................................11

**Exhibit C - 7**

TABLE OF AUTHORITIES – Continued

Page

State of Alaska Special Status Species, http://
www.adfg.alaska.gov/index.cfm?adfg=special
status.akfishstocks (last visited June 9, 2017) ......25

**Exhibit C - 8**

## INTRODUCTION

This case presents a straightforward application of the plain language of the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson-Stevens Act," or "Act"). The Act expressly and unambiguously requires the North Pacific Fishery Management Council (the "North Pacific Council" or "Council") to develop a fishery management plan ("FMP") for each fishery under its authority that requires conservation and management. 16 U.S.C. § 1852(h)(1). The Council here declined to comply with that mandate, instead passing an amendment ("Amendment 12") to the existing Salmon Fishery Management Plan for Fisheries Off the Coast of Alaska (the "Salmon FMP") removing the Cook Inlet salmon fishery from federal supervision. The National Marine Fisheries Service ("NMFS") approved that decision to abdicate federal oversight.

The court of appeals correctly concluded that this action was contrary to the express language of the Act that "unambiguously requires a Council to create an FMP for each fishery under its authority that requires conservation and management." Pet. App. 23a. The facts essential to the application of that statute were *conceded below*: The "government concedes that Cook Inlet is a fishery under its authority that requires conservation and management." Pet. App. 16a. Accordingly, the court of appeals remanded the case for preparation of an FMP that governs the Cook Inlet salmon fishery as required by the Magnuson-Stevens Act.

**Exhibit C - 9**

This case does not warrant this Court's review. The court of appeals' decision does not conflict with any decision of this Court or of any other court of appeals, and as the federal respondents explain, "further review is not warranted" because the ruling below "will not preclude the management of Alaska salmon fisheries consistent with the policies and standards of the Magnuson-Stevens Act." Fed. Br. 12, 16-19.

The intervenor-defendant, the State of Alaska, urges this Court to accept review contending, first, that the decision impinges on the State's right to manage its fishery resources; and second, that the decision will actually "harm" this important fishery. Pet. 2. These contentions are false.

This decision below neither implicates nor infringes upon Alaska's sovereign interests. The Cook Inlet salmon fishery occurs in federal waters (outside the jurisdictional limits of the State), over which NMFS and the Council have "exclusive fishery management authority." 16 U.S.C. § 1811(a).

The question decided below was not *whether* the State may manage the Cook Inlet fishery *at all*, but whether the State is authorized to manage the fishery *without any obligation to comply with the requirements of the Magnuson-Stevens Act*. As the court of appeals explained, the Act expressly contemplates that management may be *delegated* to the State of Alaska through a fishery management plan. Pet. App. 18a. Indeed, in response to the court of appeals' decision, this

**Exhibit C - 10**

is precisely what the Council (comprised of a majority of voting members selected by Alaska) has proposed.[1]

Nor will application of the Magnuson-Stevens Act "harm" the fishery. *See* Fed. Br. 17 (refuting this assertion). As detailed below, the Commissioner of the Alaska Department of Fish and Game recently published an "opinion" extolling 40 years of success of the Magnuson-Stevens Act *in Alaska*, touting the Act as a "global model of sustainability." *See infra* 22.

As explained by the court below, the State seeks to judicially re-write the statute to provide Alaska with an exemption to accommodate Alaska's management preferences. The court of appeals appropriately rejected that request as contrary to the plain language of the Act, and because Congress "repeatedly rejected proposals to provide for state management of federal fisheries without an FMP." Pet. App. 20a. The court of appeals therefore "decline[d] the government's invitation to vest in Alaska the very authority that Congress abjured." Pet. App. 20a.

In any event, the State's claim that it can manage more effectively without the benefit of an FMP is debatable, at best. The State assumed management of Cook Inlet salmon fisheries in 1960. Pet. App. 7a. By 1979, after 20 years of exclusive State control, NMFS

---

[1] *See* C2 Discussion Paper for Revisions to the Fishery Management Plan for the Salmon Fisheries in the EEZ off Alaska at 41-42 (Mar. 2017), https://npfmc.legistar.com/LegislationDetail. aspx?ID=2977645&GUID=26C6AD2D-907E-4681-9991-E504B4 E16F02&FullText=1.

determined that "*[a]ll salmon species are at historic low levels in* the Cook Inlet management area, with chinook stocks seriously depleted.'" Pet. App. 8a (emphasis added; brackets in original) (quoting 44 Fed. Reg. 33,250, 33,309 (June 8, 1979)). In the subsequent 40 years, many stocks suffered continued declines, culminating in a commercial fishery failure in 2012 and an all-time record low chinook salmon harvest in Cook Inlet. Pet. App. 63a-64a. The State's management of salmon in Cook Inlet would no doubt benefit from federal oversight.

The State's petition for certiorari should be denied.

———————◆———————

## OPINIONS BELOW

The opinion of the court of appeals (Pet. App. 1a-23a) is reported at 837 F.3d 1055. The opinion of the district court (Pet. App. 24a-81a) is not published in the Federal Supplement but is available at 2014 WL 10988279.

———————◆———————

## JURISDICTION

The judgment of the court of appeals was entered on September 21, 2016. A petition for rehearing filed by the State of Alaska was denied on November 30, 2016. The petition for a writ of certiorari was filed on February 27, 2017. Respondents United Cook Inlet

Drift Association and Cook Inlet Fishermen's Fund (collectively "UCIDA"), filed a waiver of response on March 23, 2017. The federal defendants filed an opposition brief on May 1, 2017. This Court requested a response from UCIDA on May 30, 2017. This Court has jurisdiction under 28 U.S.C. § 1254(1).

————◆————

## STATUTORY PROVISIONS

16 U.S.C. § 1852(h)(1) provides in relevant parts:

(h)   Functions

Each Council shall, in accordance with the provisions of this chapter –

(1)   for each fishery under its authority that requires conservation and management, prepare and submit to the Secretary (A) a fishery management plan and (B) amendments to each such plan that are necessary from time to time. . . .

16 U.S.C. § 1853(b)(5) provides in relevant part:

(b)   Discretionary provisions

Any fishery management plan which is prepared by any Council, or by the Secretary, with respect to any fishery may –

. . . .

(5)   incorporate (consistent with the national standards, the other provisions of this chapter, and any other applicable law) the relevant

**Exhibit C - 13**

fishery conservation and management measures of the coastal States nearest the fishery. . . .

16 U.S.C. § 1856(a)(3) provides in relevant part:

(3)   A State may regulate a fishing vessel outside the boundaries of the State in the following circumstances:

(A)   The fishing vessel is registered under the law of that State, and (i) there is no fishery management plan or other applicable Federal fishing regulations for the fishery in which the vessel is operating; or (ii) the State's laws and regulations are consistent with the fishery management plan and applicable Federal fishing regulations for the fishery in which the vessel is operating.

(B)   The fishery management plan for the fishery in which the fishing vessel is operating delegates management of the fishery to a State and the State's laws and regulations are consistent with such fishery management plan. If at any time the Secretary determines that a State law or regulation applicable to a fishing vessel under this circumstance is not consistent with the fishery management plan, the Secretary shall promptly notify the State and the appropriate Council of such determination and provide an opportunity for the State to correct any inconsistencies identified in the notification. If, after notice and opportunity for corrective action, the State does not correct the inconsistencies identified by the Secretary, the authority granted to the State

**Exhibit C - 14**

under this subparagraph shall not apply until the Secretary and the appropriate Council find that the State has corrected the inconsistencies. . . .

(C)  The fishing vessel is not registered under the law of the State of Alaska and is operating in a fishery in the exclusive economic zone off Alaska for which there was no fishery management plan in place on August 1, 1996, and the Secretary and the North Pacific Council find that there is a legitimate interest of the State of Alaska in the conservation and management of such fishery. The authority provided under this subparagraph shall terminate when a fishery management plan under this chapter is approved and implemented for such fishery.

———————◆———————

## STATEMENT OF THE CASE

### A.  Statutory Framework – The Magnuson-Stevens Act

The Magnuson-Stevens Act is the primary domestic legislation governing management of federal fisheries. 16 U.S.C. §§ 1801-1891d. The Act asserts "exclusive fishery management authority over all fish" in the exclusive economic zone ("EEZ"), the area between three and 200 miles offshore. *Id*. § 1811(a). Congress enacted the statute "to take immediate action to conserve and manage the fishery resources found off the coasts of the United States, and the anadromous species . . . of

**Exhibit C - 15**

the United States." *Id*. § 1801(b)(1).[2] "These fishery resources contribute to the food supply, economy, and health of the Nation." *Id*. § 1801(a)(1).

The Magnuson-Stevens Act creates eight regional fishery management councils charged with the initial responsibility for preparing FMPs and plan amendments for each federal fishery (*i.e.*, fisheries occurring in the EEZ and fisheries targeting anadromous species). *Id*. § 1852(a)(1). The Act requires an FMP for each fishery under a regional council's jurisdiction "that requires conservation and management." *Id*. § 1852(h)(1). The FMP is the foundational document for management of each fishery and provides the framework for ensuring that fisheries are managed in a manner consistent with the requirements of the Act and its 10 national standards. *Id*. § 1851(a).

The national standards guide the contents of all FMPs and the regulations implementing those plans. *Id*. The standards, *inter alia*, require measures to prevent overfishing while achieving the optimum yield, *id*. § 1851(a)(1), and mandate use of the best scientific information available. *Id*. § 1851(a)(2). The implementation of these national standards is effected through "advisory" guidance that lacks "the force and effect of law." *Id*. § 1851(b).

The Magnuson-Stevens Act provides an important role for adjoining states – and Alaska in particular – in

---

[2] The salmon stocks at issue here are "anadromous species" that start their lives in freshwater before migrating to the ocean. Pet. App. 5a.

managing the nation's fisheries in federal waters.
First, the Act ensures that the State of Alaska main-
tain a controlling share (6 of 11) of the votes on
the North Pacific Council. Pet. App. 12a; 16 U.S.C.
§ 1852(a)(1)(G), (b)(1), (b)(2)(C). Second, the Act au-
thorizes the Council to "incorporate (consistent with
the national standards, the other provisions of this
chapter, and any other applicable law) the relevant
fishery conservation and management measures of
the coastal States nearest to the fishery." 16 U.S.C.
§ 1853(b)(5). Third, the Act expressly authorizes the
Council to enact an FMP that "delegates management
of the fishery to a State" subject to continued federal
oversight if the "State's laws and regulations are
consistent with such fishery management plan." *Id*.
§ 1856(a)(3)(B); Pet. App. 18a.

Outside of this delegation process, the Act con-
strains the authority of a state to manage fisheries in
the EEZ. The State may regulate "a fishing vessel" if
that "vessel is registered under the law of that State."
16 U.S.C. § 1856(a)(3)(A). But generally, the State has
no jurisdiction over any vessel "not registered under
the law of the State of Alaska" in adjacent portions of
the EEZ. *Id*. § 1856(a)(3)(C);[3] *see also Trawler Diane*

---

[3] The provision at 16 U.S.C. § 1856(a)(3)(C) recognizes
Alaska's right to regulate out-of-state vessels in the narrow and
time-limited circumstances where an FMP had not been devel-
oped (as of August 1, 1996); that authority is extinguished when
the required plan is issued. *Id*. The North Pacific Council and
NMFS recognized that this narrow exception did not apply to
Cook Inlet, as the Salmon FMP was enacted prior to August 1,

*Marie, Inc. v. Brown*, 918 F. Supp. 921 (E.D.N.C. 1995) (discussing exploitation of Alaska scallop fishery by out-of-state vessel in the absence of an FMP).

## B. The Cook Inlet Fishery and Amendment 12

Cook Inlet is home to one of the nation's most productive salmon fisheries. Pet. App. 5a. The fishery's importance was expressly recognized in the 1953 Convention of the High Seas Fisheries and the North Pacific Fisheries Act of 1954 (the "1954 Act"). Pet. App. 5a (citing Pub. L. No. 83-579, §§ 10, 12, 68 Stat. 698, 699-700). The Convention, the 1954 Act, and associated regulations closed net fishing on the high seas off much of the coast of western Alaska, but excepted the high-seas portions of Cook Inlet (approximately 1,100 square miles in what is now the EEZ), as well as two other historic net fishing areas in Alaska. *Id*. After achieving statehood in 1959, Alaska was authorized to manage these areas by regulation. *See* 50 C.F.R. § 210.10 (repealed).

Congress passed the Magnuson-Stevens Act in 1976, asserting exclusive federal jurisdiction over fisheries between 3 and 200 miles off-shore (now the EEZ). Pub. L. No. 94-265, 90 Stat. 331 (codified at 16 U.S.C. §§ 1801-1891). During the legislative debates leading

---

1996. Final Environmental Assessment/Regulatory Impact Review for Amendment 12: Revisions to the Fishery Management Plan for the Salmon Fisheries in the EEZ off the Coast of Alaska at 37-38 (June 2012) (explaining that "[t]he FMP was in place on August 1, 1996" and discussing the need to seek congressional amendment to allow state regulation).

**Exhibit C - 18**

to its passage, the Alaska delegation lobbied for exclusive state management of salmon fisheries. Pet. App. 6a-7a. Senator Gravel repeatedly argued for state primacy over salmon management claiming that the State has "done a better job than the Federal Government has ever thought about doing in that area." Staff of S. Comm. on Commerce, 94th Cong., *A Legislative History of the Fishery Conservation and Management Act of 1976* at 463 (Comm. Print 1976) (reproducing Senate Debate and Passage of H.R. 200 (Jan. 19, 1976)). Senator Stevens (one of the bill's managers) lobbied for an amendment providing exclusive state management for "[t]hose fisheries capable of being managed as a unit, which reside principally within the waters of a single State," provided state management is consistent with the national standards. *Id*. at 422 (reproducing Senate Debate and Passage of H.R. 200 (Jan. 20, 1976)). But the other bill manager, Senator Magnuson, resisted those efforts. Senator Magnuson proposed a more modest substitute, enacted in the final bill, authorizing a council to "incorporate, in its management plans and recommended regulations, the relevant fishery management measures of the coastal State or States nearest the fishery involved." *Id*.; Pub. L. No. 94-265 § 303(b)(5) (codified at 16 U.S.C. § 1853(b)(5)).

In 1979, NMFS and the North Pacific Council prepared the first FMP for salmon fisheries in Alaska. *See* Fishery Management Plan for High Seas Salmon, 44 Fed. Reg. 33,250 (June 8, 1979). The 1979 Salmon FMP divided Alaska into an East and West Area. *Id*. at

**Exhibit C - 19**

33,267. The Salmon FMP tracked the implementing regulations for the 1954 Act in the West Area by closing commercial fishing in most of this Area while authorizing the State to manage Cook Inlet and the two other historic net fisheries. Pet. App. 7a. But, as emphasized by the court of appeals, "[t]he decision to leave these fisheries in the hands of the State was not based on a finding that they were in good health; to the contrary, the Salmon FMP found that '[a]ll salmon species are at historic low levels in the Cook Inlet management area, with chinook stocks seriously depleted.'" Pet. App. 8a (second brackets in original) (quoting 44 Fed. Reg. at 33,309).

In 1992, the United States entered into a new international agreement governing fishing in the EEZ. Pet. App. 9a. As a result, the 1954 Act was repealed, as were the implementing regulations allowing Alaska to manage the Cook Inlet fisheries. *Id.* The North Pacific Council failed to amend the Salmon FMP in response to these changes, allowing Alaska to continue managing the Cook Inlet salmon fisheries absent the federal oversight compelled by the Act. *Id.*

This practice continued unchanged until 2007, when the North Pacific Council was required to comprehensively review and revise all of its FMPs to include "annual catch limits" by the end of "fishing year" 2011. 16 U.S.C. § 1853(a)(15) & note. The Council immediately recognized that the Salmon FMP "may no longer be fully effective." Pet. App. 13a.

**Exhibit C - 20**

But, rather than amending the Salmon FMP to provide appropriate management for Cook Inlet, the Council proposed Amendment 12 to *remove* Cook Inlet (and the other two historic net fisheries) from the Salmon FMP altogether. Pet. App. 13a. UCIDA objected because an FMP was required as a matter of law, and because of numerous concerns with state management. *Id*. The Council unanimously approved Amendment 12, which was approved by NMFS and enacted through regulations. Pet. App. 13a-14a.

As a result of Amendment 12, the Cook Inlet salmon fishery is not managed under the Act. Instead of being managed for the benefit of the nation as contemplated under the Act (16 U.S.C. § 1801(a)(1), (3), (6)), the fishery would be managed for the "parochial" benefit of certain "Alaskans." Pet. App. 19a-20a. The court of appeals found that decision statutorily infirm.

————◆————

## REASONS FOR DENYING THE WRIT

### A. The Court of Appeals Correctly Interpreted the Magnuson-Stevens Act

Review is not warranted here because the court of appeals correctly found that the Act required an FMP for Cook Inlet. The court's decision is compelled by the plain language of the Act, and by the fact that both the State and the North Pacific Council repeatedly requested, and were denied, the very exception that the State now contends should be implied.

**Exhibit C - 21**

1.   The court of appeals relied on the statutory text requiring that "[e]ach Council shall, in accordance with the provisions of this chapter[,] . . . for each fishery under its authority that requires conservation and management, prepare and submit to the Secretary . . . a fishery management plan. . . ." 16 U.S.C. § 1852(h)(1). As the lower court explained, the threshold question is "whether the fishery at issue even needs conservation and management." Pet. App. 15a. Because the "government concedes that Cook Inlet is a fishery under its authority that *requires* conservation and management," that ends the inquiry. Pet. App. 16a (emphasis added).

a.   The court of appeals correctly rejected efforts by NMFS and the State to "insert the word 'federal' into § 1852(h)(1) before the phrase 'conservation and management.'" Pet. App. 16a. It followed this Court's guidance in *Bates v. United States*, 522 U.S. 23, 29 (1997), to "resist reading words or elements into a statute that do not appear on its face." Pet. App. 15a-16a. And because the term "conservation and management" is broadly defined to include "all of the rules, regulations, conditions, methods, and other measures" that are "required" or "useful" in fishery management, there is no textual basis for inserting the word "federal" into the statute. 16 U.S.C. § 1802(5).

b.   The court of appeals also correctly rejected the notion that Congress had (*sub silentio*) included a "deferral" process, allowing NMFS to decline to produce an FMP if satisfied with State management. The court

explained that the "Act allows delegation to a state under an FMP, but does not excuse the obligation to adopt an FMP when a council opts for state management." Pet. App. 23a. The Court's ruling ensures that federal fisheries remain subject to the *national* standards set forth in the Act, rather than State management standards.

c.    Finding that the "Act is clear" and "unambiguously requires a Council to create an FMP for each fishery under its authority that requires conservation and management," the court below ended its inquiry at "step one" as set forth by this Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) (the plain language of the Act). Pet. App. 18a, 23a. Insisting that the statute was ambiguous, the State and NMFS urged the court to defer to an interpretation advanced by NMFS that re-wrote the phrase "conservation and management" to mean "*federal* conservation and management." Despite repeated questioning during oral argument, NMFS was unable to justify this statutory re-write and could not identify any ambiguity in the clear language of 16 U.S.C. § 1852(h)(1). *See* Video Recording, 29:28 to 38:40, https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000010040. Nor could the State. *Id*. at 41:46.

2.    The court of appeals also correctly interpreted the mandatory provisions of 16 U.S.C. § 1852(h)(1) in the context of the Act as a whole. As the court explained, the Act makes plain that the "federal fisheries

**Exhibit C - 23**

are to be governed by federal rules in the national interest, not managed by a state based on parochial concerns." Pet. App. 19a. The Act calls for a "national program" governing fisheries, requiring regional councils to "exercise sound judgment in the stewardship of fishery resources through" the development of FMPs that rely on "national standards." 16 U.S.C. § 1801(a)(6), (b)(5); *id.* § 1851. Ceding fishery management to the State results in a fishery managed "for the maximum benefit and use [of] all Alaskans." Pet. App. 20a (citing state constitutional mandate). The Act does not countenance that result.

a. The State relies heavily on an amendment to the Act added in 1996 (16 U.S.C. § 1856(a)(3)(A)(i)), which it claims (impliedly) authorizes state deferral without an FMP. But as the court of appeals correctly found, that provision allows states to regulate vessels registered under state law (but not out-of-state vessels). It "does not create an exception to the general obligation to issue an FMP when a fishery requires conservation and management," and instead simply "restates the longstanding principle that a State can regulate vessels registered under its laws . . . absent federal law to the contrary." Pet. App. 17a. Indeed, it would be a "strange form of delegation of federal regulatory authority" to allow the State to only regulate in-state vessels, while allowing out-of-state vessels to fish unregulated. Pet. App. 18a. Simply put, the Act contemplates a federal role for all fisheries that require conservation and management. Although the Council can "delegate" implementation to the State (subject to

**Exhibit C - 24**

federal standards and federal oversight), the Council has no discretion to "defer" its obligations to comply with the Act altogether.

b. While the statutory language is manifestly clear, the court of appeals found it relevant that the State had repeatedly requested – and was consistently denied – a statutory exemption allowing it to manage in the EEZ without an FMP or any federal oversight. Pet. App. 20a. The court correctly "decline[d] the government's invitation to vest in Alaska the very authority that Congress abjured." Pet. App. 20a.

In short, contrary to the State's contentions, the court of appeals' decision neither "invalidated an Act of Congress" nor "a long standing federal statutory provision" by refusing to countenance fishery management deferral absent an express delegation through an FMP. Reply at 1. Because the court of appeals correctly interpreted an unambiguous statutory mandate, further review by this Court is unwarranted.

## B. The Court of Appeals' Decision Does Not Present Any Issues of Significant Practical Importance Warranting Supreme Court Review

In addition to being correctly decided, the decision below presents no issues of exceptional importance. The federal defendants agree. Fed. Br. 16-19.

1. The State claims that the court's decision allegedly strips it of the right to manage its fisheries, a

right it insists it "achieved at statehood." Pet. 25. The decision below, however, in no way impinges on the State's sovereignty.

a. At statehood, Alaska did not gain the right to manage fisheries on the high seas. Instead, it entered the union on equal footing with all other states. *Alaska v. United States*, 545 U.S. 75, 79 (2005). Accordingly, Alaska has no greater right to manage salmon stocks in federal waters outside its territorial limits than any other coastal state. Indeed, this Court previously determined that the *exact area of Cook Inlet at issue here is not owned by the State of Alaska* and remains under federal control. *United States v. Alaska*, 422 U.S. 184, 186, 203-04 (1975) (concluding that Cook Inlet was not a historic bay subject to state sovereignty).

b. The Magnuson-Stevens Act asserts "exclusive" federal authority over all fisheries in federal waters, including Cook Inlet. 16 U.S.C. § 1811(a). Although the State has no "right" to manage federal fisheries, the Act plainly provides it a key (if not controlling) role in fisheries management. As discussed above, the North Pacific Council is comprised of a majority of State members. It is authorized to incorporate State management measures into the federal plan, and may formally delegate fishery management to the State. *See supra* at 8-9. The decision below in no way divests the State from these rights and responsibilities.

c. Alaska further contends that the decision below poses a "threat" to, or causes uncertainty for, the State with respect to its management of other fisheries

pursuant to 16 U.S.C. § 1856(a)(3)(C). But neither the Council nor NMFS relied on that statutory provision to justify adoption of Amendment 12, conceding its statutory inapplicability. *See supra* note 3. Issues concerning how courts will apply 16 U.S.C. § 1856(a)(3)(C) in future cases are at best hypothetical and are inapposite here.

d. Concerns regarding Alaska's "remoteness" are equally infirm. Pet. 26. While this Court has observed "that Alaska is often the exception, not the rule," *Sturgeon v. Frost*, 136 S. Ct. 1061, 1071 (2016), the Magnuson-Stevens Act expressly recognizes the State's unique geographic characteristics through an express (but narrow) exception codified at 16 U.S.C. § 1856(a)(3)(C). That provision allows Alaska (and only Alaska) to assume regulation of a fishery that had no FMP in place as of "August 1, 1996" under limited circumstances. *Id*. As the court below explained, this provision was added in 1996 after an out-of-state vessel (the Mister Big) exploited a jurisdictional loophole resulting from the North Pacific Council's failure to develop an FMP for the scallop fishery in federal waters. Pet. App. 9a-11a.[4] That left out-of-state vessels unregulated in the EEZ, and free to exploit the fishery without limitation.[5] It is

─────────

[4] As the court below explains, an earlier version of the bill (that was not enacted) would have authorized Alaska to enforce its regulations in federal waters even absent an FMP. Pet. App. 11a.

[5] Amendment 12 creates this same jurisdictional loophole in Cook Inlet. An out-of-state vessel (*e.g.*, from Washington) can currently fish in the EEZ portions of Cook Inlet without complying with any state management restrictions. Pet. App. 18a. Although

Exhibit C - 27

uncontested that this exception does not apply here (because an FMP has been in place since 1979).[6] *See supra* note 3.

The Magnuson-Stevens Act also authorizes Alaska (and certain other states) to manage discretely defined geographic pockets of federal fisheries. 16 U.S.C. § 1856(a)(1)(B) (Nantucket Sound) and (C) (portions of southeastern Alaska). But the Act does not cede Alaska jurisdiction over Cook Inlet.

2. The State seeks *certiorari* fearing that the decision below will harm the fishery (or the State's interest in the fishery). The State claims that federal oversight will harm the fishery because it requires the use of annual catch limits rather than escapement goals. It also asserts that federal management is "inferior" to state management and complains it will lead to uncertainty and duplication. Pet. 24-25. None of these arguments merit this Court's review.

a. The Act does not preclude the use of escapement goals in Cook Inlet. As the State concedes (State Reply at 2, 5-6), the Act imbues NMFS and the North Pacific Council with flexibility to use escapement goals

---

the State claims it "simply cannot afford to take chances" with salmon fisheries (Reply 2), the State urges an outcome that would leave the fishery at constant risk of out-of-state exploitation.

[6] Washington, Oregon, and California were granted a time-limited exception for the Dungeness Crab Fishery. Magnuson-Steven Fishery Conservation and Management Reauthorization Act of 2006, Pub. L. No. 109-479, § 302(e), 120 Stat. 3575, 3624 (codified at 16 U.S.C. § 1856 note).

as a *proxy* for annual catch limits. Indeed, the 2012 revisions to the Salmon FMP employed escapement goals in the East Area. 77 Fed. Reg. 75,570, 75,570 (Dec. 21, 2012); Fed. Br. 18.

The only limitation on the use of this proxy is if the State's escapement goals cannot withstand the accountability, transparency, or scientific rigor required by the Act. That may be the case in Cook Inlet, as many of the State's escapement goals are based on political considerations rather than sound scientific fishery management principles. But the State's management shortcomings are no grounds for granting *certiorari* and are precisely why Cook Inlet requires an FMP. *See* 16 U.S.C. § 1851(a)(2) ("Conservation and management measures shall be based upon the best scientific information available.").[7]

Nor is *certiorari* warranted on the basis of any "uncertainty" in the outcome of federal management. State Reply at 2 (the "State is not satisfied to wait and see whether the North Pacific Fishery Management Council . . . will adopt an alternative approach."). In light of the State's majority hold on the Council, and the Council's prior adoption of the escapement proxy favored by the State, its concerns ring hollow. Although the State must cooperate with the Council to comply with the scientific rigor, transparency, and accountability of the Magnuson-Stevens Act, this necessary and

---

[7] The State relies on the federal government for its assertion that federal management will result in "fewer salmon in years to come" (Pet. 25), but NMFS did not draw that conclusion. Fed. Br. 17.

**Exhibit C - 29**

minimal burden does not provide an issue of exceptional importance warranting this Court's review.

b. Relying exclusively on federal management history that occurred nearly seventy years ago – and long before the Act was passed – the State falsely claims that federal management is "inferior." Pet. 25. Yet the Act is "'recognized globally as the gold standard in sustainable fisheries management.'" *See* Alaska Bid Network, *Celebrating 40 years of the Magnuson-Stevens Fishery Conservation & Management Act* (posted Apr. 26, 2016), http://www.bidsalaska.com/business-news/1.124598-celebrating-40-years-of-the-magnusonstevens-fishery-conservation--management-act.html (quoting John Connelly, President of National Fisheries Institute). As the federal defendants explain, Alaska's pre-Magnuson-Stevens Act concerns are irrelevant to current federal management practices. Fed. Br. 17-18.

i. Indeed, the Commissioner of the Alaska Department of Fish and Game, NMFS's Alaska Regional Director, and the Executive Director of the North Pacific Council collectively published a recent "opinion" extolling the 40 years of success of the Magnuson-Stevens Act *in Alaska*. They explain that this 40-year path "took U.S. fisheries management in federal waters from being virtually nonexistent to becoming a global model of sustainability," and boast that the application of the Act to (other) fisheries "in Alaska" has been an unparalleled success, producing "the most sustainable and valuable fisheries on the planet, largely thanks to the collaborative and inclusive management

process set up under the Magnuson-Stevens Act." *See* Sam Cotton, *For Alaska fisheries, reason to celebrate 40 years of Magnuson-Stevens Act* (updated June 26, 2016), https://www.adn.com/commentary/article/alaska-fisheries-reason-celebrate-40-years-magnuson-stevens-act/2016/04/12/. *Id*. Petitioner's present concerns cannot be squared with their public statements.

ii. Petitioner's insistence that State management is both superior and preferable is further belied by its checkered history in Cook Inlet. Pet. at 4 (claiming that a "tenfold" increase in commercial salmon harvests occurred under state management). In issuing its first FMP for Cook Inlet, NMFS found that after 20 years of exclusive state management, *"[a]ll salmon species [were] at historic low levels in* the Cook Inlet management area, with chinook stocks seriously depleted." 44 Fed. Reg. at 33,309 (*emphasis added and omitted*). Prior to statehood, the average Cook Inlet commercial chinook harvest was over 50,000; in many years, harvests exceeded 100,000. *See* John H. Clark, et al., *The Commercial Salmon Fishery in Alaska* at 52 (reprinted from Alaska Fishery Research Bulletin (Summer 2006)). But, by 1979, harvest rates dropped to just over 13,000. *See* Pat Shields & Aaron Dupuis, Alaska Department of Fish and Game, *Upper Cook Inlet Commercial Fisheries Annual Management Report 2016*, Fishery Management Report No. 17-05 at 136 (Feb. 2017). In nearly 40 years of subsequent State management, the stock has not recovered: the average harvest rate hovers just under 15,000 chinook, and the

most recent 10-year average is approximately 10,000. *Id*. at 147.

Indeed, the Cook Inlet chinook fishery reached its nadir under State management in 2012, culminating in *an all-time record low commercial harvest* of 2,527. *Id*. at 137. This led the Secretary of Commerce to declare a fishery "disaster," requiring a federal bailout of $5.7 million in relief costs to Cook Inlet, an amount woefully insufficient to offset the harm sustained by Cook Inlet commercial fishermen. *See* News Release, Alaska Regional Office, *NOAA Fisheries approves second round of fisheries disaster relief funds* (Jan. 12, 2015), https://alaskafisheries.noaa.gov/node/10615.[8]

Unfortunately, the State's shortcomings in Cook Inlet salmon management do not end there. Between 2010 and 2016, the State was forced to designate *nine*

---

[8] The Yukon and Kuskokwim Rivers also experienced disasters in 2012, raising the federal bailout to $20.8 million. *See NOAA Fisheries approves second round of fisheries disaster relief funds*, *supra*. The 2012 disaster was followed by a significant 2016 pink salmon harvest decline, which resulted in yet another Secretarial disaster declaration. *See* Press Release, *Federal Government Declares Fishery Disaster for Low Pink Salmon Harvest in Gulf of Alaska* (Jan. 27, 2017), https://gov.alaska.gov/newsroom/ 2017/01/federal-government-declares-fishery-disaster-for-low-pink- salmon-harvest-in-gulf-of-alaska/. Earlier this year, the U.S. Fish and Wildlife Service was forced to assume management of the Kuskokwim River to ensure the proper escapement of chinook salmon. *See* Federal Subsistence Board, Special Action No. 3-KS- 01-17 (issued May 3, 2017), https://www.fws.gov/uploadedFiles/ 3-KS-01-17%20Signed.pdf.

different Cook Inlet salmon stocks as "stocks of concern,"[9] due to "a chronic inability, despite use of specific management measures, to maintain escapements for a salmon stock," Alaska Admin. Code tit. 5, § 39.222(f)(21), or at least "a chronic inability, despite the use of specific management measures, to maintain expected yields, or harvestable surpluses." *id.* § 39.222(f)(42). Outside of Cook Inlet, the State has issued this "concern" designation for only five other salmon stocks. Although the State touts its many so-called successes, the Cook Inlet salmon fishery is not among them.

Finally, while the State views application of the Act to this fishery as duplicative and costly, federal oversight is not only legally required, but it is desperately needed. The Magnuson-Stevens Act provides a level of deliberative, science-based management missing from the State's management process. *See, e.g.*, 16 U.S.C. § 1852(g)(1)(C) (requiring councils to establish scientific and statistical committees with "strong scientific or technical credentials" to guide fishery decisions); *id.* § 1851(a)(1) (obligation to achieve "optimum yield" from each fishery). In light of the State's ineffective fishery management in Cook Inlet, any minor administrative duplications are a small price to pay for ensuring that one of nation's most important salmon fisheries is managed under the "gold standard" of the Act.

———————◆———————

---

[9] State of Alaska Special Status Species, http://www.adfg. alaska.gov/index.cfm?adfg=specialstatus.akfishstocks (last visited June 9, 2017).

## CONCLUSION

For the above reasons, the Court should deny the State's petition for writ of *certiorari*.

Respectfully submitted,

JASON T. MORGAN*
BETH S. GINSBERG
STOEL RIVES LLP
600 University Street
Suite 3600
Seattle, WA 98101
(206) 624-0900

*Counsel for Respondents*
*\*Counsel of Record*

**Exhibit C - 34**