Ryan P. Steen, AK Bar No. 0912084
Beth S. Ginsberg, Admitted *Pro Hac Vice*
Jason T. Morgan, AK Bar No. 1602010
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, Washington 98101
(206) 624-0900 (phone)
(206) 386-7500 (facsimile)

*Attorneys for United Cook Inlet Drift Association and
Cook Inlet Fishermen's Fund*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED COOK INLET DRIFT ASSOCIATION AND COOK INLET FISHERMEN'S FUND, | Case. No. 3:13-cv-00104-TMB |
| Plaintiffs, | [PROPOSED] PLAINTIFFS' REPLY IN SUPPORT OF APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS |
| v. | |
| NATIONAL MARINE FISHERIES SERVICE, ET AL., | |
| Defendants. | |

*United Cook Inlet Drift Association et al. v. NMFS et al.,* 3:13-cv-00104-TMB

95843886.2 0014655-00002

TABLE OF CONTENTS

Page

I. INTRODUCTION ...............................................................................................1

II. ARGUMENT ...................................................................................................2

    A.    Plaintiffs Meet the Eligibility Requirements of EAJA ............................2

    B.    NMFS's Decision Was Not Substantially Justified ................................3

    C.    The Requested Fee Award Is Reasonable................................................7

        1.    Plaintiffs Are Entitled to Market Rates....................................8

        2.    The Market Rates Are Reasonable and Appropriate ...............11

        3.    NMFS's Efforts to Attack Specific Charges Should Be
            Rejected...................................................................................12

    D.    Plaintiffs Are Entitled to the Full Award of Costs................................18

III. CONCLUSION................................................................................................19

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Animal Lovers Volunteer Ass'n v. Carlucci,*
  867 F.2d 1224 (9th Cir. 1989) ................................................................8

*Bazalo v. West,*
  150 F.3d 1380 (Fed. Cir. 1998).............................................................3

*Cabrales v. Cty. of Los Angeles,*
  935 F.2d 1050 (9th Cir. 1991) ........................................................14, 17

*Charlebois v. Angels Baseball LP,*
  993 F. Supp. 2d 1109 (C.D. Cal. 2012) ...............................................13

*City of Riverside v. Rivera,*
  477 U.S. 561 (1986).............................................................................17

*Cullens v. Ga. Dep't of Transp.,*
  29 F.3d 1489 (11th Cir. 1994) .............................................................11

*Forest Conservation Council v. Devlin,*
  994 F.2d 709 (9th Cir. 1993) ...............................................................15

*Gates v. Deukmejian,*
  987 F.2d 1392 (9th Cir. 1992) .............................................................12

*Hamby v. Walker,*
  No. 3:14-cv-00089-TMB, 2015 WL 12516788 (D. Alaska Sept. 2, 2015) .............................3

*Haw. Longline Ass'n v. NMFS,*
  No. 01-0765-CKK, Dkt. 180 (D.D.C., entered Nov. 15, 2004)................................7

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983)......................................................................2, 12, 16, 17

*INS v. Jean,*
  496 U.S. 154 (1990).............................................................................12

*Love v. Reilly,*
  924 F.2d 1492 (9th Cir. 1991) ............................................................2, 8

*Lucas v. White,*
  63 F. Supp. 2d 1046 (N.D. Cal. 1999) .................................................15

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ................................................................16, 17, 18

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
    422 F.3d 782 (9th Cir. 2005) ...........................................................................10

*NRDC v. EPA*,
    595 F. Supp. 65 (D.D.C. 1984), *aff'd sub nom. NRDC v. Thomas*, 801 F.2d
    457 (D.C. Cir. 1986) ........................................................................................2

*NRDC v. Locke*,
    771 F. Supp. 2d 1203 (N.D. Cal. 2011) .......................................................8, 15

*Oceana, Inc. v. Evans*,
    384 F. Supp. 2d 203 (D.D.C. 2005) ................................................................10

*Or. Nat. Res. Council v. Madigan*,
    980 F.2d 1330 (9th Cir. 1992) ................................................................3, 4, 5, 6

*Perkins v. Mobile Housing Bd.*,
    847 F.2d 735 (11th Cir. 1988) ........................................................................17

*Pollinator Stewardship Council v. U.S. Envtl. Prot. Agency*,
    No. 13-72346, 2017 WL 3096105 (9th Cir. June 27, 2017)............................14

*Preston v. Heckler*,
    596 F. Supp. 1158 (D. Alaska 1984) ...............................................................5

*Renee v. Duncan*,
    686 F.3d 1002 (9th Cir. 2012) .........................................................................7

*Sosebee v. Astrue*,
    494 F.3d 583 (7th Cir. 2007) ...........................................................................3

*United Cook Inlet Drift Ass'n v. Locke*,
    Case 3:09-cv-00241-TMB, ECF No. 45 (Aug. 27, 2010) ................................1

*United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*,
    837 F.3d 1055 (9th Cir. 2016) ................................................................. passim

*United States v. One 1984 Ford Van, bearing VIN No. 1FBHS3110EHB470717*,
    873 F.2d 1281, 1282 (9th Cir. 1989) ................................................................6

*Webb v. Bd. of Educ. of Dyer Cty.*,
    471 U.S. 234 (1985)........................................................................................15

*United Cook Inlet Drift Association et al. v. NMFS et al.*, 3:13-cv-00104-TMB
Page iii
95843886.2 0014655-00002

*Wyo. State Snowmobile Ass'n v. U.S. Fish & Wildlife Serv.*,
  No. 2:09-cv-00095-NDF, ECF No. 90 (May 11, 2011)............................................................7

**Regulations**

77 Fed. Reg. 75,570, 75,570 (Dec. 21, 2012) ................................................................16

# I. INTRODUCTION

Defendants National Marine Fisheries Service ("NMFS") put Plaintiffs United Cook Inlet Drift Association ("UCIDA") and Cook Inlet Fishermen's Fund ("CIFF" and collectively "Plaintiffs") through the administrative and judicial wringer for more than six years. In 2010, this Court entered a consent decree whereby NMFS agreed to consider a petition by UCIDA pursuant to the terms of the then existing Fishery Management Plan for Salmon Fisheries off the Coast of Alaska (the "Salmon FMP") to address problems associated with the State of Alaska's management of salmon fisheries in Cook Inlet.[1] Almost immediately, NMFS began to backtrack. By late 2010, the North Pacific Fishery Management Council (with the assistance of NMFS) proposed to remove Cook Inlet from the Salmon FMP altogether.[2] That proposed action rendered the promise in the consent decree a nullity, and made clear that the parties would be headed right back to litigation.

Plaintiffs told NMFS from the outset that the proposal to remove Cook Inlet from the Salmon FMP was legally untenable under the Magnuson Stevens Fishery Conservation and Management Act ("MSA") and factually unwise in light of the serious management problems the fishery was experiencing under the State of Alaska's management. NMFS refused to listen and dragged Plaintiffs first through a two-year administrative process, and then through more than four years of litigation only to have the Ninth Circuit tell NMFS exactly what Plaintiffs told NMFS at the outset. As the Ninth Circuit explained "[t]he Magnuson-Stevens Act unambiguously requires a Council to create an FMP for each fishery under its authority that requires conservation and management," and that NMFS could not "wriggle out of this requirement" by removing Cook Inlet from the Salmon FMP.[3]

Having dragged Plaintiffs through an unnecessary administrative process, and vigorously defended their patently illegal decision with highly seasoned and well known lawyers from the Department of Justice's Natural Resource Division, NMFS now wants to "wriggle out" of paying

---

[1] *See United Cook Inlet Drift Ass'n v. Locke*, Case 3:09-cv-00241-TMB, ECF No. 45 (Aug. 27, 2010); Declaration of Gregory R. Gabriel at ¶ 3.
[2] AR NPFMC_0000024.
[3] *United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*, 837 F.3d 1055, 1064-65 (9th Cir. 2016).

the bill, and embroil the parties (and the Court) in another round of costly litigation over fees. NMFS quibbles with facts not subject to reasonable or credible dispute, makes strained arguments that have no merit, and instead appears intent on multiplying costs while admitting to owing (if anything) 10 cents on every dollar that Plaintiffs actually expended in overturning NMFS's illegal action. But a "request for attorney's fees should not result in a second major litigation,"[4] and the Court should reject NMFS's invitation to add insult to injury.

Plaintiffs reasonably incurred the fees submitted in its application in preparing for and successfully defending against NMFS's illegal actions. As detailed below, Plaintiffs plainly meet the financial requirements of an award under the Equal Access to Justice Act ("EAJA"),and have demonstrated that: (1) NMFS's position was not substantially justified; (2) that an award of market rates is appropriate, and that the rates charged reflect market rates for Anchorage and Seattle for environmental litigation (as confirmed in declarations from independent attorneys); and (3)that the fees and costs requested were incurred as a direct result of NMFS's illegal action. The Court should award all the fees as set forth in the application, as well as the supplemental request for fees (filed herewith in the Supplemental Affidavit of Jason T. Morgan) incurred since the filing of the application, for a total award of *$540,479.50 in fees, $12,779.66 in costs, and $4,737.70 in expert fees.*[5]

## II. ARGUMENT

### A. Plaintiffs Meet the Eligibility Requirements of EAJA

NMFS initially tries to avoid paying fees altogether by arguing that Plaintiffs have not met their burden of demonstrating that they do not have more than $7,000,000 in net worth and do not have more than 500 employees as EAJA requires. While it may not be apparent to NMFS's lawyers in D.C., there is no one in Alaska who thinks that either the UCIDA or CIFF has more than $7,000,000 in net worth or 500 employees. UCIDA's vice president and CIFF's

---

[4] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

[5] *See* Updated Attachment A to Supplemental Morgan Affidavit. The time spent by prevailing parties on their fee petitions is fully compensable. *See Love v. Reilly*, 924 F.2d 1492, 1497 (9th Cir. 1991); *NRDC v. EPA*, 595 F. Supp. 65, 72 (D.D.C. 1984) ("[T]he time spent litigating a fee request is itself compensable."), *aff'd sub nom. NRDC v. Thomas*, 801 F.2d 457 (D.C. Cir. 1986). Plaintiffs reserve the right to again supplement this request, if necessary, to include additional fees and costs incurred after March 7, 2018.

treasurer confirmed these obvious facts in their initial declarations. Nothing more is required when, as here, there is no "serious doubt about the applicant's eligibility."[6]

In any event, because NMFS appears intent on demanding *more* proof of facts that are not subject to reasonable dispute, Plaintiffs are providing supplemental declarations to further explain the basis for the testimony already provided.[7] As explained in the attached Declaration of Janice Tuter and the Supplemental Declarations of Erik Huebsch and David Martin, UCIDA and CIFF easily meet the EAJA thresholds.[8] As of the time of the filing of this complaint on January 18, 2013, UCIDA had two employees and a net worth of $200,000 and CIFF had zero employees and a net worth of approximately $328,176.04.[9] There is no credible argument to the contrary.[10]

## B. NMFS's Decision Was Not Substantially Justified

NMFS next tries to avoid paying fees by claiming that its position was substantially justified. The burden to demonstrate substantial justification rests squarely on NMFS.[11] NMFS cannot simply reargue the merits of its case; it must come up with "evidence" showing that its

---

[6] *Sosebee v. Astrue*, 494 F.3d 583, 588 (7th Cir. 2007).

[7] NMFS makes various claims that Plaintiffs have "waived" the right to submit supplemental information, or otherwise cannot supplement its declarations on reply. *See, e.g.*, NMFS's Opposition at 9. But that argument ignores the "summary" nature of a fee award proceeding which is not intended to result in another round of litigation. *Sosebee*, 494 F.3d at 588; *see Bazalo v. West*, 150 F.3d 1380, 1383-84 (Fed. Cir. 1998) ("[B]y making the statement that he was a 'prevailing party' entitled to an award, Bazalo met the jurisdictional eligibility requirement. Because he met the jurisdictional requirements of the EAJA statute, Bazalo could supplement his filing after the thirty-day time limitation to set forth a more explicit statement about his net worth."). Tellingly, NFMS's only cited case is inapposite, as it dealt with attempts to supplement on reconsideration, *not reply*. *See Hamby v. Walker*, No. 3:14-cv-00089-TMB, 2015 WL 12516788, at *2 (D. Alaska Sept. 2, 2015).

[8] *See* Supplemental Huebsch Decl. at ¶¶ 5-7; Supplemental Martin Declaration at ¶¶ 4-10; Tuter Declaration at ¶4.

[9] Supplemental Huebsch Decl. at ¶¶ 5-7; Supplemental Martin Declaration at ¶¶ 4-10.

[10] NMFS claims in a footnote that there is no evidence that Plaintiffs were billed for the requested fees. Not so. Morgan Affidavit at ¶¶ 15-16. To the extent there is any doubt, further evidence is provided in the Supplemental Huebsch Declaration (¶ 11) and the Supplemental Morgan Affidavit (¶3).

[11] *Or. Nat. Res. Council v. Madigan*, 980 F.2d 1330, 1332 (9th Cir. 1992).

position is substantially justified.[12]  The Ninth Circuit has confirmed that this burden on NMFS is especially difficult "in a case involving purely legal issues, where precedent is lacking."[13]

Here, NMFS does not provide evidence demonstrating that its position was substantially justified.  Instead, it attempts to reargue the merits, claiming it was "tasked with interpreting an ambiguous statute" and took a position that was "eminently reasonable" in light of the language of the Act and its history.[14]  That argument is foreclosed by the Panel's decision.  The Ninth Circuit could not have been more clear: "[t]he Magnuson-Stevens Act unambiguously requires a Council to create an FMP for each fishery under its authority that requires conservation and management."[15]  There was no doubt about what NMFS was supposed to do in this case because "[t]he Act is clear: to delegate authority over a federal fishery to a state, NMFS must do so expressly in an FMP."[16]  Rather than follow that clear instruction, NMFS here decided to "shirk the statutory command" and "wriggle out of" the Act's requirements.[17]  This is not an "eminently reasonable" position, as NMFS claims.  It was a patent effort to "shirk" its duties.

Nor was this position reasonable in light of NMFS's past history.  Again, as the Ninth Circuit explained, Congress "repeatedly rejected proposals to provide for state management . . . without an FMP."[18]  There is no substantial justification for NMFS to try and "vest in Alaska the very authority that Congress abjured."[19]

In *Oregon Natural Resources Council v. Madigan*,[20] the Ninth Circuit explained that a position is not substantially justified where "the statutory language clearly set forth a mandatory duty" and that agency fails to follow that duty.  Although the agency in that case argued that its position was reasonable because the "the language and legislative history are ambiguous and

---

[12] *Id*.
[13] *Id*.
[14] Opposition at 1.
[15] *United Cook Inlet Drift Ass'n*, 837 F.3d at 1065.
[16] *Id*. at 1063.
[17] *Id*. at 1063-64.
[18] *Id*. at 1063.
[19] *Id*.
[20] 980 F.2d 1330, 1332 (9th Cir. 1992)

subject to two equally compelling interpretations," that argument was foreclosed where the Ninth Circuit had held that the statute is "clear."[21]

NMFS's arguments here fail for exactly the same reasons. The Ninth Circuit in this case likewise held that the statute was "unambiguous" and that the Act is "clear."[22] The Panel characterized NMFS's arguments as "strange," and leading to absurd results that would allow it to satisfy "its statutory obligation by issuing an FMP applying to only a single ounce of water."[23] There is no justification here for NMFS's decision at all, let alone the substantial justification, required to obviate its statutorily mandated attorney fee reimbursement obligation.

NMFS tries to manufacture justification by citing to its public process, and historical practice, and how it "sought guidance from three other provisions of the MSA" to conclude that the "Defendant's reliance on these provisions to interpret an ambiguous statute reflects a reasonable approach to agency rulemaking."[24] But these are just the same arguments that NMFS made to and lost at the Ninth Circuit. The Ninth Circuit found that the statute was unambiguous, that the Council process was part of an unreasonable effort to "shirk" the statutory command, that other provisions relied upon by NMFS were patently inapposite (or "strange"), and that the Act's history confirmed that Congress had repeatedly rejected providing this very authority to NMFS.[25] There is no "substantial justification" here, and "there is nothing in the EAJA or the appellate decisions cited [by NMFS] to suggest that an agency's position is substantially justified until tested in a court of law or because its position goes years without challenge."[26]

Other than rehashing old arguments, NMFS does not point to any actual evidence that its decision was, in fact, substantially justified. The reality is that the decision was based <u>not</u> on the law but on a <u>policy</u> choice by the Council (and supported by NMFS) that the State of Alaska should be managing fisheries in the EEZ under state law. As Defendants explain, "[t]he FMP is being comprehensively revised to more clearly reflect the Council's policy with regard to State

---

[21] *Madigan,* 980 F.2d at 1332.
[22] *United Cook Inlet Drift Ass'n,* 837 F.3d at 1064-65.
[23] *Id*. at 1064.
[24] Opposition at 13.
[25] *United Cook Inlet Drift Ass'n,* 837 F.3d at 1062-64.
[26] *See Preston v. Heckler*, 596 F. Supp. 1158, 1160 (D. Alaska 1984).

of Alaska management authority for commercial and sport salmon fisheries in the EEZ."[27]  But as the Ninth Circuit explained, that policy choice is contrary to law: the "Act makes plain that federal fisheries are to be governed by federal rules in the national interest, not managed by the state based on parochial concerns."[28]  Defendants plainly knew that "Congress therefore repeatedly rejected proposals to provide for state management of federal fisheries without an FMP."[29]  Defendants knowingly and unreasonably acted in derogation of Congress's policy choices.

Lastly, NFMS claims that its position is "*per se* reasonable" because this Court initially agreed with NMFS's interpretation.  NMFS here is urging the Court to make the same error that the Ninth Circuit reversed in *Madigan* in holding that Plaintiffs were entitled to their fees under EAJA.  As the Ninth Circuit explains, the district court in that case "found for the government on remand, but misunderstood its task" because it "held fast to its position that the government's interpretation of the statute was reasonable" despite being reversed on appeal.[30]  Likewise, the Ninth Circuit in *United States v. One 1984 Ford Van, bearing VIN No FBHS3110EHB470717,* rejected the government's argument that its position was substantially justified on grounds that "'the government initially won its case before a seasoned, respected district judge'" because the "[d]istrict court's decision cannot be made the last word in a system where every litigant has the right to ask the circuit court for a different view of the law . . . ."[31]  Here, the Ninth Circuit has held that the MSA was clear and unambiguous, and that NMFS's interpretations were an effort to "shirk" its statutory duties.

In any event, Plaintiffs' present argument (and its prior appeal) is not intended to be disrespectful to this Court.  Again, the Ninth Circuit has explained that "[i]t is no disparagement of a respected district judge if the circuit court's view of the law is different."[32]  If anything, the Court's prior decision is a reflection to the resourcefulness (and cleverness) of NMFS's elite

---

[27] AR_NPFMC_1000; AR_NPFMC_00602.

[28] *United Cook Inlet Drift Ass'n*, 837 F.3d at 1063.

[29] *Id.*

[30] *Madigan*, 980 F.2d at 1332.

[31] *United States v. One 1984 Ford Van, bearing VIN No. 1FBHS3110EHB470717*, 873 F.2d 1281, 1282 (9th Cir. 1989).

[32] *Id.*

legal team of attorneys, who, in filing a statutorily convoluted 50 page brief, managed to make a clear statutory issue look exceedingly complicated, when in the end, it was not.[33] NMFS' decision was not substantially justified and Plaintiffs are entitled to fees under EAJA.[34]

## C. The Requested Fee Award Is Reasonable

The overall award requested is reasonable under the circumstances of this case. NMFS forced Plaintiffs to litigate for seven years, contesting every move UCIDA made on the way. Plaintiffs had to weather the best NMFS could muster in litigation strategy, from motions to transfer, to 50-plus page merits briefs, to full appellate briefing and oral argument, to express threats from NMFS that they would "close the Cook Inlet area to commercial fishing for salmon" if Plaintiffs prevailed, and ultimately to Supreme Court *certiorari* petition responses.[35] In the end, Plaintiffs got precisely what they were seeking: the fishery remains open, and NMFS and the Council are now required to prepare a fishery management plan that includes the Cook Inlet salmon fishery.[36]

The total fee requested here is more than reasonable in light of similar environmental cases. For example, in an Endangered Species Act and National Environmental Policy Act case in Wyoming in 2011, federal agencies agreed to pay $265,000 in fees and costs (incurred by the same Stoel Rives attorneys principally at issue in this case), and that case involved a single round of summary judgment and *no appeal briefing,* where the plaintiffs prevailed on only a single issue.[37] Likewise, NMFS in a fisheries case in 2004 (again involving Seattle-based Stoel Rives attorneys) agreed to pay $500,000 in fees and costs in a case decided on summary judgment that likewise involved *no appeal briefing*.[38] And both of those examples are not even based on

---

[33] ECF No. 43, page 13.

[34] NMFS cites to multiple decisions involving ambiguous statutes that are plainly inapposite here. *See, e.g.*, *Renee v. Duncan*, 686 F.3d 1002, 1018 (9th Cir. 2012) (ambiguous statute). As demonstrated above, the statute here was not ambiguous, as the Panel's decision conclusively determined.

[35] *See, e.g.*, ECF No. 88, page 4.

[36] ECF No. 102.

[37] *Wyo. State Snowmobile Ass'n v. U.S. Fish & Wildlife Serv.*, No. 2:09-cv-00095-NDF, ECF No. 90 (May 11, 2011).

[38] *Haw. Longline Ass'n v. NMFS*, No. 01-0765-CKK, Dkt. 180 (D.D.C., entered Nov. 15, 2004).

present day rates.  Moreover, two other long-time environmental litigators in Alaska, Jeffrey Feldman and Svend Brant-Erichsen (both of whom compete in the same market for environmental litigation with Stoel Rives attorneys), *agree* that the total fee requested is reasonable in this case given the circumstances.[39]  For these reasons, NMFS's claims of "excessive" fees ring hollow and should be rejected.

### 1. Plaintiffs Are Entitled to Market Rates

Plaintiffs demonstrated their entitlement to market-based fees under EAJA because Plaintiffs' attorneys have unique, necessary, and specialized expertise in environmental litigation, and equivalent expertise is unavailable at the EAJA statutory rate.[40]  It is well settled that "[e]nvironmental litigation is an identifiable practice specialty that requires distinctive knowledge."[41]  NMFS does not, and cannot, contest that Plaintiffs' attorneys in fact possess the requisite expertise in environmental litigation.  Indeed NMFS has elsewhere "concede[d] that [e]nvironmental law is a recognized specialty for which enhanced rates are appropriate," including, specifically, cases filed under the MSA.[42]

Despite these concessions, NMFS contends now that this case filed under the MSA and NEPA does not implicate "environmental law" because it implicates instead, just basic administrative law.  According to NMFS, this was just a straightforward case of statutory construction requiring no "distinctive knowledge or skill" in environmental law.[43]  These arguments are simply not credible for multiple reasons.

*First*, it is obvious from the complaint and briefing in this case that this case is precisely the kind of case for which expertise in environmental litigation is required.  Plaintiffs' claims involved detailed knowledge and briefing of the MSA and its statutory history.[44]  Plaintiffs'

---

[39] Declaration of Jeffrey Feldman at ¶ 7; Declaration of Svend Brant-Erichsen at ¶ 6.
[40] Affidavit of Jason T. Morgan at ¶¶ 3-13.
[41] *See Love*, 924 F.2d at 1496 (second brackets in original) (citing *Animal Lovers Volunteer Ass'n v. Carlucci*, 867 F.2d 1224, 1226 (9th Cir. 1989)).
[42] *NRDC v. Locke*, 771 F. Supp. 2d 1203, 1210 (N.D. Cal. 2011) (internal quotation marks and citation omitted).
[43] Opposition at 16.
[44] *See* ECF No. 30 (Plaintiffs 'Summary Judgment Brief);  ECF No. 48 (Plaintiffs' Reply on Summary Judgment);  Ninth Circuit Case No. 14-35928, Dkt. No. 16-1 (Plaintiffs' Opening
(continued . . .)

claims involved addressing and identifying failures in the State's management of commercial fisheries, and why the State's fishery management system could not serve as a proxy for federal management. And Plaintiffs' NEPA claims involved the complex interaction between state and federal fisheries authority, and the associated environmental impacts of ever-shifting fishery management.

Other practitioners agree that this case required specialized environmental litigators. As set forth in the Feldman and Brant-Erichsen Declarations, this is precisely the kind of case that requires environmental litigation expertise, and which is commonly sent out to specialized lawyers in Seattle.[45] There are no attorneys in Alaska capable of handling this kind of complex matter at the EAJA statutory rate.[46] Indeed, Plaintiffs' *prior* local counsel recommended hiring Stoel Rives because of the complexity of the federal fishery issues, the need for a deep bench with specialized legal expertise, and the absence of any other Alaska law firm with the requisite expertise to prosecute this case.[47]

*Second*, NMFS's own briefing belies any assertion that this was a simple administrative law case. NMFS filed a 50-page brief that delved deeply into the history of salmon fishing in Alaska, state and federal regulation of the fishery, the language and history of the MSA, and the application of the national fishery standards.[48] NMFS justified its decision to remove Cook Inlet from the Salmon FMP (despite the statutory requirement) based on the "problems NMFS faces" with managing the salmon fishery in the exclusive economic zone, and the "impossible" problems in fishery management that compliance with the Act would produce.[49] This necessarily required Plaintiffs to secure representation from attorneys who both understand and can effectively respond to NMFS's complex, scientific, and technical defenses.[50]

---

(. . . continued)
Brief); *id*. at 16-2 (Addendum containing detailed legislative history); *id*. at 42-1 (Plaintiffs' Reply); *id*. at 42-2 (Reply Addendum with additional legislative history).

[45] Feldman Decl. at ¶¶ 3-4; Brant-Erichsen Decl. at ¶ 4; *see also* Gabriel Decl. at ¶¶ 4-5.
[46] Feldman Decl. at ¶5; Brant-Erichsen Decl. at ¶¶ 7-8; Supplemental Huebsch Declaration at ¶ 10.
[47] Declaration of Greg Gabriel at ¶¶ 4-5; Supplemental Huebsch Declaration at ¶ 10.
[48] ECF No. 43.
[49] *Id*. at page 20-21.
[50] Gabriel Declaration at ¶¶ 4-5.

*Third*, NMFS's assertion that this case required no "distinctive knowledge or skill" in environmental law is belied by its own choice of attorneys. NFMS did not have the Civil Division of the U.S. Attorneys' Office in Anchorage handle this matter. Instead, NMFS was represented by the elite litigation team fielded by the Environment and Natural Resource Division of the U.S. Department of Justice out of D.C. and Portland. These litigators specialize in environmental and natural resources litigation, including these types of fishery cases brought under the MSA and other wildlife statutes, and do nothing but environmental and natural resources litigation on behalf of the United States across the country. Ellen Durkee (appellate counsel for NMFS and a DOJ attorney for 35 years) and Coby Howell (trial counsel for NMFS and a DOJ attorney for 14 years) have been handling high profile environmental cases at the Justice Department all across the country for decades.[51] NMFS's staffing decision speaks much louder than their anemic arguments here, and for this reason alone, its arguments should be summarily rejected.

Under these circumstances, there should be no doubt that this case required litigators with specialized environmental expertise, and that such specialized expertise is not available in Alaska at the statutory rate of $125 per hour.[52] The Declarations of Jeffrey Feldman and Svend Brant-Erichsen confirm that environmental litigation is a specialized practice, that this kind of case warrants retention of an environmental litigator, that this is the kind of case that is typically handled by out of state lawyers, and that these services are not available at the EAJA statutory rate of $125, even adjusted for inflation.[53] Moreover, the Declaration of Gregory Gabriel (prior counsel for Plaintiffs) confirms that he, in fact, recommended that Plaintiffs hire Stoel Rives, and Mr. Morgan and Ms. Ginsberg specifically, for this case specifically, because of their environmental expertise and the lack of any other qualified firm in Alaska to take the case.[54] In short, Plaintiffs have more than met their burden of demonstrating that market rates here are

---

[51] *See, e.g., Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 787 (9th Cir. 2005) (Ellen Durkee representing NMFS in high profile challenge to operation of Federal Columbia River Power System and its impacts on salmon); *Oceana, Inc. v. Evans*, 384 F. Supp. 2d 203, 209 (D.D.C. 2005) (Coby Howell representing NMFS in Magnuson Act challenge).
[52] Morgan Affidavit at ¶14.
[53] Feldman Decl. at ¶¶ 3-9; Brant-Erichsen Decl. at ¶¶ 3,4, 6-8;
[54] Gabriel Decl. at ¶¶ 4-5.

*United Cook Inlet Drift Association et al. v. NMFS et al.,* 3:13-cv-00104-TMB
Page 10
95843886.2 0014655-00002

appropriate under EAJA given the need for specialized environmental litigators and the absence of qualified practitioners at the statutory rate.

### 2. The Market Rates Are Reasonable and Appropriate

The Morgan Affidavit attached to Plaintiffs' application for fees set forth the rates charged (and paid by Plaintiffs) for services rendered in this litigation. Because this litigation has spanned many years, the rates charged increased over time, consistent with market rates. So for example, Mr. Morgan, who did the vast majority of work in this case, was a fourth year associate with a rate of $285 at the beginning of this case, and a fourth year partner by 2017 with a rate of $490.[55] The range of fees charged is summarized in the table at paragraph 7 in Mr. Morgan's Affidavit. The actual amount billed (hours times rate = value) is produced for each time entry listed on the table at Attachment A to the Morgan Affidavit. These rates were reasonable, given the specialized nature of the work, for the relevant market.[56] *Id.* An updated version of this table is provided as Updated Attachment A to the Supplemental Morgan Affidavit, which now includes additional fees associated with this motion.[57]

NMFS argues that these rates are excessive, based on case law that has nothing to do with the kind of environmental litigation specialty at issue here.[58] As demonstrated in the Supplemental Morgan Affidavit, the rates charges in this case are entirely consistent with the legal market in Alaska.[59] Other practitioners agree. As set forth in the Feldman and Brant-Erichsen declarations, Stoel Rives' rates are consistent and competitive in environmental litigation markets for both Anchorage and Seattle and thus, are not "excessive."[60] .

---

[55] Morgan Affidavit at ¶ 7.

[56] Attachment A to the Morgan Affidavit.

[57] NMFS professes not to be able to figure out the rates from the table. To the extent greater specificity is required, the Updated Attachment A provides a rate for each time entry, as well as separate tables showing each time keeper's rates for each year, and the sum total of hours by each time keeper for each year.

[58] *See* Opposition at 18, fn. 18.

[59] Supplemental Morgan Affidavit at ¶ 5.

[60] Feldman Declaration at ¶8; Brant-Erichsen Declaration at ¶7. Furthermore, NMFS does not even explain why the market should be set based on the prevailing rate in Anchorage. This case was filed in D.C., and the rates at issue here are well below the prevailing rate in D.C. for environmental litigation. *See Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994) (district court did not err in determining relevant market was where case was originally . . .)

(continued . . .)

Equally important, the rates charged ultimately have to be viewed in light of the difficulty of the case presented, and the issues at stake. NMFS's decision here put the entire fishery and Plaintiffs' livelihood and "way of life" at risk.[61] And while Plaintiffs' claims were strong, fisheries cases in Alaska, at both the state and federal level, are exceedingly difficult to win. That is so because, as here, the agencies frequently attempt to envelop their decision with deference by arguing that the statute is complicated and imbued with scientific expertise and discretion. Plaintiffs necessarily hired lawyers with the experience and expertise to overcome those formidable hurdles to win this case, and are entitled to the full requested fee award as a result.[62]

### 3. NMFS's Efforts to Attack Specific Charges Should Be Rejected

Beyond these failed broad-based attacks, NMFS proceeds to comb through the multi-year history of fees and pluck out specific charges that it simply does not want to pay. The Ninth Circuit has stated that the courts need not and should not engage in an "hour-by-hour analysis of the fee request."[63] Instead, a fee request should be treated "as an inclusive whole, rather than as atomized line-items."[64] In order to determine whether the number of hours expended on an issue is reasonable, plaintiff's counsel "should identify the general subject matter of his [or her] time expenditures."[65] Plaintiffs are "not required to record in great detail how each minute of [its counsels'] time was expended."[66] Rather, the test is whether the hours were reasonable; for an

---

(. . . continued)

filed). NMFS's decision to transfer the case materially increased costs. NMFS should not be entitled to a fee discount based on its tactical decision.

[61] Supplemental Huebsch Declaration at ¶ 9.

[62] NMFS oddly argues that Plaintiffs have waived the rate to adjusted fees under EAJA. But Plaintiffs initially asked for market rates (including the rate increases actually charged in each calendar year), not EAJA statutory rates, and thus, cannot be held to have waived its entitlement of adjusted fees. To the extent that the Court is inclined to limit the award only to the EAJA statutory rate (and it should not) the proper course would be for Plaintiffs to file a revised request with the applicable EAJA rates for each year.

[63] *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

[64] *INS v. Jean*, 496 U.S. 154, 161-62 (1990).

[65] *Hensley*, 461 U.S. at 437 n.12.

[66] *Id*.

award of compensation to be denied, "it must appear that the claimed time is obviously and convincingly excessive under the circumstances."[67]

Plaintiffs have met this burden. Counsel for Plaintiffs have provided detailed spreadsheets (Attachment A and Updated Attachment A to the Morgan Affidavits) with time entries detailing the work performed and the amount charged. Plaintiffs' attorneys have exercised billing judgment by not requesting reimbursement for an additional $30,000.00 reasonably incurred in this litigation.[68] Independent attorneys confirmed that the rates charged and the total fees incurred are in line with market rates for environmental litigation in Anchorage and Seattle. Nothing more is required.

NMFS nonetheless tries to drag the Court into a line-by-line review of the fee request. This exercise should be rejected as a matter of law. Regardless, as detailed below, NMFS's specific complaints have no merit.

*First*, NMFS tries to evade paying for the time spent by Plaintiffs in responding to the State of Alaska's *petition for certiorari* to the U.S. Supreme Court, claiming that those fees are "attributably solely to litigation decisions made by Intervenor State of Alaska," rather than costs incurred in "opposing federal government resistance."[69] That is not simply not true. In fact, while arguing against *certiorari*, NMFS filed a brief with the U.S. Supreme Court arguing that the Ninth Circuit's decision was *wrongly* decided and *agreeing* with the State's legal analysis.[70] NMFS' position forced Plaintiffs to respond to *both* the arguments of NMFS *and* the State.[71] Although NFMS may not have led the charge, it continued to resist the Ninth Circuit's mandate, thereby causing Plaintiffs to expend additional fees in opposition.

---

[67] *Charlebois v. Angels Baseball LP,* 993 F. Supp. 2d 1109, 1123 (C.D. Cal. 2012) (quotations and citation omitted).

[68] Supplemental Morgan Affidavit at ¶ 3.

[69] Opposition at 19.

[70] *See* Brief for the Federal Defendants in Opposition at 11 ("NMFS agrees with petitioner that the court's decision is erroneous," and "an unduly restrictive reading of the statutory text, rather than deferring to the agency's permissible interpretation.") A copy of NMFS brief is provided at Attachment B to the Supplemental Morgan Affidavit.

[71] Brief of Respondents in Opposition, provided at Attachment C to the Supplemental Morgan Affidavit.

Moreover, in a recently decided Ninth Circuit decision in *Pollinator Stewardship Council* distinguished cases where an intervenor had filed proceedings that were *unrelated to the government's case*, from cases where the intervenor is simply *defending the government's position* and "determinations" while the government itself failed to "request a remand or otherwise acquiesce to [plaintiffs] claims."[72]  That latter situation is precisely what happened here.  After the Ninth Circuit's decision, the State took up the torch for NMFS.  NMFS did not "acquiesce" or "request a remand" but instead filed a discretionary Supreme Court brief that *supported* the State's argument that the Ninth Circuit's decision was wrong.[73]  Plaintiffs tried to avoid these costs by filing a "waiver" of their right to file a response brief.[74]  After NMFS made a decision to weigh in, the Supreme Court ordered Plaintiffs to file an opposition brief.[75]  In short, the fees incurred by UCIDA were directly and materially attributable to the federal government's refusal to accept the mandate of the Ninth Circuit.  Plaintiffs' post appeal briefing was therefore "made necessary" by NMFS's "opposition to [Plaintiffs'] rightful claims," and are fully recoverable under EAJA.[76]

*Second*, NMFS opposes fees incurred in opposing NMFS's motion to transfer this case from the District Court in Washington, D.C..  But NMFS cites *no authority* for the proposition that a prevailing party is not entitled to the fees it reasonably expended *in opposing a procedural motion filed by the government.*  Plaintiffs were free to file their lawsuit in D.C.  Indeed, NMFS conceded that venue was *proper* in the District of D.C..[77]  Plaintiffs incurred these fees responding to NMFS's motion, and NMFS bears the burden of paying for its preferred choice of venue.  The Court's job in reviewing fee awards is not to "scalpel out attorney's fees for every setback."[78]  NMFS may have won its procedural request to transfer venue, but it lost its case in its chosen venue.  Under these circumstances, there is no basis to reduce the fee award here.

---

[72] *Pollinator Stewardship Council v. U.S. Envtl. Prot. Agency*, No. 13-72346, 2017 WL 3096105, at *10 (9th Cir. June 27, 2017).

[73] *Id*.

[74] Attachment D to the Supplemental Morgan Affidavit.

[75] Supplemental Morgan Affidavit at ¶ 10 and Attachment C.

[76] *Pollinator Stewardship Council,* 2017 WL 3096105, at *10.

[77] ECF No. 6 (Defendants' Motion to Transfer).

[78] *Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991).

*Third*, NMFS contests pre-litigation attorneys' fees contending that those fees reflect nothing more than routine representation before an administrative agency. NMFS again is wrong on the law and the facts. The right to fee recovery begins before the filing of the litigation and is appropriate for "services performed before . . . the filing of a complaint" including "work associated with the development of the theory of the case."[79] Courts have recognized that "time reasonably spent on pre-complaint investigation, legal research and informal discovery relevant to developing the theory of the case is properly recoverable" under EAJA.[80] Furthermore, courts have recognized that fees spent in "participation in administrative proceedings" and filing comment letters are compensable under EAJA where "necessary to monitor compliance with earlier court rulings" and "to preserve issues for pending litigation."[81]

That is precisely the case here. In 2010 UCIDA and NMFS entered into a consent decree whereby NMFS agreed to consider a petition by UCIDA to address problems with the State's management of commercial fisheries in Alaska pursuant to the existing Salmon FMP.[82] Plaintiffs proceeded to diligently work on producing those petitions (and are not seeking the fees for that work here), but the Council and NMFS subsequently initiated steps to remove Cook Inlet from the Salmon FMP, thereby rendering the planned petition useless. That necessitated immediate action by Plaintiffs to ensure that their legal arguments were preserved for litigation, and that Council and NMFS were apprised of the factual and legal predicate for Plaintiffs' challenge. Aware of this problem, NMFS decided to involve its own attorneys repeatedly throughout the pre-litigation process to discuss the impact of the consent decree, to prepare for and interact with Plaintiffs on phone calls, and to address Plaintiffs' comments.[83]

---

[79] *Webb v. Bd. of Educ. of Dyer Cty.*, 471 U.S. 234, 243 (1985); *Forest Conservation Council v. Devlin*, 994 F.2d 709, 712 n.2 (9th Cir. 1993) ("[I]n some circumstances fee awards include expenses incurred before litigation commences.").

[80] *Lucas v. White*, 63 F. Supp. 2d 1046, 1058-59 (N.D. Cal. 1999).

[81] *Locke*, 771 F. Supp. 2d at 1213; *id*. at 1212 ("The Court finds no merit in Defendants' contentions that NRDC's claimed hours should be further reduced to reflect 'limited success' and that NRDC is not entitled to recover fees and expenses for comments on the agency actions challenged in this case.").

[82] Supplemental Morgan Affidavit at ¶ 6.

[83] This is reflected in the record, but the substance of NMFS's conversations with counsel remain shielded under attorney client privilege. *See, e.g.*, AR_Email_0004774;

(continued . . .)

Nor does it matter, as NMFS contends, that this pre-litigation phase extended for many months. The protracted length of the pre-litigation phase is simply a function of NMFS's delay in issuing an appealable decision. The illegality of the Council's decision to remove Cook Inlet from the Salmon FMP was apparent from the Council's first proposal. Yet it took the Council a year to get to its final actions, and it then took another year for NMFS to issue final regulations that triggered the first opportunity to file a lawsuit pursuant to the MSA.[84] Plaintiffs, by contrast, had to be ready and prepared to file their lawsuit within 30 days of that final decision, and did so. Plaintiffs' request for pre-litigation fees during this time period simply reflects the delays in NMFS's decision-making.

Counsel for Plaintiffs has engaged in a reasonable effort to limit its request for pre-litigation expenses to only those fees necessarily incurred to prepare for the lawsuit and to ensure Plaintiffs' rights were fully protected.[85] That necessarily required vetting experts who could both evaluate the scientific claims asserted by the Council and NMFS and help develop theories to rebut the scientific claims that the State was properly managing the fisheries, and it required presenting and preserving Plaintiffs' objections to the Council and NMFS in order to perfect the lawsuit.[86] To the extent the Court has any concerns about these pre-litigation fees, the proper course would be to reduce them by 10 percent, not cut them out entirely.[87]

*Fourth*, NMFS urges the Court to reduce the fee on grounds that Plaintiffs only prevailed on the core issue in the case. Here again, NMFS is wrong on the law. The Supreme Court holds: "*Hensley* emphasized that '[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee,' and that 'the fee award should not be reduced simply because

_____

(. . . continued)
AR__Email_009789 (completed redacted NMFS document from October 2010 discussing UCIDA consent decree and Council proceedings). Indeed, even the very first email in the record is completely redacted. AR_Email_00001.

[84] *See* 77 Fed. Reg. 75,570, 75,570 (Dec. 21, 2012).
[85] Supplemental Morgan Affidavit at ¶ 6.
[86] *Id*.; Morgan Affidavit at ¶ 18.
[87] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("Nevertheless, the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.").

the plaintiff failed to prevail on every contention raised in the lawsuit.'"[88]  Thus, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."[89]  The Ninth Circuit has recognized that zealous, creative counsel will generally mount an array of arguments in an effort to obtain a good result for the client, and some of those arguments will inevitably fail: "Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles [he or she] is certain of winning is probably not serving [his or her] client vigorously enough; losing is part of winning."[90] If the hours claimed were reasonably necessary to prosecute the case, and the plaintiff obtained a substantial portion of the relief it sought, fees for all of plaintiff's attorneys' hours should be awarded.[91]

In this case, the Ninth Circuit could not have been more clear that it was granting complete relief.  The Ninth Circuit ruled on behalf of Plaintiffs on the core issue in the case, and remanded "with instructions that judgment be entered in favor of [Plaintiffs]."[92]  The Court then concluded that reaching Plaintiffs' remaining issues was not necessary because it was awarding complete relief.[93]  And because UCIDA achieved exactly what it set out to accomplish with this lawsuit, Plaintiffs are entitled to a complete fee award.

*Lastly*, NMFS contends that the case overall took too many hours.  Again, the law does not support this argument.  Regarding the number of hours reasonably expended, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he [or she] was required to spend on the case."[94]  Counsels' "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required."[95]  Plaintiffs' counsel have provided that sworn testimony, and exercised billing judgment to remove over $30,000.00 from the fee request including complete elimination of time entries from 2

---

[88] *City of Riverside v. Rivera*, 477 U.S. 561, 569 (1986).
[89] *Hensley*, 461 U.S. at 435 (emphasis added).
[90] *Cabrales*, 935 F.2d at 1053.
[91] *City of Riverside*, 477 U.S. at 572 (awarding all fees, despite failure to prevail on all issues).
[92] *United Cook Inlet Drift Ass'n*, 837 F.3d at 1065.
[93] *Id.* at 1065 n.4.
[94] *Moreno*, 534 F.3d at 1112.
[95] *Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988).

attorneys.[96]  Other practitioners' sworn testimony that the award requested is appropriate for the nature and complexity of this case provides the Court with all that it needs to determine that the hours expended on the case were reasonable.[97]

**D.     Plaintiffs Are Entitled to the Full Award of Costs**

NMFS correctly points out that Plaintiffs inadvertently excluded the detailed statement of costs from Attachment A to the Morgan Affidavit.  But as NMFS acknowledges, the detailed statement of costs was previously included as Attachment A of the previously filed Affidavit of Beth Ginsberg at ECF No. 82-1.  This error has been corrected (and was never prejudicial because NFMS had the statement of costs and has made its objections) in the Updated Attachment A to the Supplemental Morgan Affidavit.

NMFS's other specific objections likewise are without merit.  The pre-litigation costs are appropriate for the same reasons discussed above.  The copying costs were reasonably incurred in the course of litigation.[98]  To the extent that hourly rates are needed to support an award for administrative work, that information is now provided in the Updated Attachment A.[99]  And while Plaintiffs disagree that an expert is necessary, that position is hardly compelling given the position taken by NMFS and the Council during active litigation and the entire pre-litigation period that the Council should be deferring to the State of Alaska's management.  UCIDA was entitled to, and did, solicit a second opinion from an expert, and that information was necessary and useful to ultimately getting NMFS to concede, as it did before the Ninth Circuit, that the Cook Inlet salmon fishery requires conservation and management.[100]  Plaintiffs are therefore entitled to costs in the amount of $12,779.66 and their reasonable expert fees of $4,737.70

---

[96] Supplemental Morgan Affidavit at ¶ 3.

[97] *Id*. at ¶ 3; Plaintiffs' duplication claims are equally without merit.  *Moreno*, 534 F.3d at 1112-13.  "[D]uplication always happens when a task is started, stopped and then taken up again later.... It is only where the lawyer does *unnecessarily* duplicative work that the court may legitimately cut the hours." *Id*. at 1113. "When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research." *Id*. at 1112.

[98] Supplemental Morgan Affidavit at ¶ 7.

[99] *See id.* at ¶ 2.

[100] Morgan Affidavit at ¶ 18.

*United Cook Inlet Drift Association et al. v. NMFS et al.,* 3:13-cv-00104-TMB
Page 18

### III.  CONCLUSION

For all the above reasons, the Court should grant the full requested amount of costs as set forth in Updated Attachment A in the amount of $540,479.50 in fees, $12,779.66 in costs, and $4,737.70 in expert fees.

**DATED:**  April 5, 2018

/s/ Jason T. Morgan
Ryan P. Steen, AK Bar No. 0912084
Beth S. Ginsberg, Admitted *Pro Hac Vice*
Jason T. Morgan, AK Bar No. 1602010

Attorneys for United Cook Inlet Drift Association
and Cook Inlet Fishermen's Fund

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2018 I filed a copy of the foregoing document with the

Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF

system.  All participants in this Case No. 3:13-cv-00104-TMB are registered CM/ECF users and

will be served by the CM/ECF system.


*/s/ Jason T. Morgan*
Jason T. Morgan