IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED COOK INLET DRIFT ASSOCIATION and COOK INLET FISHERMEN'S FUND,<br><br>       Plaintiffs,<br><br>  v.<br><br>NATIONAL MARINE FISHERIES SERVICE, ET AL.,<br><br>       Defendants. | Case No. 3:13-cv-00104-TMB<br><br>ORDER ON MOTION<br>FOR ATTORNEYS' FEES AND COSTS<br>(DKT. 106) |

## I. INTRODUCTION

Plaintiffs United Cook Inlet Drift Association ("UCIDA") and Cook Inlet Fishermen's Fund ("CIFF") filed a motion for attorneys' fees and costs at docket 106. Defendants oppose the motion at docket 115, and Plaintiffs reply at docket 131. For the following reasons, Plaintiffs' motion is **GRANTED**.

## II. BACKGROUND

Plaintiffs, two groups of commercial fishermen, filed suit against NMFS and certain NMFS officials to challenge NMFS' approval of an amendment to fishery management plan for salmon fisheries near Alaska, known as Amendment 12, and NMFS's regulations implementing this amendment.[1] The Court denied Plaintiffs' motion for summary judgment and issued

---

[1] *See United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*, 837 F.3d 1055, 1057 (9th Cir. 2016), cert. denied sub nom. *Alaska v. United Cook Inlet Drift Ass'n*, 138 S. Ct. 58 (2017). The facts are described in the Ninth Circuit's opinion in this matter, and the Court refers to the facts herein only as they relate to the present motion for attorneys' fees.

1

judgment for Defendants in September 2014.[2] Plaintiffs appealed, and the Ninth Circuit reversed this Court's decision and remanded with instructions that judgment be entered in favor of Plaintiffs.[3] The Court entered judgment in the above case on August 3, 2017.[4] On October 3, 2017, the Supreme Court denied Intervenor State of Alaska's petition for certiorari.[5]

Plaintiffs then filed the present motion for attorneys' fees under the Equal Access to Justice Act ("EAJA").[6] At the parties' joint request, the Court stayed this motion and the briefing schedule to allow the parties to pursue settlement discussions.[7] The parties were unable to settle Plaintiffs' motion for fees,[8] and the parties subsequently completed briefing.[9] The Court heard oral argument on the motion on June 7, 2018.[10] This motion is now ripe for resolution.

### III. ANALYSIS

The EAJA provides that "a court may award reasonable fees and expenses of attorneys . . . to the prevailing party in any civil action brought by or against the United States" and that "[t]he United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which

---

[2] Dkt. 64; Dkt. 65.

[3] Dkt. 71 (reported at *United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*, 837 F.3d 1055 (9th Cir. 2016)).

[4] Dkt. 102.

[5] Dkt. 104 (reported at *Alaska v. United Cook Inlet Drift Ass'n*, 138 S. Ct. 58 (2017)).

[6] Dkt. 106.

[7] Dkt. 111.

[8] Dkt. 113.

[9] Dkt. 115; Dkt. 131.

[10] Dkt. 135.

specifically provides for such an award."[11] The EAJA also provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . including proceedings for judicial review of agency action . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."[12]

The parties contest both whether Plaintiff is eligible for and entitled to fees under the EAJA and the amount of any recovery.

A. *Eligibility under the EAJA*

A "party" under the EAJA includes any corporation, association, or organization, "the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed."[13] In their motion, Plaintiffs state that UCIDA is a for-profit company and CIFF is a non-profit company, and that neither entity had a net worth exceeding $7,000,000 or more than 500 employees at the time this civil action was filed.[14] Plaintiffs submit supporting declarations from officials of UCIDA and CIFF stating these same facts.[15]

Defendants, in response, contend that Plaintiffs "have not met their burden of establishing that they meet the net worth requirements imposed by EAJA."[16] Defendants argue that the

---

[11] 28 U.S.C. § 2412(b).

[12] 28 U.S.C. § 2412(d)(1)(A).

[13] 28 U.S.C. § 2412(d)(2)(A).

[14] Dkt. 106 at 4–5.

[15] Dkt. 108; Dkt. 109.

[16] Dkt. 115 at 15.

3

supporting declarations are "conclusory" and thus insufficient to establish eligibility for fees under the EAJA, and that Plaintiffs may not supply additional evidence in reply.[17] Plaintiffs, in reply, argue that no additional information is required "where, as here, there is 'no serious doubt about the applicant's eligibility,'"[18] and provide supplemental declarations containing additional details regarding Plaintiffs' employee counts and net worth.[19]

A "request for attorney's fees should not result in a second major litigation," and consequently, "some informality of proof is appropriate."[20] "An affidavit of the party's net worth is generally sufficient evidence to prove net worth under EAJA."[21] The Ninth Circuit has looked to information contained in a reply in assessing whether a party was eligible for fees under the EAJA.[22] Here, Plaintiffs have provided affidavits from two officials of Plaintiffs' organizations;[23] supporting documentation, including bank statements and a bank register showing Plaintiffs' assets;[24] and an affidavit from UCIDA's CPA.[25] These documents

---

[17] *Id*. at 15–16.

[18] Dkt. 131 at 8 (quoting *Sosebee v. Astrue*, 494 F.3d 583, 588 (7th Cir. 2007)).

[19] Dkt. 125; Dkt. 126; Dkt. 127.

[20] *United States v. 88.88 Acres of Land*, 907 F.2d 106, 108 (9th Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

[21] *Freeman v. Mukasey*, No. 04-35797, 2008 WL 1960838, at *2 (9th Cir. Feb. 26, 2008).

[22] *See id*. Moreover, as Plaintiffs point out, Defendants' cited authority for the proposition that the Court may not consider supplemental evidence provided in reply arises in an entirely different context – namely, a motion for reconsideration under Fed. R. Civ. P. 59. *See* Dkt. 113 at 16 and Dkt. 131 at 8 (discussing *Hamby v. Walker*, No. 3:14-CV-00089-TMB, 2015 WL 12516788, at *2 (D. Alaska Sept. 2, 2015)).

[23] Dkt. 125; Dkt. 126.

[24] Dkt. 125-1; Dkt. 126-1.

[25] Dkt. 127.

demonstrate that Plaintiffs' assets, even prior to subtracting liabilities, were below $7,000,000 at the time they filed this action.[26] The Court thus concludes that Plaintiffs' meet the EAJA net worth threshold. The Court also finds, based on the attached declarations, that Plaintiffs had fewer than 500 employees at the time they filed this action. Accordingly, Plaintiffs are eligible to recover under EAJA.

   B. *Substantially justified position or special circumstances making an award unjust*

As described above, the EAJA provides that a court "shall" award fees to a prevailing party other than the United States in a civil action "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."[27] "Substantially justified" means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person."[28] "A substantially justified position must have a reasonable basis in both law and fact."[29] In assessing substantial justification, the Court looks to "whether the position of the government was, as a whole, substantially justified."[30] The Court considers "first, whether the government was substantially justified in taking its original action;

---

[26] *See* Freeman, 2008 WL 1960838, at *2 ("The common and well-established meaning of the term 'net worth' is the difference between total assets and total liabilities." (internal citations omitted)).

[27] 28 U.S.C. § 2412(d)(1)(A).

[28] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also United States v. Marolf*, 277 F.3d 1156, 1161 (9th Cir. 2002).

[29] *Marolf*, 277 F.3d at 1161; *see also Pierce*, 487 U.S. at 565.

[30] *Marolf*, 277 F.3d at 1161.

5

and, second, whether the government was substantially justified in defending the validity of the action in court."[31]

Plaintiffs argue that Defendants' position was not substantially justified, and emphasize that the Ninth Circuit found that the "Magnuson-Stevens Act *unambiguously* requires a Council to create an FMP for each fishery under its authority that requires conservation and management," and therefore that Amendment 12 is "contrary to law to the extent it removes Cook Inlet from the FMP."[32] Plaintiffs also maintain that there are no special circumstances making an award unjust.[33] Defendants, in response, argue that their position was substantially justified, and contend that both the government's underlying conduct in promulgating Amendment 12 and the government's litigation position were reasonable. Defendants stress that "NMFS's decision regarding Amendment 12 ultimately hinged on an interpretation of an ambiguous statute lacking any preexisting judicial precedent to guide the agency's decision," and contend that NMFS reasonably relied on the historical management of the Cook Inlet and practical considerations in interpreting this statute.[34] Defendants also point out that this Court initially found for Defendants.[35] In reply, Plaintiffs stress that the Ninth Circuit found that the Magnuson-Stevens Act was "unambiguous" and "clear" with respect to the very obligations

---

[31] *Id.*; *see also Al-Harbi v. I.N.S.*, 284 F.3d 1080, 1084 (9th Cir. 2002).

[32] Dkt. 106 at 5 (quoting *United Cook Inlet Drift Ass'n.*, 837 F.3d at 1065) (emphasis added in Plaintiffs' motion).

[33] *Id.* at 6.

[34] Dkt. 115 at 19, 22.

[35] *Id.* at 21.

which the Ninth Circuit found were violated by Amendment 12 and the implementing regulations.[36]

In *Oregon Nat. Res. Council v. Madigan*, the Ninth Circuit considered an application for attorneys' fees under the EAJA arising out of similar circumstances.[37] In that case, the district court had originally found for defendants government agencies and officials, but the Ninth Circuit reversed on appeal with respect to a claim under the Hells Canyon National Recreation Area Act, finding that the language and legislative history of that act were "clear."[38] With respect to attorneys' fees, the Ninth Circuit then concluded that the government's position was not substantially justified. The Ninth Circuit rejected the government's argument that "that its interpretation was reasonable because the language and legislative history are ambiguous" as the Ninth Circuit had already "rejected this position on the merits when it found the statute clear."[39] The Ninth Circuit explained that the Circuit's "precedents do not treat the district judge's agreement with the government in the initial case as conclusive as to whether or not the government was reasonable," and also found that there were no "extraneous circumstances" justifying the government's litigation position.[40]

In the present case, the Ninth Circuit similarly "f[ou]nd the statutory language clear," and additionally noted that "that the legislative history of the Act belie[d] the government's

---

[36] Dkt. 131 at 10.

[37] 980 F.2d 1330 (9th Cir. 1992).

[38] *Id.* at 1332.

[39] *Id*.

[40] *Id*. (explaining that "[e]xtraneous circumstances include relevant legal or factual precedents.").

7

argument."[41] Guided by *Madigan*, and in light of the Ninth Circuit's conclusion on the merits, the Court cannot find that the Government's underlying position was reasonable. Likewise, the absence of judicial precedent and attending practical considerations[42] did not make the Government's litigation position reasonable.[43] The Court finds that the Government's position was not substantially justified and that there are no special circumstances making an award unjust, and that Plaintiffs are thus entitled to recover under the EAJA.

*C. Scope of recovery*

The EAJA limits the Court to awarding "reasonable fees and expenses of attorneys."[44] The Court determines reasonable fees and expenses under the EAJA by the lodestar calculation.[45] "To calculate the lodestar amount, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate."[46] The EAJA limits attorney

---

[41] *United Cook Inlet Drift Ass'n*, 837 F.3d at 1063.

[42] *See* Dkt. 115 at 19.

[43] *See Madigan*, 980 F.2d at 1332 ("We realize that in a case involving purely legal issues, where precedent is lacking, it may be difficult for the government to present extraneous circumstances going beyond the merits to justify its litigation position. Nevertheless, the government has the burden of showing that its decision to proceed to trial on the HCNRA Act claim was reasonable. It lost on an issue of statutory interpretation that the previous panel did not consider close, and, without evidence otherwise explaining its position, we cannot say that its position was substantially justified."). Indeed, in its decision in this case, the Ninth Circuit discussed both the historical management of the Cook Inlet and the related provisions of the MSA, both of which Defendants now point to in their response opposing attorneys' fees. *See* Dkt. 115 at 19–21; *United Cook Inlet Drift Ass'n*, 837 F.3d at 1058–60, 1062–63. In assessing whether the Government's position was substantially justified, however, "[i]t is not [the Court's] task to review the previous panel's decision." *Madigan*, 980 F.2d at 1332.

[44] 28 U.S.C. § 2412(b).

[45] *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012).

[46] *Id.* (internal citations omitted).

fees to a rate of $125 per hour, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."[47]

Plaintiffs request a total award of a total award of $540,479.50 in attorneys' fees, $12,779.66 in costs, and $4,737.70 in expert fees.[48] Defendants contest the reasonableness of Plaintiffs' requested rate and total hours billed, and argue that Plaintiffs should not be awarded costs or expert witness fees.[49]

*1. Attorney rates*

In order to be awarded enhanced attorneys' fees above the statutory EAJA rate, "(1) the attorney must possess distinctive knowledge and skills developed through a practice specialty; (2) those distinctive skills must be needed in the litigation; and (3) those skills must not be available elsewhere at the statutory rate."[50] In the present case, Plaintiffs' seek an award "based on their attorneys' market-based rates."[51] Plaintiffs explain that their attorneys have "unique, necessary, and specialized expertise in environmental litigation" that is unavailable at the EAJA statutory rate.[52] Plaintiffs also maintain that this expertise was necessary for Plaintiffs' representation in this case, as the case involved complex agency determinations, regulatory and

---

[47] 28 U.S.C. § 2412(d)(2)(A).

[48] Dkt. 131 at 7.

[49] Dkt. 115 at 22–31.

[50] *Nat. Res. Def. Council, Inc. v. Winter*, 543 F.3d 1152, 1158 (9th Cir. 2008) (internal citations omitted).

[51] Dkt. 106 at 7.

[52] *Id*.

9

statutory interplay, in-depth analysis of legislative history, and extensive knowledge of fishery dynamics and biology.[53] Plaintiffs submit an affidavit from counsel describing the rates charged for legal services and attaching a table detailing specific tasks performed by attorneys and the total "value" of these tasks.[54]

In response, Defendants argue that this case "required nothing beyond basic knowledge of statutory interpretation and administrative law," and that knowledge of administrative law is not a specialized skill justifying enhanced fees under the EAJA.[55] Defendants also note that Plaintiffs did not demarcate precise rates for each attorney in their billing records, or provide evidence that these rates are "are reasonable for Anchorage practitioners or for necessary practitioners outside of Anchorage."[56] Plaintiffs, in reply, emphasize that this case required "specialized environmental expertise," and submit declarations from two local attorneys who confirm that this type of case requires environmental expertise and is "typically handled by out of state lawyers," and that these services are not available at the EAJA statutory rate.[57] Plaintiffs also submit a supplemental affidavit from counsel, who describes rates for the legal market in Alaska and attaches an updated table including the specific rate charged for each time entry.[58]

---

[53] *Id*. at 7–8.

[54] Dkt. 107; Dkt. 107-1.

[55] Dkt. 115 at 23.

[56] *Id*. at 25.

[57] Dkt. 131 at 15; *see also* Dkt. 122; Dkt. 123.

[58] Dkt. 121.

10

The Ninth Circuit has recognized that "[e]nvironmental litigation is an identifiable practice specialty that requires distinctive knowledge."[59] Plaintiffs' counsel, in his declaration in support of Plaintiffs' motion, describes the specific environmental law expertise of the individual lawyers who represented Plaintiffs in this matter.[60] Although this case required both statutory interpretation and application of administrative law, this is precisely the sort of challenge—involving a complex environmental statutory and regulatory scheme—that requires environmental expertise.[61] Plaintiffs, through their own attached declarations[62] and declarations

---

[59] *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991); *see also Winter*, 543 F.3d at 1159–60 (noting that "environmental litigation may constitute an identifiable practice specialty").

[60] Dkt. 107 at ¶¶ 4–13; *see also Winter*, 543 F.3d at 1160 ("Plaintiffs must first establish that their counsel had such a specialty."); *Pollinator Stewardship Council v. U.S. Envtl. Prot. Agency*, No. 13-72346, 2017 WL 3096105, at *3 (9th Cir. June 27, 2017).

[61] *See, e.g.*, *Nat. Res. Def. Council v. Locke*, 771 F. Supp. 2d 1203, 1210 (N.D. Cal. 2011) (finding that "there is no dispute that the attorneys for whom NRDC seeks to recover fees applied necessary environmental expertise" in a case involving interpretation of the Magnuson-Stevens Act).

[62] *See* Dkt. 125 at ¶10 ("UCIDA's local counsel quickly recommended turning representation of the dispute over to environmental litigators with experience and expertise in the Magnuson Stevens Act. . . . I am not aware of any attorney or law firm in this state that would have the equivalent skills and expertise to handle a high-stakes case like this. Nor am I aware of any local firm that could handle this matter at the EAJA statutory rate"); Dkt. 126 at ¶12 ("UCIDA and CIFF selected Stoel Rives because of its known reputation in environmental litigation . . . . I am not aware of any attorney or law firm in this state that would have the equivalent skills and expertise to handle a high-stakes fisheries case like this. Nor am I aware of any local firm that could handle this matter at the EAJA statutory rate").

11

from other lawyers practicing in Alaska,[63] have further demonstrated that this expertise is not available elsewhere at the EAJA rate, and that the charged rates were reasonable.[64]

   2. *Hours*

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation."[65] "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the [court] did not adopt each contention raised."[66] Plaintiffs argue that they are entitled to all fees incurred because all of Plaintiffs' claims were "related" and Plaintiffs achieved an "excellent result."[67] Plaintiffs point out that each of their claims "concerned the same agency processes and determinations that led to the adoption of Amendment 12 and its implementing regulations," and that they "prevailed on

---

[63] *See* Dkt. 122 at ¶¶7, 8 ("The hourly rates charged by Stoel Rives in this matter are also reasonable and in line with market rates for complex environmental litigation in both Seattle and Anchorage. . . . In my opinion, plaintiffs would not have been able to retain qualified counsel for a case of this nature at the EAJA statutory cap"); Dkt. 123 at ¶¶5, 8 ("Even if one of the relatively small number of lawyers in Anchorage with the requisite experience had been available to handle this matter, I do not believe that the plaintiffs would have been able to retain qualified counsel for a case of this nature at the EAJA statutory cap . . . . The hourly rates charged by Stoel Rives in this matter are also reasonable and in line with market rates for complex environmental litigation in both Seattle and Anchorage.").

[64] *See Pollinator Stewardship Council*, 2017 WL 3096105, at *5 ("What Pollinator's declarations needed to say, with at least modest support, is that as a practical matter Pollinator would be unable to find an attorney with Loarie's and Brimmer's distinctive knowledge or specialized skill for $125.") (internal citations omitted).

[65] *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *see also Winter*, 543 F.3d at 1162 ("We apply the analysis from *Hensley* to EAJA fee awards.").

[66] *Hensley,* 461 U.S. at 440.

[67] Dkt. 106 at 8.

12

their primary claim under the MSA and achieved the primary goal of the litigation," even though the Ninth Circuit did not address Plaintiffs' NEPA claim.[68]

Defendants raise several arguments concerning Plaintiffs' claimed hours. Defendants first argue that Plaintiffs may not recover from the Government for the hours of work spent responding to Intervenor State of Alaska's request for a rehearing *en banc* and a writ of certiorari, as Plaintiffs may only recover fees incurred opposing the federal government.[69] Second, Defendants contend that Plaintiffs are not entitled to compensation for the hours of work spent opposing Defendants' motion to transfer this action from Washington, D.C. to Alaska, work on their opposition to Defendants motion, as Plaintiffs may only recover for "services that contribute to the ultimate victory in the lawsuit."[70] Third, Defendants argue that Plaintiffs may not recover fees "for retaining counsel in an effort to influence the formation of Amendment 12 long before the onset of litigation," and thus should not be compensated for the "hours of work Plaintiffs' counsel expended on pre-litigation administrative proceedings between 2010 and 2012."[71] Fourth, Defendants submit that Plaintiffs may not recover fees for their NEPA claims because the Ninth Circuit did not consider them and they are "unrelated" to Plaintiffs' MSA claims, and suggest that the Court should apply "an across-the-board reduction of 15% percent" as Plaintiffs' billing records do not distinguish between work on the MSA and NEPA claims.[72]

---

[68] *Id*. at 8–9.

[69] Dkt. 115 at 26.

[70] *Id*. at 27.

[71] *Id*. at 28.

[72] *Id*. at 29.

13

Lastly, Defendants argue that even after these reductions, Plaintiffs' requested fees are excessive and should be subject to a further 33% reduction.[73]

In reply, Plaintiffs argue that the Ninth Circuit does not require courts to engage in an "hour-by hour analysis of the fee request," and point to their supporting declarations as evidence that their total fees are reasonable.[74] Plaintiffs note that their attorneys "exercised billing judgment by not requesting reimbursement for an additional $30,000.00 reasonably incurred in this litigation."[75] Plaintiffs also contest each of Defendants' specific arguments, as well as Defendants' broad contention that Plaintiffs' lawyers generally expended too many hours working on this case.[76]

Turning first to Defendants' argument regarding Plaintiffs' work responding to Intervenor State of Alaska's filings, the Court notes that Plaintiffs did not file a response to Intervenor's petition for rehearing *en banc*, and Defendants also filed a brief in support of Intervenor's petition for a writ of certiorari. As Plaintiffs point out, the Supreme Court specifically requested Plaintiffs to file a response following Defendants' submission of their brief.[77] Plaintiffs' work connected with Intervenor's filings "was not caused by a dispute between [Plaintiffs] and [Intervenor] alone," and Defendants did not "request a remand or otherwise acquiesce" to Plaintiffs' claims.[78] In these circumstances, Plaintiffs may recover as

---

[73] *Id*. at 30.

[74] Dkt. 131 at 17.

[75] *Id*. at 18.

[76] *Id*. at 18–23.

[77] *See* Dkt. 131 at 18; Dkt. 121-3 at 13.

[78] *Pollinator Stewardship Council*, 2017 WL 3096105, at *9–10.

14

their "fees for the [Intervenor]-related work were incurred in opposing improper government resistance to their rightful demands."[79] Likewise, with respect to Plaintiffs' work opposing Defendants' motion to transfer his action from Washington, D.C., Plaintiffs incurred these fees in order to respond to a government motion. Plaintiffs were entitled to choose the district in which they filed suit and to respond to Defendants' motion challenging that choice, and are now "entitled to all attorney's fees reasonably expended in pursuing" their successful merits claim.[80]

With regard to Defendants' challenge to Plaintiffs' work prior to the onset of this litigation, the Ninth Circuit has held that "fees for administrative proceedings can be awarded under § 2412(d)(1)(A) only when the proceedings have been ordered in a district court action that remains pending until the conclusion of the administrative proceedings."[81] Although, as Plaintiffs point out, UCIDA and NMFS entered into a consent decree in 2010 which related to the subsequent administrative proceedings, a district court did not order these administrative proceedings, and they preceded the present litigation.[82] However, "time reasonably spent on pre-complaint investigation, legal research and informal discovery relevant to developing the theory of the case is properly recoverable" under the EAJA.[83] The Court therefore finds that Plaintiffs

---

[79] *Id.* at 10.

[80] *Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991).

[81] *W. Watersheds Project v. U.S. Dep't of the Interior*, 677 F.3d 922, 923 (9th Cir. 2012); *see also Pollinator Stewardship Council*, 2017 WL 3096105, at *11 (distinguishing "pre-litigation representation of [] clients in administrative proceedings before the agency" from "work [that] was contemporaneous with and related to success in the litigation").

[82] *See* Dkt. 131 at 20.

[83] *Lucas v. White*, 63 F. Supp. 2d 1046, 1058 (N.D. Cal. 1999); *see also* Attia v. Astrue, No. 1:06-CV-00778-SMS, 2008 WL 2620376, at *4 (E.D. Cal. July 3, 2008); *League of Wilderness Defs./Blue Mountains Biodiversity Project v. U.S. Forest Serv.*, No. 3:10-CV-01397-SI, 2014 WL 3546858, at *11 (D. Or. July 15, 2014).

may recover fees for work beginning in January 2013, including pre-complaint review of materials, but that Plaintiffs' earlier work on the administrative proceeding is not compensable under the EAJA, pursuant to Ninth Circuit case law. Accordingly, Plaintiffs may not recover for the 353.6 hours worked before this date, totaling $120,187.00 in fees.[84]

However, the Court rejects Defendants' contention that Plaintiffs should not recover fees for their NEPA claims. As Plaintiffs explain, the Ninth Circuit "ruled on behalf of Plaintiffs on the core issue in the case" and awarded Plaintiffs "complete relief."[85] And as noted above, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the [court] did not adopt each contention raised."[86] Plaintiffs here obtained an "excellent result" and were granted judgment on the merits, and entitled to reasonable fees expended on both their MSA and NEPA arguments.[87]

Finally, the Court finds that there is no basis for a further reduction of Plaintiffs' hours. After subtracting the hours spent on work related to the administrative proceedings, Plaintiffs billed 967.40 hours of work, totaling $420,292.50 in fees.[88] This work encompassed the complaint; briefing on Defendants' motion to transfer venue; briefing on summary judgment, including supplemental filings; oral argument; briefing on appeal; briefing on Intervenor's petition for a writ of certiorari; and briefing on fees. Plaintiffs' counsel, in his declaration,

---

[84] The Court bases this calculation on the summary table of "Attorney Rates By Year" contained in Attachment A to Jason Morgan's Supplemental Affidavit, Dkt. 121-1 at 1.

[85] Dkt. 131 at 22.

[86] *Hensley,* 461 U.S. at 440.

[87] *Id.* at 435.

[88] *See* fn. 84, *supra*.

16

testified that it truly took the time claimed to complete this work, and further explains that Plantiffs' counsel "exercised billing judgment to remove over $30,000.00 from the fee request."[89] The Court finds Plaintiffs' remaining claimed fees reasonable.

### 3. Other expenses

In addition to attorney fees, the EAJA authorizes an award of "other expenses" incurred by a party prevailing against the United States, including "the reasonable expenses of expert witnesses, [and] the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case."[90] Plaintiffs seek $12,779.66 in costs and $4,737.70 in expert fees.[91]

Defendants argue that Plaintiffs failed to provide sufficient documentation for these expenses, and with respect to costs, that Plaintiffs may not recover for costs incurred prior to 2013.[92] Defendants also argue that Plaintiffs should not recover for expert fees as "Plaintiffs have made no particularized arguments for the necessity of this substantial expense, which was entirely superfluous given the lawsuit's focus on purely legal issues of statutory interpretation and straightforward, largely non-technical review of the administrative record."[93] Plaintiffs, in reply, provide additional information regarding the rates for various claimed costs, maintain that pre-litigation costs are compensable, and contend that Plaintiffs' expert fees are compensable as the information received "was necessary and useful to ultimately getting NMFS to concede, as it

---

[89] Dkt. 131 at 22.

[90] 28 U.S.C. § 2412(d)(2)(A).

[91] Dkt. 131 at 7.

[92] Dkt. 115 at 30–31.

[93] *Id*. at 31.

17

did before the Ninth Circuit, that the Cook Inlet salmon fishery requires conservation and management."[94]

For the reasons described above, the Court finds that Plaintiffs' pre-litigation expenses, including retention of an expert, are not compensable under the EAJA. Although Plaintiffs' expert's analysis may ultimately have been useful to the present litigation, this analysis was originally commissioned and "used to support Plaintiffs' comments in the administrative process."[95] The Court otherwise concludes that Plaintiffs' costs from 2013 onwards, as documented in their supplemental attachments, are compensable. Accordingly, Plaintiffs may recover $8,453.09 in costs.[96]

## IV. CONCLUSION

For the following reasons, Plaintiffs' motion for attorneys' fees and costs at docket 106 is **GRANTED**. Plaintiffs are awarded $420,292.50 for attorneys' fees and $8,453.09 for costs.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 10th day of September, 2018.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[94] Dkt. 131 at 23.

[95] Dkt. 107 at ¶ 17.

[96] The Court bases this calculation on the table of "Costs" contained in Attachment A to Jason Morgan's Supplemental Affidavit, Dkt. 121-1 at 21–23.